

**CAPITAL HABEAS UNIT**
Federal Defenders of
    Eastern Washington and Idaho
Joan M. Fisher ID Bar #2854
Bruce D. Livingston MO Bar #34444
Oliver Loewy IL Bar #6197093
201 North Main
Moscow ID 83843
Telephone: 208-883-0180
Facsimile:  208-883-1472

**KATHLEEN ELLIOTT**
ID Bar #4359
Attorney at Law
Hampton & Elliott
P.O. Box 1352
Boise, ID 83701-1352
Telephone: 208-384-5456
Facsimile:  208-384-5476

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBIN LEE ROW,<br><br>     Petitioner,<br><br>vs.<br><br>JAMES SPALDING, Director of<br>the Department of Corrections and<br>DAVE PASKETT, Warden of the Idaho<br>Maximum Security Institute, Department<br>of Corrections, State of Idaho,<br><br>     Respondents. | **CAPITAL CASE**<br><br>CASE NO. 98-0240-S-BLW<br><br>**SECOND AMENDED PETITION<br>FOR WRIT OF HABEAS CORPUS<br>BY A PERSON IN STATE CUSTODY** |

Pursuant to this Court's September 23, 2002, Order (Dkt #205), ROBIN LEE ROW,

Petitioner herein, petitions this Court for a Writ of Habeas Corpus, pursuant to 28 U.S.C. §2254.

In support of this Second Amended Petition, Petitioner states as follows:

## I.  PRESENT CUSTODY

Petitioner is in the custody of the Idaho Department of Correction and is currently

incarcerated in the Pocatello Women's Correction Center at Pocatello, Idaho, under a sentence of

death.

## II.  BACKGROUND

1. The name and location of the Court which imposed sentences on the jury verdicts

under attack are:

(a)  The Fourth Judicial District Court of the State of Idaho, in and for the County

of Ada, Hon. Alan A. Schwartzman, presiding.

(b)  Boise, Ada County, Idaho.

2. The date the sentence was imposed is December 16, 1993.

3. The sentences are three death sentences for the first degree murders of her husband,

Randy Row and her two children by a former marriage, Joshua and Tabitha Cornellier, and a

sentence of twenty years fixed for aggravated arson.

4. The Petitioner was charged by information with the crimes of three counts of murder

in the first degree, later amended to include one count of aggravated arson.

5. Petitioner's plea was not guilty.  She was found guilty on all counts.

6. Trial on the issues of guilt or innocence was held before a jury in Ada County.

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 2**

7.  Pursuant to statute, a court trial on the existence of statutory aggravating factors and sentencing was held before the trial judge on October 19-22, November 4 and 12, 1993.  On December 16, 1993, the trial judge found the existence of three statutory aggravating factors beyond a reasonable doubt, considered mitigating factors and weighed the mitigation against each of two of the aggravating factors and sentenced Petitioner to death.  The court also sentenced Petitioner to twenty years in the custody of the Department of Correction for aggravated arson.

8.  A Notice of Appeal was filed January 26, 1994.  Pursuant to Idaho Code §19-2719, "Special appellate and post-conviction procedure for capital cases-," the appeal was stayed pending Petitioner's petition for post-conviction relief in the Fourth Judicial District Court of Idaho, County of Ada.

9.  The facts of Petitioner's 19-2719 proceedings are as follows:

(a)  On March 17, 1994, Petitioner filed in the District Court of the Fourth Judicial District of the State of Idaho, in and for the County of Ada, a document entitled Petition for Post Conviction Relief under Idaho Code §19-2719.

(b)  On June 16, 1995, Petitioner filed an Amended Petition for Post Conviction Relief in the District Court for the Fourth Judicial District of the State of Idaho, in and for the County of Ada, Hon. Alan Schwartzman, presiding.

10.  After denying Petitioner's motion for continuance, a court trial was held on the amended petition on January 8 and 9, 1996.  On March 11, 1996, the trial court entered its Findings of Fact, Conclusions of Law and Order denying in all respects the relief sought.

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 3**

11. Petitioner filed her Notice of Appeal of the denial of post-conviction relief on April 17, 1996.

12. The facts of Petitioner's appeal are as follows:

(a) The Idaho Supreme Court affirmed Petitioner's conviction and sentence and denial of post-conviction on March 18, 1998. *State v. Row,* 935 P.2d. 1082 (1998). A petition for rehearing was denied on May 20, 1998.

(b) On August 8, 1998, Petitioner filed a petition for writ of certiorari to the Supreme Court of the United States seeking review of the Idaho Supreme Court's decision affirming her conviction and sentence.

(c) On November 2, 1998, the United States Supreme Court entered an order denying the petition for writ of certiorari, -U.S.-, 119 S.Ct.415, 67 USLW 3300 (November 2, 1998) (No. 98-5755).

13. On January 11, 1999, Petitioner filed her Petition for Writ of Habeas Corpus [Dkt. #60].

14. On November 2, 1999, Petitioner filed a Petition for Postconviction Relief and/or Petition for Writ of Habeas Corpus in the Fourth Judicial District Court of the State of Idaho, in and for the County of Ada, Hon. Deborah A. Bail, presiding.

15. On April 25, 2000, Petitioner's Motion to File an Amended Petition for Writ of Habeas Corpus was granted [Dkt # 141] and an Amended Petition was filed [Dkt. #120].   The proceedings were stayed pending state court proceedings. [DKT # 141]

16. On April 5, 2000, the petition for postconviction relief was dismissed.

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 4**

17. Petitioner's appeal to the Idaho Supreme Court of the district court's summary dismissal was dismissed on March 1, 2001. *Row v. State*, 135 Idaho 573, 21 P.2d 895 (2001).

18. On August 5, 2002, Petitioner filed another petition for postconviction relief seeking relief under the United States Supreme Court's ruling in *Ring v. Arizona*, 122 S. Ct. 2428 (2002). *Row v. State*, Ada County Case No. SP OT 0200714D. That petition is still pending.

19. Petitioner also has pending in the Fifth Judicial District Court of Idaho in Ada County, a Public Records Action. *Row v. Bower*, et al, Case No. CVOC0000622D.

20. Petitioner was represented at trial and sentencing by court appointed counsel, Amil Myshin and August Cahill of the Ada County Public Defender's Office , Boise, Idaho.

21. Petitioner was represented on appeal including the special capital appellate postconviction proceedings by Rolf Kehne and John Adams, Boise, Idaho.

22. Petitioner is now represented by appointment by the Capital Habeas Unit, Federal Defenders of Eastern Washington and Idaho, Moscow, Idaho and Kathleen Elliott of Hampton and Elliott, Boise, Idaho.

23. Petitioner was represented in her first postconviction proceeding following the appeal of her conviction, sentence and denial of relief in her 19-2719 proceedings by Kathleen Elliott and Teresa Hampton of Hampton & Elliott, Boise, Idaho and is represented in her current state court postconviction proceedings by Joan Fisher of the Capital Habeas Unit and Kathleen Elliott of Hampton and Elliott of Boise, Idaho.

**SECOND AMENDED PETITION FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 5**

### III.  GROUNDS FOR RELIEF

24.  The grounds upon which this application is based are that Petitioner's convictions and sentences are in violation of the Constitution of the United States. Granting the petition for writ of habeas corpus and ordering Petitioner discharged absent timely action by the state for re-trial and/or re-sentencing is in the interest of justice.

### Facts Supporting the Claim

25.  On December 26, 1990, Joan Marilyn McHugh, a person who would become a critical state's witness against Robin Row, was charged with one felony count of Issuing an Insufficient Funds Check in the amount of $3,800, written by Bernard McHugh, another of the state's witnesses against Robin Row.  Joan McHugh was represented by the Ada County Public Defender,  who would later represent Robin Row in the proceedings for which relief is now sought.  Amil Myshin, lead counsel in Robin Row's case appeared on behalf of Joan McHugh on March 21, 1991.  See Affidavit of Kathleen Elliott, and documents attached (Dkt #132). *State v. Joan Marilyn McHugh,* Case No. 17617 (March 21, 1991).  In the course of the prosecution of Ms. McHugh, the State advised that it had in its possession "no evidence exculpatory on its face."  Affidavit of Kathleen Elliott: Response to Discovery, March 13, 1991 (Dkt #132). Though the State made known its intention to dismiss charges against Ms. McHugh in March of 1991, that matter was not dismissed until September of 1991.  *See* Court Minutes, March 25, 1991; Motion to Dismiss, September 18, 1991; Order of Dismissal, September 18, 1991 (submitted with Petitioner's Notice of Lodging of Records Pursuant to Petitioner's Motion to Expand the Record, Dkt #105).

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 6**

26. On January 7, 1991, an Information was filed charging the second of the state's witnesses against Robin Row, Bernard McHugh (spouse to Joan McHugh) with two counts of Issuing an Insufficient Funds Check and Two Counts of Second Degree Burglary for two checks in the amount of $3,800 each, knowing that there were insufficient funds in the account. Judge Alan Schwartzman, the judge who would later sentence Robin Row to death, presided over Mr. McHugh's arraignment, plea of guilty to two counts of Issuing an Insufficient Funds Check, review of presentence report, and sentenced Mr. McHugh to three years, with a one year minimum sentence, suspended for three years. Court Tape Minutes, Case No. 17639 (February 13, 1991).

27. In the early morning hours of February 10, 1992, a fire commenced in an apartment at 10439 Seneca in Boise, Idaho. Firefighters and police were sent to the scene by police dispatch at 4:36 a.m. When the fire was sufficiently under control, firefighters entered and discovered three bodies: those of Petitioner's children, Joshua and Tabitha Cornellier, and her husband, Randy Row. All three were killed by carbon monoxide poisoning as they slept.

28. Petitioner arrived at the scene before the fire was completely extinguished.

29. Investigators testified that they found two "points of origin" of the fire. According to the testimony, the fire started where the apartment joined the garage and a second fire started several feet from the first in some clothes piled in the living room. Investigators testified that some flammable substance accelerated the development of the fire. They also testified that a smoke detector was disabled when power to the upstairs was cut off at a circuit breaker. On the morning of the fire, relatives of Randy Row told investigators they suspected Petitioner of

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY - 7**

starting the fire. Randy's family informed the police that there were other fires in Petitioner's past and two of Petitioner's other children had died under suspicious circumstances.

30. Petitioner was first interviewed later the day of the fire, February 10, 1992. Detective Gary Raney, who was the lead investigator on the case, requested that Petitioner come to the police station. She did so a little before 2:00 p.m. In the course of that interview, Petitioner said she lost her baby daughter, Kristina, to SIDS in New Hampshire in 1977. She said her son, Keith, died in a house fire in California in 1980.

31. Petitioner told Detective Raney she thought her dental plan provided $10,000 coverage on her life and $2,000 or $2,500 on each of the children's lives. During this interview, a consent was procured by Raney to search a storage unit behind the apartment.

32. Petitioner contacted and retained attorney Ellison Matthews shortly after the Boise fire. Mr. Matthews contacted the police and notified them he was representing Petitioner's interests in the course of the murder/arson investigation and requested that they not question her. Petitioner also notified police she was being represented by Mr. Matthews and that Mr. Mathews did not want her to talk with them. The State was aware that Petitioner was represented by Mr. Matthews in the investigation of the murder arson no later than the 11th or the 12th of February.

33. On February 12th, Detective Raney obtained four (4) warrants to search four (4) locations for evidence of the arson and murders: (1) Petitioner's burned residence at 10489 Seneca; (2) Joan McHugh's residence at 3135 Jordan, where Petitioner had been living; (3) Petitioner's Mazda automobile, which was allegedly similar to a car seen near the Seneca Street

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 8**

apartment near the time the fire started; (4) Petitioner's storage unit in Meridian, where police believe Randy Row had recently moved several of Petitioner's more valuable items.

34. Detectives found in the storage shed furniture, a color television, Christmas decorations, photographs, dishes wrapped in a February 7th newspaper and supplies from the Bingo operation run by the YWCA where Petitioner worked. They also found policies insuring the lives of Petitioner's husband and her children.

35. While the McHughs and Petitioner were at a memorial service for the victims, other detectives executed the warrant on McHugh's residence. At Detective Rancy's request, Petitioner again went to the police station for her second interview which began about 8:00 p.m.

36. The search warrants obtained were to look for evidence of arson and murder. Petitioner was the only suspect.

37. In the course of executing the search warrants, police allegedly "stumbled upon" evidence which they believed tended to prove that Petitioner had been stealing from the Bingo program Petitioner operated as an employee of the YWCA.

38. The following day, February 13th, Ada County prosecutors conducted a Magistrate Special Inquiry (*See*, I.C. §19-116 *et seq*), in which several people, including Petitioner's friends, were summoned to testify concerning the arson and murders. Petitioner was at the courthouse as the inquiry wound up. Police arrested her at the courthouse, not for arson and murder, but for grand theft based on evidence seized during the search. Petitioner has since been in custody.

39. During Petitioner's incarceration, before charging her with murder, police arranged to have Joan McHugh receive collect calls from Petitioner at the jail without any charge to

McHugh. (Prisoners of Ada County jail generally are unable to call friends, family, and even their lawyers except by collect call). Detectives had McHugh record all of Petitioner's calls with equipment provided by police. Detective Raney suggested lines of questioning for McHugh to pursue in these conversations arranged by Raney. On at least one occasion, unbeknownst to Petitioner (or later Court or defense counsel) Detective Raney and prosecutor Kevin Swain were at the home of Ms. McHugh when a scheduled phone call came. Raney and Swain monitored the phone conversation between McHugh and Row as it occurred and Ms. Row in response to the inquiry set up by Raney through McHugh made incriminating statements during that conversation. McHugh also visited and recorded conversations at the jail and followed Raney's suggested line of questioning. Raney assisted McHugh in acquiring and securing to her own use much of Petitioner's property.

40. The arson and murder charges were not filed until March 20th. Although the charges were publicly announced on the 20th, and Petitioner was in jail on the theft charges under bail setting of $100,000, the new warrant was not served upon her and she was not arraigned until March 23rd. Ordinarily, prosecutors read the probable cause to a magistrate at 11:00 a.m. for issuance of a warrant and complaint for a defendant, like Petitioner, who is already in custody and who is to be arraigned that afternoon.

41. At the suggestion of Detective Raney, in a recorded conversation,[1] McHugh lied to Petitioner telling her that she (McHugh) awoke the night of the fire at approximately the time of

---

[1] Believed to be the conversation to which Kevin Swain admitted being personally present with Detective Raney and listening to the same.

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 10**

the fire and that Petitioner was not in the home.  In fact, McHugh slept soundly until Petitioner awakened her and had heard or seen nothing which suggested Petitioner had left McHugh's home during the night.  In the early afternoon of March 20th, after the time Petitioner would ordinarily have been arraigned and during a phone call specifically requested by Joan McHugh, Petitioner told McHugh she was in front of McHugh's residence talking with her psychiatrist at the time McHugh purportedly awoke.

42.  The jury was given special verdict forms in which they were asked to decide whether Petitioner was guilty of first degree murder by premeditation, felony murder or both.

43.  At sentencing, defense counsel relied almost entirely on documentation provided by the state and a presentation of general un-focused family testimony, psychiatric testimony regarding hypnosis, the PSI report and argument of mitigating factors.  Letters in support of Petitioner were submitted on December 8, 1993, well after the sentencing hearing.  Despite nearly nine months between conviction and sentencing, including two continuances requested by the defense to secure a psychological exam, a professionally unorthodox evaluation was given on the evening before the sentencing hearing.  No neurological tests were ever completed.  Defense counsel did not raise nor present the question of CT scans showing an atrophy of the brain.  The organic brain damage was not brought to the court's attention until the post-conviction proceedings.  This organic condition has the probable neuropsychiatric outcome of reducing Robin Row's ability to control her behavior and under conditions of emotional distress may have affected her ability to appreciate the wrongfulness of her behavior.

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 11**

44. Attorneys appointed to represent Petitioner on appeal including the post-conviction proceedings were paid by the Ada County Public Defender's Office, who had withdrawn as a result of a conflict of interest. Significant resources and discovery were denied Petitioner by the court. By contract with the Public Defender's Office expenditure of monies for experts, other than by court order, which the Public Defender later found unreasonable, subjected conflict counsel to termination or personal liability.

45. Questions of Petitioner's involvement in the crime and the extent of her culpability remain unresolved. The denial of adequate discovery and resources resulted in appointed counsel's failure to present evidence of prejudice including the extent and impact of organic brain damage and even compelled one of her appointed attorneys, Rolf Kehne, to act as an expert witness on behalf of his client.

46. The specific grounds for which relief is sought are set forth herein below.

**FIRST GROUND: INCRIMINATING STATEMENTS OF PETITIONER ELICITED BY JOAN MCHUGH ACTING AS STATE AGENT**

47. Petitioner's rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution were violated by presentation of the testimony of Joan McHugh, an alleged friend of Petitioner, who was then acting as an agent of the State and elicited incriminating statements from Petitioner despite the commencement of formal criminal proceedings, the knowledge that Petitioner was represented by counsel and Petitioner's request that counsel be present at any further interviews by the State. The evidence produced by McHugh of conversations she had with Petitioner while in custody and recorded for the benefit of the State should have been suppressed. The admission of the testimony including an

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 12**

admission that Petitioner had not remained in the house the entire night of the fire and other

evidence secured as a result of the government's use of McHugh was admitted in evidence at the

jury trial in violation of Petitioner's privilege against unreasonable searches (IV),

self-incrimination (V) and right to counsel (V,VI), right to be free from cruel and unusual

punishment (VIII) and due process of law (XIV). U.S. Const. Amendments IV, V, VI, XIV. *See*

*e.g., United States v. Henry*, 447 U.S. 264, 270, 100 S.Ct. 2183, 2186-87, 65 L.Ed.2d 115

(1980); *Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246

(1964).

### Facts Supporting the Claim

48. The fire which killed Petitioner's husband and two children occurred in the early

morning hours of February 10, 1992. The investigation of Petitioner as a suspect began that

morning. Petitioner was the focus of the investigation by the 11th of February. Search warrants

issued on February 12th identified Petitioner as a suspect in the arson/murder. Petitioner retained

an attorney, Ellison Matthews to advise her regarding the investigation on February 11th. Mr.

Matthews agreed to represent Petitioner in the investigation and on the criminal charges if any

were filed. The police were aware that Matthews' represented Petitioner by February 11th or

12th.

49. By February 13th, the date Petitioner was arrested on theft charges resulting from

evidence obtained in the arson/murder search, police had enlisted assistance in their investigation

from Joan McHugh. The government directed McHugh in obtaining incriminating statements

from Petitioner which the police had been unable to obtain. The police also enlisted McHugh's

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 13**

services to obtain other types of incriminating evidence. They used a power of attorney given to McHugh by Petitioner to avoid the warrant requirement, in obtaining Petitioner's life insurance policy and other papers including canceled checks and check registers.

50. Police installed a tape recorder on Joan McHugh's telephone on February 13th. They encouraged, suggested, and recommended ways to solicit incriminating statements from Petitioner and to report them to police. Detective Rancy and Prosecutor Swain were present, actively listening and monitoring at least one phone conversation for which the state had been given time to be present during the call.

51. On February 18th, police prevented Petitioner's counsel from visiting her and kept the attorney waiting while they interrogated Petitioner. On February 19th, police arranged for Joan McHugh to visit with Petitioner in the attorney visiting section to solicit secretly recorded statements from Petitioner. On March 18th, police specifically instructed McHugh to lie in an effort to elicit a specific incriminating statement from Petitioner.

52. Formal charges were announced to the media and filed March 20, 1992. Still the government's surreptitious recording of statements made by Petitioner to a government agent continued. On March 20th, Petitioner called McHugh and based upon lies and solicitation by McHugh, at the direction and in the presence of Detective Raney and prosecutor Swain, Petitioner indicated to McHugh that she had not been in McHugh's house at 3:30 a.m. the morning of the fire.

53. Petitioner was arraigned on Monday, March 23rd on three counts of murder in the fire deaths of her husband and children. Physical evidence and testimony of McHugh regarding

the statements of Petitioner were introduced over Motions to Suppress and objection at trial.
The Supreme Court upheld the lower court's finding that the statements were admissible.

## SECOND GROUND: UNREASONABLE DELAY IN ARRAIGNMENT

54. A three-day delay between filing of arson and murder charges and Petitioner's initial
arraignment on those charges was unreasonable, unlawful and consciously made to avoid
constitutional implications entitling Petitioner to suppression of statements made during that
delay to McHugh, acting as a state agent under the Fourth, Fifth, Sixth, Eighth and Fourteenth
amendments to the Constitution.

### Facts Supporting the Claim

55. Petitioner became the focus of the murder investigation on February 12th and was
arrested and held on grand theft charges as a subterfuge to question her about the fire deaths
without an attorney. Petitioner retained counsel on February 11, 1992, to represent her in the
murder and arson investigations. Police were aware of this representation and continued to
solicit responses from Petitioner in an attempt to gain a confession.

56. Formal charges were announced to the media and filed March 20, 1992. Probable
cause for the complaint in the underlying criminal case was read during an 11:00 a.m. session
and the complaint and warrant were issued at approximately 11:30 a.m.   Still the government's
surreptitious recording of statements by Petitioner to a government agent continued. Petitioner
was not arraigned in accordance with the usual arraignment procedures of Ada County. On
March 20, 1992, while every other Ada County defendant who had been the subject of a probable
cause hearing earlier that day was being arraigned, Petitioner remained in her cell and at Ms.

McHugh's request called McHugh back at a later time giving Detective Raney opportunity to contact the prosecutor's office and to be present at the time of the returned phone call. Based upon lies and solicitation by McHugh at the direction of Detective Raney, Petitioner said at 3:30 a.m. the morning of the fire, she had been sitting in a car in front of the apartment talking with her psychiatrist. The statement was the only direct evidence that Petitioner was anywhere, if she was, other than inside McHugh's apartment at or near the time of the fire.

57.    Petitioner was arraigned on Monday, March 23rd on three counts of murder in the fire deaths of her husband and children. Physical evidence and testimony of McHugh regarding the statements of Petitioner were introduced over objection and Motion to Suppress at trial.

58.    The State delayed obtaining a warrant and complaint on the murder and arson charges for the purpose of obtaining evidence, particularly incriminating statements of Petitioner based on their belief that until charges were filed and Petitioner was arraigned, her attorney could not prevent the police from interrogating Petitioner about the murder case.

59.    The Idaho Supreme Court upheld the lower court's finding that the statement was admissible.

60.    The intentional delay of the arraignment to obtain incriminating statements violated Petitioner's rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution as set forth in *Mallory v. United States*, 354 U.S. 449 (1957), *McNabb v. United States,* 318 U.S. 332 (1943), and *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991).

**THIRD GROUND:  THE REASONABLE DOUBT INSTRUCTION**

61.  The reasonable doubt instruction given to the jury violated her Fifth, Sixth and

Fourteenth Amendment rights in that there is a reasonable likelihood the jury understood the

instruction to allow conviction upon proof insufficient to meet the constitutional minimum to

meet the reasonable doubt standard.

62.  The lower court gave the following instruction defining reasonable doubt:

> The effect of the presumption of innocence, however, *is only to* place upon the
> prosecution the burden of proving the defendant guilty beyond all possible doubt.  A
> reasonable doubt is a doubt based upon evidence or lack of evidence and upon reason and
> common sense -- the kind of doubt that would make a reasonable person hesitate to act.
> Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character
> that a reasonable person would hesitate to rely and act upon it in the most important of his
> own affairs.

> If you have a reasonable doubt as to the guilt of the defendant, you must acquit
> him.  But if, after going over in your minds the entire case, you have an abiding
> conviction, to a moral certainty, of the truth of the charge, then you are convinced beyond
> a reasonable doubt, and you should render your verdict accordingly.

63.  The instruction is not consistent with state law.  *State v. Sivak*, 901 P.2d 494 (1995);

*State v. Holm*, 478 P.2d 284, 292 (Idaho 1970).

64.  The definition of reasonable doubt diminished the importance of the beyond a

reasonable doubt standard in violation of *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328 (1990).

The definition of the burden of proof, beyond a reasonable doubt, in the instructions given to the

jury, violates the due process clause of the Fifth Amendment, right to a jury trial of the Sixth,

right to be free of cruel and unusual punishment Eighth, and the due process and equal protection

under the Fourteenth Amendments to the United States Constitution by creating a risk that the

jury convicted on something less than proof beyond a reasonable doubt.

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 17**

 

**FOURTH GROUND**: **UNCONSTITUTIONAL DENIAL OF EXPERT ASSISTANCE**

65. Petitioner's right to defense resources secured by the Fifth, Sixth, Eighth and

Fourteenth Amendments to the Constitution of the United States as dictated in *Ake v. Oklahoma*,

470 U.S. 68, 71 (1985) as it applies to Idaho's special capital appellate proceedings, were

violated when Petitioner was denied expert services to support her pre-appeal post-conviction

claims. Failure to provide Petitioner the same means and resources available to non-indigent

persons violation due process and equal protection of the laws of Idaho as guaranteed by the Due

Process Clause of the United States Constitution. *Hicks v. Oklahoma*, 447 U.S. 343 (1980).

### Facts Supporting the Claim

66. Idaho has established a scheme in which the post-conviction challenges to a death

sentence are an indivisible part of the capital trial and appellate process. *See* Idaho Code §19-

2719. The statutory scheme provides a "post-conviction" procedure which is an integral part of

the appeal in a capital case. *State v. Rhoades*, 820 P.2d 665, 676 (Idaho 1991).

67. In this case, a neuropsychologist testified that in light of CT scans which showed an

atrophy of the brain, "neurological testing was necessary to determine whether there might be

some organic basis related to her mental health problems." The trial judge in this matter found

the organic brain damage "troubling" but denied expert assistance on the issue and deferred to "a

higher judicial authority" leaving open the possibility of filing a successive post-conviction

petition.

68. *Ake v. Oklahoma*, *supra*, and *State v. Olin*, 648 P.2d 203 (1982) entitled Petitioner

under the due process and equal protection clauses of the Fourteenth Amendment to appointment

of necessary defense experts at the post-conviction proceedings stage. In making provision of certain services mandatory on postconviction, Idaho Code §19-852 and §19-2719 create a constitutional due process right to the services under *Hicks v. Oklahoma*, 447 U.S. 343 (1980).

69. The Idaho Supreme Court found no abuse of discretion because the trial court found Petitioner did not make a requisite threshold showing that psychiatric mitigation help was required in post-conviction and thus, no prejudice had been shown. *State v. Row*, 955 P.2d, at 1089.

70. The record reveals brain damage and that further testing would reveal potentially serious mental illness including possibly schizophrenia. The trial court admitted the worrisome aspect of the neurological question but court refused to appoint an expert to answer the question. By the trial court's own finding, the particularized showing of need was met in this case.

71. The brain damage by its nature undermines the psychological findings by the court including that Robin Row would not suffer sufficiently if sentenced to life in prison, that her hypnotically refreshed testimony was corroboration of Robin Row's guilt; that Robin Row has an antisocial personality.

72. The brain damage necessitated additional testing and findings regarding the impact on Petitioner's state of mind and behavior before a capital sentencing could statutorily or constitutionally take place.

**FIFTH GROUND: UNCONSTITUTIONAL DENIAL OF *EX PARTE* PROCEEDINGS ON DEFENSE DISCOVERY AND INVESTIGATION ISSUES.**

73. An indigent defendant requesting an expert witness is constitutionally entitled to an *ex parte* hearing on the request under the Fifth, Sixth, Eighth and Fourteenth Amendments to the

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 19**



Constitution of the United States. The Court's failure in this case to permit matters of defense

strategy and investigation in an *ex parte* hearing denied Petitioner the opportunity to be heard and

to assistance of counsel guaranteed by *Ake v. Oklahoma, supra, Britt v. North Carolina*, 404

U.S. 226 (1971); *McMann v. Richardson*, 397 U.S. 759 771 n.14 (1970). The right to counsel is

guaranteed by *Gideon v. Wainwright*, 372 U.S. 335 (1963). Similarly, as a matter of right, to

counsel for an initial appeal from the judgment and sentence of the trial court under *Douglas v.*

*California*, 372 U.S. 353 (1963); *Griffin v. Illinois*, 351 U.S. 12 (1956). Failure to provide

Petitioner the same means and resources available to non-indigent persons violation due process

and equal protection of the laws of Idaho as guaranteed by the Due Process Clause of the United

States Constitution. *Hicks v. Oklahoma*, 447 U.S. 343 (1980).

### Facts Supporting the Claim

74. Petitioner sought to apply for expert assistance either to a money judge (a judge other

than the trier of fact who rules on application for funds for expert assistance) or to the trial court

*ex parte*, under seal. Defense counsel were required to divulge work product, strategy and

confidential communications to the State's attorneys in order to apply for expert assistance.

After forcing defense counsel for Petitioner to divulge to the State their intention to obtain the

assistance of a mitigation expert, the Trial Court refused to grant funds for such expert

assistance.

## SIXTH GROUND: DENIAL OF CONTINUANCE IN POSTCONVICTION WAS DENIAL OF COUNSEL AND DUE PROCESS IN A CAPITAL CASE.

75. Denial of Petitioner's request for a continuance of the court trial of Petitioner's

capital postconviction proceedings denied Petitioner her right to counsel and her right to due

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 20**

process in a capital case in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States. Supreme Court precedent dictates relief as a result of the denial in *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964), *Hawk v. Olson*, 326 U.S. 271 (1945); *In re Oliver*, 333 U.S. 257 (1948); *In re Green*, 369 U.S. 689 (1962).

### Facts Supporting the Claim

76. Petitioner's counsel were not prepared for the trial of her 19-2719 proceeding. Her counsel were investigating mental health issues including attempts to retain a neurological psychiatrist to conduct further testing on the organic brain damage visible on Petitioner's CT scans and undeveloped by trial counsel. Additionally, a mitigation expert was retained, in spite of denial of monies to retain such an expert but she needed more time to complete an investigation in mitigation to support Petitioner's claim of prejudice as a result of ineffective assistance of trial counsel at sentencing.

77. Before commencement of Petitioner's post-conviction hearing, her counsel requested a continuance based on counsel's inability to complete the investigation and research necessary to support the allegations of the post-conviction proceedings. The court denied the continuance. The Idaho Supreme Court held the denial of the continuance was a matter of discretion and the lower court did not abuse its discretion in the denial. *State v. Row, supra*, at 1090.

78. The additional testing and evaluation indicated for a proper medical evaluation of the CT scan results which needed to be conducted at the special postconviction proceeding to sustain Petitioner's burden of proof in that proceeding included an MRI, SPECT scan and blood tests.

**SEVENTH GROUND:   INEFFECTIVE ASSISTANCE OF COUNSEL**

79.  Petitioner was deprived of the constitutionally guaranteed effective assistance of

counsel at trial on guilt and innocence, sentencing and appeal, which includes special capital

post-conviction proceedings, by acts and omissions of appointed counsel in violation of the

Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States as guaranteed

by *Strickland v. Washington*, 466 U.S. 668 (1984); *Furman v. Georgia*, 408 U.S. 238 (1972);

*Gardner v. Florida*, 430 U.S. 349 (1972), and *Hicks v. Oklahoma*, 447 U.S. 343 (1980).

### Facts Supporting the Claim

80.  At the trial regarding Petitioner's guilt or innocence, Petitioner's appointed counsels'

performance fell below prevailing professional norms by:

(a)  failing to fully and adequately develop the factual basis for suppression of the

statements made to Joan McHugh;

(b)  failing to argue the motion to suppress under the Fourth, Fifth, Sixth and

Fourteenth Amendments as set forth *Mallory v. United States*, 354 U.S. 449 (1957),  *McNabb v.

United States*, 318 U.S. 332 (1943), *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991);

(c)  failing to challenge the admission of evidence seized by an invalid overbroad

search warrant and/or which evidence was not within the scope of the warrant;

(d)  failing to voir dire trial court prior to trial regarding his religious,

philosophical and moral attitudes toward the imposition of the death penalty;

(e) failing to object to the misrepresentation by commission and omission made by the prosecutor as set forth under the Thirty-sixth Ground: Egregious Prosecutorial Misconduct", set forth hereinbelow;

(f) by failing to search for and discover the undisclosed information and evidence known to the prosecution and Court as set forth hereinbelow in Thirty-fifth Ground: Withholding Exculpatory Evidence; [2]

(g) by participating in and failing to advise Ms. Row of numerous substantive chambers conferences, failing to seek her attendance at the chambers conferences, and failing to object to said conferences and failing to secure a court transcription of any and all chambers conferences which were held without Ms. Row, as set forth herein under the Thirty-fourth Ground.

(h) that counsel failed to secure adequate testing concerning the brain damage that could have affected petitioner's ability to control her behavior and thus undermines the finding of petitioner's guilt;

(i) that counsel failed to adequately investigate the state's arson/murder investigation including but not limited to research, develop and investigate potential fingerprint

---

[2] While not relieving the prosecution of the duty to disclose under *Brady v. Maryland*, supra and its progeny or the sentencing judge of his duty to notify the Petitioner of information relied upon in imposing sentence under *Gardner v. Florida*, 430 U.S. 349 (1977), Petitioner's counsel failed to exercise reasonable diligence in the acquisition and search for records and information regarding the state's witnesses, Joan and Bernard McHugh, contrary to his constitutional responsibilities. The failure of trial counsel to discover, develop, present, and argue the information which was available in the criminal proceedings against the witnesses was a violation of the Sixth, Eighth, Fourteenth Amendments to the Constitution of the United States and Article 1, §13 of the Idaho Constitution. *See Strickland v. Washington, Carriger v. Stewart*, 132 F3d at *Supra* at 480; *Gibson v. State*, 106 Idaho.

evidence and significant questions surrounding the nature and quantity of the alleged accelerant, to adequately retain, advise, inform and develop arson experts to review the state agents' investigation and to effectively confront the state's agents, thereby allowing nonscientific, unreliable and improper expert testimony regarding the same to be presented to the jury and judge;

(j)  that counsel failed to adequately investigate, develop and present to the jury compelling evidence including neuro-psychiatric testimony regarding the likely state of mind and propensity to violence, vengeance and suicide of Randy Row to support the theory of the defense that someone other than Petitioner may have started the fire.

(k)  that trial counsel failed to independently investigate and present the criminal and social history, church affiliation, and credibility of state's witnesses Joan McHugh, Bernard McHugh  and John Blackwell;

(l)  that trial counsel failed to reveal to Petitioner the conflict of interest which existed as result of the Ada County Public Defenders' representation of Joan McHugh in criminal charges prosecuted by the Ada County Prosecuting Attorney's Office and presided over by Judge Schwartzman;

(m)  failing to withdraw from the representation of Petitioner  as a result of the conflict of interest set forth in subparagraph k;

(n) failure to research, raise, brief or argue significant issues affecting the constitutionality of Petitioner's death sentence.

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 24**

81.  At sentencing, Petitioner's appointed counsel performed in a manner below professional norms in the following manner:

(a)  Failure to prepare, develop and present a coherent sentencing strategy;

(b)  Failure to make an independent investigation of matters in mitigation;

(c)  Unreasonably relying on information produced by the state permitting consideration of the same in aggravation rather than mitigation;

(d)  Failure to timely retain a qualified mental health expert to address the issues of mental health clearly apparent in Petitioner's case;

(e)  Failure to retain a qualified neuro-psychiatrist to conduct appropriate medical testing regarding the apparent organic brain damage revealed by CT scans taken of Petitioner revealing an atrophy of the brain;

(f)  Failure to investigate and present defenses and mitigating circumstances surrounding uncharged criminal activity presented during the trial and at sentencing;

(g)  Failure to research Eighth Amendment jurisprudence as it applies to the preparation and presentation of evidence in mitigation;

(h)  Failure to investigate, develop and present evidence rebutting aggravating evidence considered by the trial court;

(i)  Failure to voir dire the trial court regarding his moral, religious, philosophical, personal as well legal understanding of the imposition of the death penalty;

(j)  Failure to protect communications of Petitioner with mental health personnel and the PSI investigator under *Estelle v. Smith*, 451 U.S. 454 (1981);

(k)  Failure to research, raise, brief or argue significant issues affecting the constitutionality of Petitioner's death sentence;

(l)  Failure to research, raise, brief or argue significant issues affecting the constitutionality of Idaho's death penalty scheme as required under *Gregg v. Georgia*, 428 U.S. 153 (1976); *Woodson v. North Carolina*, 428 U.S. 280 (1976);

(m)  Failure to object to the submission of special verdicts in a capital case which impermissibly shifted the trial court's responsibility to the jury;

(n)  Permitting an unqualified mental health expert and his assistant to engage in unreliable techniques of memory re-enhancement, including hypnosis;

(o)  Failure to research and comprehend the reported results of a psychological evaluation performed by an unqualified person and permitting presentation of a diagnosis of Petitioner as suffering from a condition called alexithymia which was not supported by fact, law, medicine, science or accepted standards of psychological principles;

(p)  Permitting Petitioner to make a statement in allocution without knowing that the statement would be making incriminatory admissions based upon unqualified, unreliable memory enhancement;

(q)  Failure to raise, brief and argue at trial that the trial judge's determination that two statutory aggravating factors were established as a matter of law which impermissibly shifted the sentencer's responsibility to the jury;

(r)  Failure to challenge the information, evidence, instructions and submission to the jury the theory of first degree murder by committing murder in the course of a felony,

namely, arson, where the arson was the means of homicide, not a felony during the course of which a homicide took place;

(s) Permitting the defense-retained psychologist to engage in practices likely to elicit a false confession from Petitioner and permitting Petitioner to be bullied into making that confession in allocution at sentencing which wholly undermined the theory of defense presented at trial.

82. Court-appointed appellate counsel performed below reasonable professional norms in the appeal including at the special capital postconviction proceedings pending direct appeal by acting or omitting to act in the following ways:

(a) Failing to adequately prepare for the court trial on the petition for post-conviction relief including completion of the necessary research; retention of an appropriately qualified medical and mental health expert; conducting full and complete mitigation/investigation in a timely manner;

(b) Failing to withdraw after counsel noted a conflict of interest by the financial interests involved in the appointment by the Ada County Public Defenders Office, which office withdrew as a result of a conflict of interest;

(c) Testifying as an expert witness in the court trial on the critical issue on ineffective assistance of trial counsel;

(d) Failing to fully investigate, develop, raise, brief and argue the factual bases of ineffective assistance of trial counsel as alleged in paragraphs 80 and 81 above;

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 27**

(c) Failing to research, brief and argue constitutional error on appeal fundamental issues which would have resulted in reversal of Petitioner's conviction, death sentence or denial of postconviction relief.  Issues which should have been raised on appeal including but are not limited to:

i. The denial of admission of impeachment evidence of a critical state's witness, Joan McHugh;

ii. The admission at trial of prejudicial, unreliable hearsay regarding statements allegedly made by Petitioner, Randy Row, Joshua Cornellier, Tabitha Cornellier, and Sharon Fels;

iii. The trial courts denial of two motions to disqualify based on bias and prejudice including the judge's reliance on special verdicts by the jury to conclude "as a matter of law" the existence of two aggravating factors rather than comply with the statutory scheme and make an independent finding of fact regarding the existence of statutory aggravating factors;

iv. The erroneous denial of a mistrial based upon the State's contempt in following line of inquiry barred by court to the prejudice of petitioner (regarding State's inquiry with every psychiatrist in the county.)

v. The trial court's error in finding that jury verdict finding compelled finding of two aggravating factors as a matter of law as an unconstitutional shift of the court's responsibility to the jury;

vi.  The erroneous admission of prior bad acts allegedly committed by Petitioner without sufficient foundation to the extreme prejudice of Petitioner;

vii.  The denial of confrontation by consideration of unreliable hearsay submitted in the presentence report as a denial of due process under the fourteenth amendment;

viii.  The trial court's denial of Petitioner's motion to change venue as a denial of due process under the United States Constitution, amendment 14;

ix.  The failure of trial counsel to adequately investigate and challenge the state's arson/murder investigation and failure to secure experts to review the State's agent's investigation and failure to effectively confront state's agents and allowing nonscientific and improper testimony to be presented as ineffective assistance of counsel under the sixth and fourteenth amendments to the United States Constitution;

x.  Denial of due process in conviction of Petitioner on a single act of arson as a means of causing the death of more than one person as insufficient evidence to support a verdict of felony murder or an statutory aggravating factor of more than one murder and murder in the course of a felony with specific intent to kill;

xi.  The denial of the continuance at the pre-appeal 19-2719 proceedings as a denial of due process guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution;

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 29**

xii.  The denial of jury factfinding of the statutory aggravating circumstances, mitigating circumstances, and the weight of the mitigation against each statutory aggravating circumstance violated the sixth, eighth and fourteenth amendments to the United States Constitution;

xiii.  The delay in arraignment as a violation of the Fourth Amendment to the United States Constitution.

xiv.  Denial of a fair trial by the adverse publicity and courtroom disruptions during the trial in violation of Petitioner's right to a fair and impartial trial.

(f)  Failure to adequately investigate the presence of Detective Raney and the prosecuting attorneys at the interception of phone communications between Robin Row and Joan McHugh;

(g)  Failure by appointed conflict counsel Rolf Kehne to persist in the request for appointment of competent co-counsel after appointed counsel, John Adams, was appointed as Kootenai County Public Defender and thus unable to fully assist in the appeal;

(h)  Failure by appointed conflict counsel, Rolf Kehne, to withdraw when John Adams was appointed Kootenai county and Mr. Kehne's workload was such that competent representation of Petitioner in a capital case was neither financially or professionally possible;

(i)  Failure by appointed conflict counsel to withdraw as a result of the financial conflict of interest which arose as a result of the allocation of funding and conflict-counsel contract provisions in the agreement with Ada County Public Defender's Office;

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 30**

(j)  The cumulative impact of the errors and omissions described above was ineffective assistance of counsel.

83.  Prejudice resulted from trial and appellate counsels' errors and omissions, including but not limited to:

(a)  But for the errors and omissions set forth hereinabove, considered individually and/or cumulatively, the verdict and sentence at Petitioner's trial would have been different. Namely, Petitioner would have been found not guilty and no sentence would have resulted and if an erroneous conviction resulted, a sentence of less than death would have been rendered with the effective assistance of counsel;

(b)  But for counsels' errors and omissions, sufficient information would have been presented at sentencing which would have compelled the court to find the mitigating circumstances outweighed each aggravating factor;

(c)  But for counsels' errors and omissions, the organic brain damage of Petitioner would have compelled a finding of reduced culpability and probably resulted in a life sentence;

(d)  But for counsels' errors and omissions, the trial court would have performed his statutory and constitutional responsibilities in making an independent determination of the statutory aggravating factors of "multiple murder" to exist beyond a reasonable doubt;

(e)  But for counsels' errors the jury would not have deliberated on issues which were not part of their responsibility, the submission of which probably affected their deliberations and verdict;

(f)  But for counsels' errors and omissions, the evidence of Petitioner's mental illness would have triggered the protections of the statutory provisions for consideration of mental illness and resulted in a sentence less than death;

(g)  But for counsels' errors and omissions, the Idaho Supreme Court would have understood and appropriately addressed the issues raised on appeal and granted Petitioner a new trial, re-sentencing and further proceedings on post-conviction;

(h)  But for counsels' errors and omissions, the trial court would have had a residual doubt regarding the guilt of Petitioner and would not have sentenced her to death as a result of said uncertainty;

(i)  Petitioner was prejudiced by the failure of counsel to discover the information surrounding critical state's witnesses Joan McHugh, Bernard McHugh and John Blackwell and put it to full defensive use.  The information wholly undermines the credibility of the two critical witnesses presented by the State.  The information also rebuts and establishes as untrue the Prosecutor's knowing misstatements that Mr. McHugh had unintentionally written a bad check and the finding that Joan McHugh was not an agent of the State when she secured what was used as incriminating statements from Robin Row while she was in custody, represented by counsel and under formal charges of murder.

(j)  As a result of the failure to discover the information, counsel was deprived of the opportunity and ability to rebut the intentionally erroneous argument made to the jury and would have critically impacted the deliberations by the jury.

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 32**

(k) But for the errors and omissions set forth hereinabove, considered individually and/or cumulatively, the verdict and sentence at Petitioner's trial would have been different. More particularly, in light of the information now known regarding the state's star witnesses lack of credibility and criminal history and close relationship with the State as those matters undermined and disputed the argument and evidence presented by the State in this matter, no reasonable jurist charged with the awesome responsibility of determining eligibility for a death sentence and the appropriate consideration of the actual imposition of the death sentence would have found Petitioner guilty.

## EIGHTH GROUND: THE SPECIAL VERDICTS

84. The trial court's findings that the jury verdict established as a matter of law two of the statutory aggravating factors violated Petitioner's rights to Due Process in a Capital Case in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution as held in *Walton v. Arizona,* 497 U.S.639 (1990), *Gardner v. Florida*, 430 U.S. 349 (1977); *Hicks v. Oklahoma, supra; and Woodson v. North Carolina,* 428 U.S. 280 (1976).

### Facts Supporting the Claim

85. At the close of the evidence the trial court submitted special findings to the jury with its general verdict form asking the jury to determine by it's verdict whether they found first degree by a unanimous finding of premeditation, murder in the course of arson or both. On all three counts the jury returned special verdict findings of both premeditation and in the course of an arson.

86. Following submission of the verdict and before sentencing, the sentencing judge indicated that the jury verdicts finding Petitioner guilty of more than one murder and alternate theories of murder in the first degree, premeditation and felony murder established two statutory aggravating factors supporting a sentence of death as a matter of law. The sentencing judge adhered to the findings as a matter of law and sentenced Petitioner to death after weighing the mitigation against the multiple murder aggravating factor. The trial court found the commission in the course of an arson was not considered as it was irrelevant how she killed her children.

87. Idaho's death penalty scheme and judicial opinions interpreting the same, place the sole fact finding responsibility of statutory aggravating factors on the judge. Idaho Code §19-2515(c); *Creech v. Arave*, 947 F. 2d 873 (9th Cir. 1991), *cert. denied*, 507 U.S. 1029, 113 S. Ct. 1840 (1993), *reversed on other grounds*, 507 U.S. 463.

88. The jury is not a participant in the determination of aggravating factors or any other aspect of the capital sentencing process. *See e.g., State v. Charbonneau*, 774 P.2d 299, *cert. denied*, 493 U.S. 922, 110 S. Ct. 287 (1989), *overruled on other grounds, State v. Card*, 121 Idaho 425, 825 P.2d 1081 (1991), *cert. denied*, 506 U.S. 915, 113 S. Ct. 32 (1992); *State v. Fields*, 908 P. 2d 1211 (1995); *State v. Sivak*, 674 P.2d 396 (1983), *cert. denied*, 468 U.S. 1220, 104 S. Ct. 3591 (1983).

89. There are no special verdicts in criminal cases in Idaho. *State v. Lankford*, 747 P.2d 710 (Idaho 1987), *reversed and remanded on other grounds*, 500 U.S. 110 (1991).

90. The trial court's reliance on the jury verdict to establish the statutory aggravating factors of multiple murders (the only aggravating factor upon which the required weighing was

**SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY - 34**



performed) and the trial court's submission of special jury findings and reliance on the jury

findings to establish as a matter of law the statutory aggravating factor of felony-murder, with

specific intent, unconstitutionally shifted the trial court's responsibility to the jury in violation of

the liberty interest established by state law and the right to non-jury participation in a capital

case.

## NINTH GROUND: "UTTER DISREGARD" BASED UPON BIOLOGICAL MATERNAL RELATIONSHIP

91. Determination of an aggravating factor and the imposition of death based in part by

the trial court's moral aversion to Petitioner's status as the biological mother to two of the

victims did not serve any deterrent or valid basis and violated the Eighth Amendment under

*Coker v. Georgia*, 433 U.S. 584, 592 (1977) (plurality); *Thompson v. Oklahoma*, 487 U.S. 815,

837-38 (1988) (plurality); *Tison v. Arizona*, 481 U.S. 137, 149(1987); *Enmund v. Florida*, 458

U.S. 782, 798-801 (1982).

### Facts Supporting the Claim

92. The death sentence here was in part imposed as a result of Petitioner's gender as

demonstrated by the trial judge's articulate abhorrence of the mother-status of the defendant as

the most egregious circumstance imaginable.

93. In its determination of the statutory aggravating factors and its determination to

sentence Petitioner to death the trial judge relied on constitutionally impermissible factors,

including that the relationship of biological mother to the two children who perished in the fire,

"catapult this case in the heightened dimension of utter disregard for human life. . .". The court

further found factual support of the utter disregard factor in the fact that:

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY - 35**

"Robin Row's actions represent the final betrayal of motherhood and embody the ultimate affront to civilized notions of maternal instinct. ... Maternal "pedocide" – the killing of one's own children -- is the embodiment of the cold-blooded, pitiless slayer-- a descent into the blackened heart of darkness."

## TENTH GROUND: INSUFFICIENT EVIDENCE OF "UTTER DISREGARD"

94. In its determination of the statutory aggravating factors and its determination to sentence Petitioner to death the trial judge relied on constitutionally impermissible factors, which, under any circumstances were insufficient to support the finding in violation of the Eighth and Fourteenth Amendments to the United States Constitution as guaranteed by *Jackson v. Virginia*, 443 U.S. 307 (1979).

### Facts Supporting the Claim

95. The only facts upon which the trial judge based a finding of utter disregard for human life was the fact that Petitioner was the natural mother of two of the victims. Absent that fact, consideration of which, by its gender specific basis is unconstitutional, and by itself is insufficient evidence of Petitioner's utter disregard for human life in the context of that factor as defined in *State v. Osborn*, 631 P.2d 187 (Idaho 1981) and *Arave v. Creech*, 113 S. Ct. 1534 (1993).

## ELEVENTH GROUND: IMPROPER WEIGHING PROCEDURES AND REVIEW

96. The Idaho Supreme Court's failure to enforce the application of its death penalty statute by weighing all mitigating circumstances against each statutory aggravating circumstance denied Petitioner her right to be free of cruel and unusual punishment and the right to the fair and equal application of state law in violation of the Eighth Amendment and the Equal Protection and

**SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY - 36**

Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution. *Hicks v. Oklahoma*, 447 U.S. 343 (1980).

## Facts Supporting the Claim

97. In *State v. Charboneau, supra,* the Idaho Supreme Court "held that a sentencing judge must weigh all mitigating circumstances against each of the aggravating circumstances, separately, rather than merely weighing all of the mitigating circumstances against all of the aggravators. *See State v. Leavitt,* 116 Idaho 285, 295, 775 P.2d 599, 609 (1989) (Johnson, J., concurring).

98. In this case, the sentencing judge found four statutory aggravating factors, discussed at length the factual support for each of the aggravators. He also considered non-statutory aggravating factors. The trial court then "weighed all mitigating circumstances separately against the single "multiple murders" aggravator, "specifically I.C. §19- 2515(g)(2)--that the defendant committed three (3) wilful, deliberate and premeditated first degree murders." After considering the mitigating circumstances raised by Petitioner, the judge concluded that the mitigating factors did not outweigh the "multiple murders" aggravator found in I.C. §19-2515(g)(2), to make the imposition of the death penalty unjust.

99. After applying the *Charboneau* analysis to the "multiple murders" aggravator the district court specifically "declined to formally weigh each of the remaining three (3) aggravating circumstances against all mitigating factors." The judge did, however, note that the "arson factor" was of "no legal significance." He also stated that if the sentence is reversed and

**SECOND AMENDED PETITION FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 37**

remanded that he had no doubt that he would impose death on the utter disregard for human life factor. The Idaho Supreme Court found no error in this regard. *State v. Row, supra,* at 1088.

100. In weighing the multiple murders factor however, the trial judge clearly referenced those facts he had found to support the utter disregard for human life factor, namely, Petitioner's status as the victims' mother which was the sole factual support for "utter disregard factor."

101. The Idaho courts' failure to follow the mandatory weighing procedure in the consideration and imposition of death deprives Petitioner of those guarantees of strict scrutiny and appropriate appellate review in capital cases in violation of *Gregg v. Georgia, supra; Woodson v. North Carolina, supra; Proffitt v. Florida,* 428 U.S. 242 (1976)

## TWELFTH GROUND: "UTTER DISREGARD" AS VAGUE AND AMBIGUOUS.

102. Notwithstanding the United States Supreme Court's opinion in *Creech v. Arave, supra,* Idaho's application of the "utter disregard for human life" statutory aggravating factor under Idaho Code 19-2515(g)(6) is now unconstitutionally vague and ambiguous under the Eighth and Fourteenth Amendments to the Constitution of the United States as upheld in *Godfrey v. Georgia, 446* U.S. 420, 980 (1980).

### Facts Supporting the Claim

103. After the decision of the United States Supreme Court in *Creech v. Arave, supra,* the Idaho Supreme Court revised and confused the definition of the statutory aggravating factor of "utter disregard for human life" in such a way as to render it meaningless. *State v. Wood,* 967 p.2D 702, 715 (Idaho 1998).

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 38**

104. In *State v. Fain*, 774 P.2d 252 (Idaho 1989), the Idaho Supreme Court characterized this "utter disregard" factor as referring "not to the outrageousness of the acts constituting the murder, but to the defendant's lack of conscientious scruples against killing another human being." *Id.*, at 269.  In *State v. Wood*, supra, the Idaho Supreme Court affirmed a trial judge's reliance on the defendant's conduct in mutilating his victim's body seven days after the murder to support a finding of "utter disregard for human life" as conduct coming within this characterization. The state supreme court's expansion of the scope given to the utter disregard aggravating factor undermines the meaning of this subsection upon which the Court has upheld its constitutionality.  *See State v. Wood, supra,*

967 P.2d, at 724 (Johnson, J. concurring).

## THIRTEENTH GROUND:  IDAHO'S DEATH PENALTY SCHEME AS UNCONSTITUTIONAL

105.  Idaho's death penalty scheme as applied by the Idaho Supreme court wholly fails to channel the sentencer's discretion in any meaningful way, and permits the arbitrary and capricious imposition of the death penalty based upon a vague and ambiguous statutory scheme. *Gregg v. Georgia,* 428 U.S. 153, 206-207, 96 S.Ct. 2909, 2940-2941, 49 L.Ed.2d 859 (1976)*; Furman v. Georgia,* 408 U.S. 238, 249, 92 S.Ct. 2726, 2732, 33 L.Ed.2d 346 (1972) (Douglas, J., concurring) (internal quotation marks omitted); *id.*, 408 U.S., at 310, 92 S.Ct., at 2763 (Stewart, J., concurring).*; Parker v. Dugger,* 497 U.S. 1023 (1990).

### Facts Supporting the Claim

106.  Idaho's death penalty scheme is set forth in Idaho Code §§18-4001; 18-4003; 18-4004; 19-2515; (am. 1995); 19-2719 (am. 1995); 19-2827 (am. 1994); 19-2705; Idaho Criminal

Rules 33.1; 33.2. The death penalty scheme has been significantly amended and revised in recent years. The amended version of the death penalty statutes permits unfettered discretion in the determination of aggravating factors, the imposition of the death penalty upon reckless indifference to human life and the unfettered discretion in the determination of mitigating factors.

107. The application of the process of weighing all mitigating evidence against each aggravating factor found to exist beyond a reasonable doubt permits unfettered discretion in the consideration of non-statutory aggravation without any meaningful review of the findings.

108. The application on appeal of affirming any death sentence in which an aggravating factor is found regardless of the invalid factors or non-statutory aggravating factors considered deprives the Petitioner of the trial judges consideration of the justness of the death sentence in light of the revised fact findings.

## FOURTEENTH GROUND: FAILURE TO COMPLETE MANDATORY AUTOMATIC REVIEW

109. The refusal of the Idaho Supreme Court to perform their statutory duty to determine whether the sentence was "excessive" violated Petitioner's right to a state-created liberty interest guaranteed under the Due Process Clauses of the Fifth and Fourteenth amendments and the proscriptions against the arbitrary and capricious application of the death penalty in the Eighth Amendment to the Constitution. *Hicks v. Oklahoma*, 447 U.S. 343 (1980)

### Facts Supporting the Claim

110. The Idaho Supreme Court is obligated by statute to review the record of the trial and the sentencing hearing in light of the requirements of I.C. §19-2827(c). I.C. §19-2827; *State v. Wells*, 124 Idaho 836, 837, 864 P.2d 1123, 1124 (1993).

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 40**

111. Idaho Code §19-28279( c) requires that this Court review all death sentences and that they specifically determine "[w]hether the sentence of death is excessive. I.C. §19-2827(c). The Idaho Legislature amended I.C. §19-2827(c)(3) in 1994, which the Supreme Court found rendered the term "excessive" meaningless. See *Sivak v. State*, 127 Idaho 387, 901 P.2d 494 (1995), *cert. denied,* 516 U.S. 1095, 116 S.Ct. 89, 133 L.Ed.2d 763 (1996).

112. In this case, the Idaho Supreme Court declined to undertake any consideration of the "excessiveness" of Petitioner's sentence as required by the statute.

## FIFTEENTH GROUND: EX POST FACTO APPLICATION OF AMENDED DEATH PENALTY STATUTE.

113. The Idaho Supreme Court applied *ex post facto* portions of the amended versions of statutes in question which modified the death penalty scheme. The statute's amendments appear to transform Idaho's statute from a weighing to a threshold statute, and to end the proportionality review requirement.

114. The *ex post facto* application violates the Due Process and Equal Protection clauses of the Fifth and Fourteenth Amendments as envisioned by the Eighth Amendment's proscription to the imposition of cruel and unusual punishment. It results in arbitrary and capricious application of the death penalty. The partial enforcement of the amended statutes as applied in this case is clearly contrary to the dictates of the United States Supreme Court in *Hicks v. Oklahoma, supra;, Gregg v. Georgia, supra*; *Zant v. Stevens*, 462 U.S. 862 (1983).

### Facts Supporting the Claim

115.  The deaths of Randy Row, Joshua Cornellier and Tabitha Cornellier occurred on February 10, 1992.

116.  Petitioner was convicted of the deaths on March 5, 1993; and Petitioner was sentenced to death on December 16, 1993.  Findings of Fact and Judgment of Conviction and Sentence were filed the same day. The trial court considered non-statutory aggravators.   Notice of Appeal was filed on January 26, 1994.

117.  At all relevant times, the Idaho Supreme Court was obligated by statute to review the record of the trial and the sentencing hearing in light of the requirements of I.C. §19-2827(c)(am. 1994), which at the time of Petitioner's conviction and sentence required the Court to determine "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." I.C. §19-2827(c)(effective 1984).

118.  At all relevant times, Idaho's statutory scheme provided for a weighing procedure by the trial court.  I.C. §19-2515(c), (am. 1995).

119.  Idaho's Accelerated Post-conviction and Special Appellate Proceedings under Idaho Code §19-2719 caused a delay of consideration of the appeal beyond the effective amendment date of the Automatic Review.

120.  The Idaho Supreme Court declined to undertake any proportionality review in Petitioner's case.  The Idaho Supreme Court declined to remand the case to the trial court to

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 42**



require weighing consistent with the mandatory weighing statute as applied in *State v. Charbonneau, supra.*

## SIXTEENTH GROUND: UNCONSTITUTIONAL SHIFTS OF BURDEN OF PROOF

121. Idaho's capital sentencing statute shifts the burden of proof from the state to the defendant by mandating that the court "shall sentence defendant to death" upon finding an aggravating circumstance "unless" the defendant sustains the burden of producing sufficient mitigation to outweigh the aggravation so as to make the imposition of death unjust in violation of the Eighth and Fourteenth amendments to the Constitution. See *Furman v. Georgia, supra; Gregg v. Georgia, supra; Gardner v. Florida, supra,* and *Hicks v. Oklahoma, supra.*

### Facts Supporting the Claim

122. Idaho Code §19-2515 (c) provides that

> Where a person is convicted of an offense which may be punishable by death, a sentence of death shall not be imposed unless the court finds at least one (1) statutory aggravating circumstance. Where the court finds a statutory aggravating circumstance the court shall sentence the defendant to death unless the court finds that mitigating circumstances which may be presented are sufficiently compelling that the death penalty would be unjust.

I.C. §19-2515(c)(am. 1995). The mandatory language shifts the burden of proof or the risk of non-persuasion to the defendant. The shift in the burden significantly increases the risk of randomness and uncertainty in infliction of the death penalty.

## SEVENTEENTH GROUND: UNCONSTITUTIONAL DEFINITION OF MITIGATION

123. The Supreme Court of Idaho has interpreted the Idaho death penalty statute and procedures in an unconstitutional manner namely by unconstitutionally limiting the definition of mitigating circumstances to evidence which "justifies the killing" and by their case law have

instructed lower district court in a manner in which Petitioner was deprived of her right to have

all evidence in mitigation considered.  The Idaho Supreme Court's misunderstanding and thus

mis-instruction to the trial courts of mitigation resulted in violation of Petitioner's rights to have

all mitigating circumstances concerning whether Petitioner should die (not whether the acts were

"justified") considered in the state courts, and to effective assistance of counsel under the sixth,

eighth and fourteenth amendments to the United States Constitution. *Parker v. Dugger*, 497 U.S.

1023 (1990); *Eddings v. Oklahoma,* 455 U.S. 104 (1982) *Lockett v. Ohio*, 438 U. S. 586;

### **Fact Supporting the Claim**

124.  The application of Idaho's statutory scheme as instructed by the Idaho Supreme

Court results in a skewed definition of mitigation.  *See e.g., McKinney v. State,,* 772 P. 2d 1219,

1221 (Idaho, 1989).

125.  The district judge in this case is inclined to impose the death penalty in this case

only because it is the harshest penalty available by law. No other penological purposes including

whether a lesser sentence would serve the same purposes in deterrence and protection of society

were considered by the trial court.

126.  The district judge in this case is not inclined to consider relevant mitigating

evidence unless it "justifies" the killing.  Thus mental illness, though found to exist, was not

considered by this judge to hold significant weight in mitigation.  It was, in fact, in part used to

support the finding in aggravation of lack of remorse and cold-heartedness.  The vast differences

in which mitigating circumstances are considered by trial judges throughout the state due to the

"instructions" or lack thereof by the Idaho Supreme Court, renders the imposition of the death

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 44**

penalty in Idaho, and in this case, arbitrary and capricious and thus, in violation of the Eighth and

Fourteenth Amendments to the United States Constitution.

**EIGHTEENTH GROUND:  IDAHO'S CAPITAL SENTENCING STATUTE
"SUFFICIENTLY COMPELLING" LANGUAGE.**

127.  Idaho's capital sentencing statute which mandates that the trial court "shall sentence

defendant to death" upon a finding of a statutory aggravating circumstance "unless the mitigating

circumstances . . . are **sufficiently compelling** to make the imposition of death unjust" violates

the Eighth and Fourteenth Amendments to the Constitution under *Furman v. Georgia, supra;*

*Gregg v. Georgia, supra; Woodson v. North Carolina, supra* and *Coker v. Georgia*, 433 U.S. 584

(1977).

### Facts Supporting the Claim

128.  Idaho Code §19-2515(c) provides,

Where a person is convicted of an offense which may be punishable by death, a
sentence of death shall not be imposed unless the court finds at least one (1)
statutory aggravating circumstance.  Where the court finds a statutory aggravating
circumstance the shall sentence the defendant to death unless the court finds that
mitigating circumstances which my be presented are sufficiently compelling that
the death penalty would be unjust.

I.C. §19-2515(c).

129.  The mandatory language of the statute, Idaho Code §19-2515(c), that the court

"shall impose death" violates the constitutional prohibition of mandatory death sentences

condemned in *Woodson v. North Carolina, supra.*

130.  The language which follows, however,  "unless mitigating circumstances are

**SECOND AMENDED PETITION FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 45**

. . . . sufficiently compelling" to make the death penalty unjust eliminates the weighing process altogether and leaves the determination of what is "sufficiently compelling" to the unfettered discretion of the sentencer.

## NINETEENTH GROUND:  FINANCIAL RESPONSIBILITIES ON COUNTY GOVERNMENTS

131.  Due to the financial allocation of responsibilities to the county governments rather than the State of Idaho, the financial ability or inability to finance the prosecution of a capital case results in the arbitrary and capricious application of the death penalty.  *Furman v. Georgia, supra; Gregg v. Georgia, supra.; Bush v. Gore,* 531 U.S. 98 (2000).

### Facts Supporting the Claim

132.  At all relevant times, the financial burden in the prosecution and indigent defense of capital cases was statutorily imposed on individual counties.

133.  The high cost of due process in capital cases has skewed the application of the death sentences in Idaho.

134.  Those counties unwilling to bear the high cost of capital litigation have directly or indirectly caused and/or influenced the state prosecutors and the trial judges not to seek or impose the death penalty.

135.  In Idaho, counties unable to finance a capital litigation do not seek death, while those counties, which have the resources or the ability to cheaply appoint defense counsel who do not advocate for the client, seek death.

136.  The distinction in the choice of who will die and who will not which is in relevant part dependent upon the County finances and commissioners.

**SECOND AMENDED PETITION FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 46**

137.  Ada County is the most urban county in the state and as such has a sufficient tax base to support the prosecution and defense of capital cases, making Petitioner's selection for death much more likely.

## TWENTIETH GROUND:  LENGTH AND CONDITIONS OF CONFINEMENT

138.  The length of confinement of Petitioner by the State of Idaho pending a sentence of death is cruel and unusual and violates the due process rights of Petitioner by inflicting psychological and physical torture on Petitioner and imposes on Petitioner an additional sentence not provided by statute.

### Facts Supporting the Claim

139.  The application of Idaho Code §19-2705 by the Idaho Department of Correction to persons sentenced to death results in the barbaric, intentional infliction of extreme emotional distress in the execution of a sentence to which Petitioner was not sentenced.

140.  The State of Idaho subjects death sentenced individuals to solitary confinement for years, more than five, pending the constitutional rights to appeal which violates the constitutional prohibition against cruel and unusual punishment.

141.  The State of Idaho has interpreted Idaho Code §19-2705 in a manner which subjects death sentenced individuals to unreasonably harsh and isolated conditions creating significant psychological and physical abuse condemning death row inmates to a punishment far more barbaric and inhumane than the actual sentence of death.

142.  Petitioner is held in isolation permitted out of her cell less than one (1) hour a day. When out of her cell she is kept in full restraints.  She is permitted no visitors except immediate

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 47**

family. Because Ms. Row's family do not live in the area she has had no visitation other than counsel and spiritual advisor. Because Ms. Row is the only female on death row and is kept in a facility separate from the men sentenced to die in Idaho, she is denied any and all communication with any person other than DOC staff and her counsel and limited telephonic and written communication with persons from outside the prisons. As a result of the isolation and deprivation, Ms. Row's already acute mental illness is intensified and she is forced to endure chronic significant depression. Ms. Row suffers from other psychological and physical effects of the lengthy incarceration in solitary confinement, all of which can and will be documented upon discovery and ability to access petitioner for purposes of physical and psychological examination.

**TWENTY-FIRST GROUND: CONSIDERATION OF ALTERNATIVE SENTENCE**

143. Petitioner was deprived of her rights under the Eighth and Fourteenth Amendments to Due Process and Equal Protection under the laws and freedom from excessive or cruel and unusual punishment to have the death penalty reserved for those rare crimes and individuals which compel a finding that no other sentence will adequately satisfy society's sentencing goal. *Furman v. Georgia*, supra; *Gregg v. Georgia*, supra; *Woodson v. North Carolina, supra.*

### Facts Supporting the Claim

144. The sentencing court failed to adequately consider alternatives to the death penalty, except in determining whether a life sentence would be harsher than death.

145. Following the sentencing hearing held in this case, the trial court entered its findings in considering the death penalty under I.C. §19-2515.

146. In these findings, the court mentioned only the consideration of alternatives to the death penalty based upon whether she would suffer more by a life sentence. The court said:

> .... In other words, should she not be condemned to everlasting life imprisonment; to live every day with this horror on her conscience; to live as a virtual outcast in the penitentiary, day after day, year after year, to the last breath of her allotted existence? In addition, such a sentence would obviate the necessity of costly, time consuming appeals, federal review, and the almost incomprehensible delays that are associated with a death penalty case. . . .That this defendant might someday receive a commutation and be released, or even escape, is also a theoretical possibility. That Petitioner would block out her feelings of guilt and remorse; that she would disconnect from the magnitude of her crimes; that she would manipulate reality and bend the truth to soothe her conscience is, in my opinion, a foregone conclusion. A fixed life sentence would simply not achieve the theoretical punishment/retribution goals posited above.

147. The trial judge failed to consider any legitimate penological purpose of sentencing other than to impose the harshest penalty available under the law as punishment or retribution. No consideration of deterrence or the ability to protect society with a lesser sentence was considered.

148. In fact, the trial judge found the mental illness of Petitioner would relieve her of the pain her punishment should include and thus a life sentence would be insufficiently torturous to impose.

149. The trial court failed to consider alternatives less than death including the critically important fact that Petitioner's incarceration would eliminate any risk that she would have any further children --the specific element of society the court identified as compelling the harshest penalty.

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 49**

150. The trial judge's failure to give any consideration to the penological purposes for sentencing other than pain, punishment and retribution violated Petitioner's Eighth and Fourteenth amendment rights.

## TWENTY-SECOND GROUND: CONSIDERATION OF MENTAL ILLNESS UNDER IDAHO CODE §19-2523.

151. Petitioner's due process rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, as well as her right to be free from cruel and unusual punishment as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution were violated when the trial court failed to apply the sentencing guidelines which the trial court must consider relating to mental illness under Idaho Code §19-2523. *Hicks v. Oklahoma, supra; Gardner v. Florida, supra.*

### Facts Supporting the Claim

152. Petitioner was sentenced by Judge Alan Schwartzman on December 16, 1993. The trial court entered written findings under Idaho Code §19-2515 the same date.

153. The trial judge's written findings disclosed he found Petitioner mentally ill and accepted that she had a mental disorder but rejected that as mitigation because Petitioner was not "psychotic --i.e., having lost touch with reality, or that she does not know the difference between right and wrong or that she is incapable of conforming her conduct to the dictates and norms of society." The trial judge did not consider the mental illness, as required under Idaho Code §19-2523, but only in the context of rejecting life in prison because her mental disorder would spare her the realization of the horrors of her acts.

**SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 50**

154.  The mandate of Idaho Code §19-2523 requires the trial court to consider as an independent sentencing factor a defendant's mental illness in determining an appropriate sentence.  Idaho Code §19-2523(1) mandates that if a defendant's mental condition is a significant issue, the sentencing judge must consider:

> (a)  the extent to which the defendant is mentally ill;

> (b)  the degree of illness or defect and level of functional impairment;

> (c)  the prognosis for improvement of rehabilitation;

> (d)  the availability of treatment and level of care required;

> (e)  any risk of danger defendant may create for the public, if at large, or the absence of such risk;

> (f)  the capacity of defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law at the time of the offense.

Idaho Code §19-2523.

155.  The trial court judge failed to apply the statute to the evidence of defendant's mental illness.  The court's statements regarding evidence of mental illness made from the bench at the time of sentencing show no mention of Idaho Code §19-2523, the specific criteria therein or that the court was taking the statutory mandate into consideration in anyway whatsoever.

156.  The failure to consider the mental illness in the statutory context deprived Petitioner of the protection of a liberty interest created by state law and to the full consideration of matters in mitigation in violation of the Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 51**

**TWENTY-THIRD GROUND**: **DENIAL OF JURY FACT-FINDING OF STATUTORY AGGRAVATING FACTORS.**

157. The death penalty statute under which petitioner was tried and sentenced (Idaho Code §19-2515) denied petitioner her right under the United States and Idaho Constitutions to have the aggravating circumstances which made her eligible for the death penalty determined only by a jury.   United States Constitution, Fifth, Sixth and Fourteenth Amendments, Idaho Constitution Article I, Sections 1,2, 7, 13, 18, Idaho Code 19-1902; *Ring v. Arizona, supra;￼ Apprendi v. New Jersey,* 530 U. S. 466 (2000); *Sullivan v. Louisiana,* 508 U.S. 275 (1993); *In re Winship*, 397 U.S. 358 (1972); *Duncan v. Louisiana,* 391 U.S. 145 (1968).

### Facts Supporting Twenty-Third Through Thirtieth Grounds

158. Petitioner was charged with an amended information which contained no notice of any of the statutory aggravating circumstances ultimately found by the sentencing judge.  CR 43 (Information); CR 415 (Findings of Judge).   No preliminary hearing was held to determine probable cause respecting any aggravating circumstances.

159. The jury which tried petitioner was not instructed on and did not determine any of the statutory aggravating circumstances.  In fact, the jury was explicitly instructed that it could not consider punishment in its deliberations.  CR 321 (Instruction 38).

160. As required by Idaho Code 19-2515(c), the trial judge made the findings in aggravation beyond a reasonable doubt.

161. Under Idaho Code Section 19-2515(f), the trial judge made the findings in mitigation.

**SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 52**

162. As required by Idaho Code Section 19-2515(f), the trial judge weighed the each of two statutory aggravating circumstances which he found to exist against the mitigating circumstances which he considered.

163. Idaho's Constitution and statutory scheme requires a jury to determine facts necessary to enhance sentences.

164. In all but the fact finding requirement of a statutory aggravating factor in a capital case, Idaho's sentencing enhancement statutes require a jury trial. *See e.g.*, Idaho Code §§19-25214; 19-2520; 19-2520B; 19-2520C. Failure to give a jury trial on the statutory aggravating factors, denied Petitioner a substantial liberty interest created by the state constitutional and statutory guaranties.

## TWENTY-FOURTH GROUND: RIGHT TO NOTICE

165. The death penalty statute under which petitioner was tried and sentenced denied petitioner her right to notice in the charging document of the aggravating circumstances which would make her eligible to be sentenced to death. United States Constitution, Fifth, Sixth, and Fourteenth Amendments; Idaho Constitution, Article I, Sections 1, 8, and 13, Idaho Code 19-102; *Ring v. Arizona, supra; Jones v. United States*, 526 U.S. 227 (1999).

### Facts Supporting the Claim

166. Petitioner re-alleges and relies on the facts stated hereinabove in paragraphs 158 through 165 hereinabove.

**TWENTY-FIFTH GROUND: DENIAL OF PRELIMINARY HEARING ON AGGRAVATING FACTORS.**

167. The death penalty statute under which petitioner was tried and sentenced to death deprived petitioner of her right under Idaho law and the Idaho Constitution of a preliminary examination on the existence of aggravating circumstances which would make petitioner eligible for the death penalty, denial of which violates the due process clauses of the Fourteenth Amendment to the United States; Idaho Constitution, Article I, Sections 1, 7, 13, 18; Idaho Code 19-1308; *Hicks v. Oklahoma,* 447 U.S.343 (1980).

<u>**Facts Supporting the Claim**</u>

168. Petitioner re-alleges and relies on the facts stated hereinabove in paragraphs 158 through 167 hereinabove.

**TWENTY-SIXTH GROUND: RIGHT TO JURY SENTENCING**

169. The death penalty statute under which petitioner was tried and sentenced denied petitioner her right to have a jury determine her sentence. United States Constitution, Sixth, Eighth and Fourteenth Amendments, *Ring v. Arizona*, 536 U.S. at —, 122 S.Ct. at 2446 (Breyer J., *concurring in the judgment*); *Furman v. Georgia*, 408 U.S. 238 (1972).

<u>**Facts Supporting the Claim**</u>

170. Petitioner re-alleges and relies on the facts stated hereinabove in paragraphs 158 through 169 hereinabove.

**TWENTY-SEVENTH GROUND: RIGHT TO JURY WEIGHING**

171. The death penalty statute under which petitioner was tried and sentenced denied petitioner her right to have the factual question whether all of the mitigating circumstances

**SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 54**

outweighed each of the aggravating circumstances.  United States Constitution, Fifth, Sixth and

Fourteenth Amendments, Idaho Constitution, Article I, Sections 1, 7, 13, and 18, *Ring v.*

*Arizona, supra; State v. Charboneau*, 116 Idaho 129, 774 P.2d 299 (1989).

### Facts Supporting the Claim

172.  Petitioner re-alleges and  relies on the facts stated hereinabove in paragraphs 158

through 171 hereinabove.

## TWENTY-EIGHTH GROUND:  LENGTH OF DELAY

173.  The 9 years under which petitioner has been confined under a sentence of death

obtained through an unconstitutional process used to secure her death sentence has subjected

petitioner to cruel and unusual punishment under both the federal and Idaho state constitutions.

United States Constitution, Eighth and Fourteenth Amendments; Idaho Constitution, Article I,

Sections 1, 6, 13, and 18;  *State v. Fain*, 116 Idaho 82, 113, 774 P.2d 242, 283 (1989) (Bistline, J,

*concurring and dissenting)*; *State v. Osborn*, 104 Idaho 809,821, 663  P.2d 1111, 1123 (1983)

Bistline, J., *concurring and dissenting.*)

### Facts Supporting the Claim

174.  Petitioner re-alleges and  relies on the facts stated hereinabove in paragraphs 158

through 173 hereinabove.

## TWENTY-NINTH GROUND:  EQUAL PROTECTION IN RIGHT TO JURY

175.  To execute petitioner despite the clear unconstitutionality of the procedures by

which her death sentence was imposed and despite the fact that most or all other similarly

situated and tried capital defendants in Idaho will not be put to death without being afforded

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 55**

those constitutional protections, would constitute a gross and unjustifiable denial of the equal

protection of the law guaranteed by the Fourteenth Amendment to the Constitution of the United

States and Article 1, Section 2 of the Idaho Constitution and the arbitrary imposition of death in

violation of the Eighth Amendment to the Constitution of the United States and Article I, Section

6 of the Idaho Constitution. *Douglas v. California,* 372 U.S. 353, 357 (1963); *Smith v. Bennett,*

365 U.S. 708, 713-14 (1961); *See also, Furman v. Georgia, supra.*

### Facts Supporting the Claim

176. Petitioner re-alleges and relies on the facts stated hereinabove in paragraphs 158

through 175 hereinabove.

177. In response to the United States Supreme Court decision in *Ring v. Arizona,* the

Idaho Supreme Court reversed the sentence of Donald Fetterly, a defendant who committed and

was convicted of the offense for which he was originally sentenced to die before Petitioner's

conviction.

## THIRTIETH GROUND:  RIGHT TO JURY FACTFINDING UNDER IDAHO'S CONSTITUTION AND STATUTES.

178. The failure of the state of Idaho to apply the rights and guarantees of its own

constitution and laws requiring a jury to determine all questions of fact deprived the Petitioner of

her guarantees to Equal Protection and Due Process of law guaranteed by the United States

Constitution's Fifth, Sixth and Fourteenth Amendments.

### Facts Supporting the Claim

179. Petitioner re-alleges and relies on the facts stated hereinabove in paragraphs 158

through 178 hereinabove.

**SECOND AMENDED PETITION FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 56**

**THIRTY-FIRST GROUND:** DENIAL OF MEANINGFUL APPELLATE REVIEW

180.  The 1994 and 1995 amendments to the Idaho death penalty statutes together with

the application of those statutes by the Idaho Supreme Court wholly deprived Petitioner of her

right to appeal and her rights thereunder to a meaningful appellate review in a capital case in

violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States

Constitution which is clearly contrary to the dictates of the United States Supreme Court in

*Furman v. Georgia, supra; Gregg v. Georgia, supra; Woodson v. North Carolina,* 428 U.S. 280

(1984).

### Facts Supporting the Claim

181.  The Idaho Supreme Court is obligated by statute to review the record of the trial and

the sentencing hearing in light of the requirements of I.C. §19-2827(c). I.C. §19-2827; *State v.*

*Wells,* 864 P.2d 1123, 1124 (1993).

182.  Idaho Code §19-2515 was amended to change the weighing procedures in the

decision to impose the death penalty;

183.  Idaho Code §19-2827 requires that the Idaho Supreme Court review all death

sentences and that the Court specifically determine "[w]hether the sentence of death is

excessive." I.C. §19-2827(c).

184.  According to the Idaho Supreme Court, the Idaho Legislature's amendment of I.C.

§19-2827(c)(3) in 1994 rendered the term "excessive" meaningless. See *Sivak v. State, supra.*

185.  The Idaho Supreme Court declined to undertake any consideration of the

"excessiveness" of Petitioner's sentence as required by the statute.

**THIRTY-SECOND GROUND**: CONSIDERATION OF A MITIGATING FACTOR AS A NON-STATUTORY AGGRAVATOR

186. The sentencing judge's consideration of a mitigating factor as a non-statutory aggravator and the Idaho Supreme Court's abdication of its appellate review responsibilities to the discretion of the trial judge violated the United States Constitution proscription of cruel and unusual punishment, resulting in vague and ambiguous standards for the imposition of death and the arbitrary and capricious application of the death penalty guaranteed by the Eighth Amendment and the due process and equal protection clauses of the Fifth and Fourteenth Amendments to the United States Constitution. *Parker v. Dugger, supra*; *Eddings v. Oklahoma,* 455 U.S. 104 (1982) *Lockett v. Ohio,* 438 U. S. 586.

### Facts Supporting the Claim

187. At sentencing, Petitioner's counsel requested that the district court consider as a mitigating factor, that she suffered from major mental illnesses including "alexithymia" and severe mental disorders - a diagnoses accepted by the trial court. Not considered by the trial court, but later determined to be troubling, was physical evidence of organic brain damage exemplified by a CT scan showing atrophy of the brain.

188. The district court considered this factor but dismissed the notion of traditional "insanity." The court instead considered the mental disorders, particularly the flat affect and emotionlessness which are symptomatic of a mental disorder of alexithymia, as a factor in favor of death. The court found the disorder would reduce the pain Petitioner might suffer under a life sentence.

189. The trial court failed to adequately consider that Petitioner's volatility and inability to show and feel normal emotions, including remorse, were symptomatic of the mental illness and by definition mitigating in nature.

190. The Idaho Supreme Court's failure to adequately define mitigation and instruct the lower court's accordingly has permitted the arbitrary and inconsistent application of the death penalty in violation of the Eighth Amendment under *Lockett v. Ohio, supra* and *Eddings v. Oklahoma, supra,* by application of the same "facts" as mitigation or aggravation as determined by the discretion of the trial judge.

191. At the time of Petitioner's appeal, though not at the time of her conviction and sentence, Idaho Code §19-2515 did not permit consideration by the trial judge of non-statutory aggravation to impose the death penalty.

**THIRTY-THIRD GROUND**: *EX PARTE* **COMMUNICATIONS OF THE JUDGE.**

192. At trial and sentencing, the trial judge's relationship with state's witnesses, Joan McHugh and John Blackwell as well as his numerous ex parte contacts with them and counsel outside the presence of Ms. Row resulted in a denial of impartial justice and a fair trial and sentencing, in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States.

**Facts Supporting the Claim**

193. The trial judge failed to disclose to Ms. Row [or her counsel] certain relationships and contacts outside of the Row case which added at least the appearance of unfairness to the

court's assessment of the credibility of the witness testimony and ultimately to the reliability of the sentence of death imposed upon Ms. Row.

194. The trial judge failed to advise Ms. Row and counsel that he had been and remained the presiding judge in *State v. Bernard McHugh*, Case No. 17639. As a result of presiding over Mr. McHugh's case, the court had information through his counsel and the Ada County Prosecutor's Office as well as his Presentence Investigation Report which was not available to Ms. Row or her counsel. Further, the court made modifications favorable to Mr. McHugh during the pendency of Robin Row's special appellate postconviction proceedings over which he presided and the court was aware that it would be the final arbiter in determining whether the judgment against Mr. McHugh would ultimately be dismissed.

195. The trial judge also failed to disclose that during the Row criminal prosecution the State's witnesses, Joan McHugh and her son John Blackwell began attending the same small Unitarian Church of which the judge was a long-time member. The court also omitted any mention to Ms. Row and her counsel that his Unitarian minister, Elizabeth Greene, accompanied Ms. McHugh to the trial and was visible to the court during Ms. McHugh's testimony and other times during the trial.

196. The judge also engaged in *ex parte* communications with both counsel for the defense and prosecution. Numerous bench and chamber conferences were referenced by counsel and the court in the record without disclosure of the content of the meetings.

197. The trial court's failure to advise counsel of the *ex parte* contacts with the witnesses and agents and remove himself from the proceedings in this matter deprived the defendant of her

right to an impartial trial, the appearance of justice and due process of law.  *See generally,*

*Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed. 2d 393 (1977).

198.  The trial judge failed to reveal to Ms. Row or her counsel certain relationships

outside the trial of this case which held the appearance of unfairness to Robin Row when

determination of credibility and emphasis on certain testimony was necessary to support the

judge's determination of the appropriate sentence.

## THIRTY-FOURTH GROUND:  CHAMBERS CONFERENCES OUTSIDE PETITIONER'S PRESENCE

199.  The Court's conduct in holding numerous chambers and off the record conferences

with prosecutors and defense counsel, together or separately, outside the presence of Ms. Row

was a denial of Petitioner's right to be present at all critical proceedings in violation of the Fifth,

Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

### Facts Supporting the Claim

200.  The numerous conferences held off the record and outside the presence of Robin

Row, the defendant therein include but are not limited to the following:

201.  Chamber conferences referenced in Case Number 18945:

(a)  After the court noted that the defendant was <u>not</u> present and trial counsel

referenced defendant's competency and psychological testing and "questions of ineffective

assistance of counsel," the court directed counsel to meet with him in chambers.   Tr, p. 41 (1-19-

93 );

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 61**

(b)  On January 25, 1993, Robin Row had not yet arrived and the court referenced an in chambers conference regarding scheduling but no indication of any other matters discussed. Tr Trial,  p. 44;

(c)  The Court stated, "that counsel and the Court have met in chambers insofar as the defendant's motion in limine is concerned regarding conduct that is not directly related to this charge." Tr Trial, p. 108 (1-25-93);

(d)  The court acknowledged having "talked with counsel in chambers after the last hearing on January 25th, I did have my Clerk prepare some of the Court's Tentative Findings of Fact relating to the - or at least one aspect of the suppression motion currently before the Court."  Tr Trial p. 111 (1-25-93);

(e)  Mr. Bourne stated' "[a]s I indicated in chambers, there may have to be some redacting done that will be apparent as the Court looks at the transcript..." of the interviews of the defendant.Tr Trial,  p. 177 (1-29-93);

(f)  The court references covering in chambers the admissibility of defendant's prior conviction. Tr Trial, p. 1178 (2-5-93 );

(g)  The judge stated he provided Mr. Cahill with a "full accounting" of the presentence material in *State v. Randy Row*. Tr Trial, p. 1185 (2-5-93);

(h)   Court and counsel discussed "informally in chambers" the sentencing process.  Tr Trial, p. 3683 (10-19-93)

202. Bench conferences referenced in Case Number 18945 "[a] discussion was held off the record by and between The Court and counsel at the Bench" during jury selection. Tr Trial, p. 246 (2-1-93);

203. The minutes in the Clerk's record, including significant legal argument on substantive issues affecting Petitioner's appellate remedies, which were held outside the Petitioner's presence reflect the following proceedings:

(a) Hearing regarding Motion for Extension of time to file special appellate postconviction petition. Clerk's Supplemental Record, vol I, page 50 [ "CR Supp. 1 : 50"] (3-10-94);

(b) Hearing regarding the status of case wherein "[t]he court and counsel discussed the case." CR Supp. I : 65 1-13-95;

(c) Ex parte Motion for Expert Fees wherein court reviews the files and advises prosecutor of the sealed motion.   CR Supp. I: 99;

(d) Motions Hearing including Motion for disqualification, Motion for Advisory Jury, Motion for discovery and Deposition, Motion for Production of Documents (concluding with an Order to meet in chambers to discuss discovery dates, witness lists, experts lists and ordered prosecution to prepare an Order Governing Further Proceedings.).CR Supp  1 : 170;

(e) Time set for oral arguments; Court reviews file, and advises counsel and notes for the record that "a conference in Chambers was held." CR II: 228;

(f) Time set for Concluding Remarks: waived by Robin Row's counsel. CR II: 281.

204.  Chambers conferences referenced in transcripts of the special appellate

postconviction proceedings, Ada County Case No.  HC 3539 include:

(a)  Court acknowledges that he was advised in chambers that the state had not

determined whether they would make any oral remarks.  Tr Trial, p. 378 (2-20-96);

(b)  Court minutes indicate the Defendant was not present and the court noted for

the record that a conference in chambers was held Clerk's Record Trial ["CR"], Vol II, p. 228

["II: 228"](2-20-96);

(c)  Trial attorney Amil Myshin testified he commented on and complained about

the gallery's behavior to the court off the record as well as on the record Tr PCA, p. 176 (1-9-

96);

(d)  Court invites counsel to chambers if more questions regarding the motion for

appointment of another judge to authorize funds for experts arise.  PCA Tr, p. 19 (3-9-95 );

(e)  Court again invites counsel to meet in chambers to discuss "when discovery

disclosure dates will be given, witness finalization lists and expert witnesses, if any, will be

called, same as we do in a civil case."  Tr PCA, pp. 81, 83 (6-30-95).        205.  A death case

which must record all the proceedings and be subjected to the heightened scrutiny of the Eighth

Amendment simply cannot be conducted behind closed doors with off the record conversations

between some or all of the counsel to the parties.

205.  Petitioner did not waive her right to be present and counsel could not waive her

right to be present at the numerous substantive proceedings which took place without her.  The

trial and appellate postconviction proceedings outside were a violation of Petitioner's right to be

present at all critical proceedings under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

## THIRTY-FIFTH GROUND: PROSECUTORIAL MISCONDUCT UNDER *BRADY V. MARYLAND*

206. Contrary to the dictates of the due process clause of Fourteenth Amendment as interpreted in *Brady v. Maryland*, 373 U.S. 85, 83 S.Ct. 1194 (1963) and applied recently; *Carriger v. Stewart*, 132 F 3d 463, 480 (9th Cir. 1997), Petitioner was denied due process by the State's failure to disclose material, exculpatory information.

### Facts Supporting the Claim

207. Failure to Disclose: Despite requests by the defense, the state withheld material exculpatory evidence. The State withheld from Robin Row critical information concerning the criminal activities and criminal history of the State's witnesses, Joan McHugh and Bernard McHugh. The information known to the prosecutor reflected directly on the credibility of the State's witnesses, Joan and Bernard McHugh, upon whose credibility both judge and jury relied in their verdicts.

208. The records of State v. Bernard McHugh show that Bernard McHugh was arrested on December 19, 1990 and charged with two counts of Felony Issuing a Check with Insufficient Funds ($3800 each check) and two counts of Burglary in the second degree. See Affidavit of Kathleen Elliott: State v. B. McHugh, Ada County Case No. 17639, Information (January 7, 1991), Judge Alan Schwartzman presiding (Dkt #132). On January 10, Judge Schwartzman arraigned Mr. McHugh and accepted his plea of guilty to two felony counts of Issuing a Check on Insufficient Funds. McHugh was sentenced by Judge Schwartzman on February 13, 1991 and

SECOND AMENDED PETITION FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 65

placed on three years probation. Shortly after the trial of Robin Row and before sentencing of Ms Row, in July, 1993, Bernard McHugh made his final payment of restitution. On October 14, 1994, while Ms. Row's special appellate postconviction was pending in front of Judge Schwartzman, Judge Schwartzman ordered a change in the terms of Mr. McHugh's probation. In February of 1999, a Motion to Dismiss was signed by the prosecuting attorney Roger Bourne, which motion was granted on March 4, 1999.

209. The State withheld from defense counsel information regarding the facts surrounding the taking and recording of statements made by Petitioner to Joan McHugh including the actual presence of detective and prosecutor at the time the incriminating statement was made.

210. Continued Withholding and Motion to Compel Disclosure: Petitioner specifically avers that she has made every good faith effort possible to determine the nature and extent of the prosecution's withholding but the State continues to deny Petitioner access to the prosecutor's records and files and refuses to cooperate in a manner which suggests openness and honest dealing despite this Court's order that the State disclose matters relevant to cause and prejudice and actual innocence including the related matters of the prosecutions of Joan and Bernard McHugh. [3]

211. Prejudice as a Result of The Withholding:  The State's failure to disclose the exculpatory material information described  above deprived Petitioner of her rights to a fair trial

---

[3]The State through the deposition of Roger Bourne has claimed without sufficient factual basis that the State no longer has said records the same having been destroyed in the regular course of business.

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 66**

and effective assistance of counsel under the Sixth Amendment and due process and equal protection of the law under the Fourteenth Amendment to the United States Constitution. But for the failure of the prosecution to disclose the relevant material exculpatory information regarding the two major witnesses against Petitioner, it is more likely than not that Petitioner would not have been convicted of first degree murder and/or would not have been sentenced to death by a fair and impartial sentencer. But for the withholding of the information regarding the level of involvement of Detective Raney and the prosecuting attorneys in the elicitation and recording of incriminating statements from Petitioner to Joan McHugh, it is more likely than not that courts would have found Joan McHugh to be an agent of the state, suppressing much of her damaging testimony and suppressing statements by Petitioner to McHugh when she was acting as a state agent. Without the testimony of the incriminating statement, and with the limitation or exclusion of testimony by Joan McHugh and the damage the information would have done to the State's witnesses, Gary Raney and Joan McHugh, it is more likely than not that Petitioner would have been found not guilty.

## THIRTY-SIXTH GROUND: EGREGIOUS PROSECUTORIAL MISCONDUCT BY MISREPRESENTATION AND SILENCE.

212. The conduct of the prosecutor in his misrepresentation of the evidence and the truth was so fundamentally deceptive that his actions deprived Robin of a fair trial in violation of the due process clause of the United States Constitution.

### Facts Supporting the Claim

213. Petitioner was deprived of her due process right to a fair trial by egregious acts of the prosecution including:

**SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 67**

(a) Permitting without clarification or objection the testimony of Joan McHugh which was not worthy of belief, knowing that McHugh misstated and misrepresented her and her husband's dealings with the State of Idaho including the benefits received as a result of her cooperation with the State and that she and Bernard McHugh had notably failed to disclose their prior criminal activities, history and disposition of those charges by the State of Idaho.

(b) Affirmatively misrepresenting to the Court and defense counsel the extent of the State's involvement in the procurement of incriminating statements made by Petitioner to Ms. McHugh after her arrest and after charges had been filed by, among other things, standing silent and soliciting from Detective Raney testimony indicating falsely to the court that he or other state agents had simply provided equipment and advice to Ms. McHugh in the recording of telephone conversations when indeed the State through Detective Raney and the Prosecuting Attorney's Office was present at the time of at least one phone call, presumably the critical phone call in which Ms. McHugh lied to Petitioner to solicit an incriminating statement from Petitioner, which statement was used against her at trial.

(c) Misrepresenting to the court the extent of the State's knowledge of the brain atrophy revealed in the CT scans. In opposing counsel's request for time to pursue the question of the brain atrophy, the State represented to the Court that:

> Well, I'll tell the court that I've talked to Dr. Giles before we came to court today.
> I spoke to him after one of the last hearings and he says that there is nothing to
> this atrophy business, that perfectly normal people in society have brains, some
> bigger and some smaller than others, and that there is nothing to this atrophy
> theory. And I assume that when they talk to him he'll tell them the same thing.

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 68**

Appellate Postconviction ["APC"] p. 101 In his report of 1-12-93, Dr. Giles stated "clinical correlation is advised." The prosecutions misrepresentation to the court of the unimportance of the atrophy was deliberate misleading of the court in his decision to deny counsel for Ms. Row adequate time to pursue the inquiry;

(d) Engaging in improper argument, misstating the evidence, speculating on matters not based on the evidence and misrepresenting to the judge and jury what he knew was not true regarding the criminal history of Joan and John McHugh and their motivation to testify, and vouching for person who was otherwise incredible.

214. In pre-trial argument to the court, Mr. Bourne advised that the bad check charge was dropped within about ten (10) days, a misrepresentation to the court who had not presided at Joan McHugh's felony prosecution proceedings of approximately eight months. Trail Tr I: 1161; See Documents attached to Affidavit of Kathleen Elliott (Dkt #132). At trial, the prosecutor described the felonies charged against the McHughs and resulting in two felony convictions against Bernard McHugh as "jobs weren't too good, they thought they had some money in a Boston bank. Bernie cashed a check on the Boston bank, it bounced, he ended up in jail." Tr Trial 1212, 1215. In questioning Joan McHugh, the prosecutor presented the check cashing incident as a "mistake" for which blame lay with another relative and not the McHughs at all. Tr Trial, pp. 1418 - 1420. Prosecutor Bourne did not acknowledge on the record at the Magistrate Inquiry that he knew and had prosecuted both Joan McHugh and Bernard McHugh on charges which unquestionably reflect on the witnesses credibility.

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 69**

215. The prosecutorial misconduct resulted in a manifest injustice and fundamentally unfair trial, seriously undermining the reliability of the result of the trial on guilt and innocence of the imposition of the sentence of death in violation of the Eighth and the due process clause of the Fourteenth Amendments to the Constitution of the United States.

## THIRTY-SEVENTH GROUND: *ESTELLE* CLAIM

216. The failure to advise Petitioner of her right to remain silent and to have her counsel present at the presentence interview violated the Fifth, Sixth Eighth and Fourteenth Amendments. The denial of counsel during the PSI constitutes a denial of counsel at a critical proceeding, the sentencing phase of a capital trial. *See Estelle v. Smith*, 451 U.S. 454 (1981); *Hoffman v. Arave*, 236 F. 3d 523 (9th Cir 2001).

### Facts Supporting the Claim

217. By statute Petitioner was required to be interviewed by the presentence investigator.

218. Ms. Row made comments which were reported in the PSI, some of which were incriminating and others which could rightfully be construed to be an assertion of silence.

219. Ms. Row was not advised of her right to counsel or her right to remain silent during the interview under the fifth and sixth amendments of the United States Constitution, though she did refuse to submit a written statement of her version of the offense on counsel's advice.

220. The presentence interview and investigation report dealt in large part on other crimes, many uncharged and Ms. Row's response to those charges.

221. The trial court relied in part on the presentence investigation in his decision to impose death.

SECOND AMENDED PETITION FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 70

**THIRTY-EIGHTH GROUND**:  CIRCUS-LIKE ATMOSPHERE OF THE TRIAL

222.  The trial court's failure to actively commit himself to insure that the defendant in this case received a fair and impartial jury, violated the Defendant's right to a fair trial under the Fourteenth Amendment of the United States. *Sheppard v. Maxwell*, 384 U.S. 333 (1966).

### Facts Supporting the Claim

223.  There was extensive newspaper coverage in the Ada County area concerning the offense for which Petitioner was convicted.

224.  Immediately prior to the selection of the jury a lengthy extremely prejudicial newspaper article was published in the local newspaper serving the jury pool area.  The article made reference to prior bad acts by the petitioner as well as referencing the deaths of two other of Petitioner's children which the press inferred were suspicious.  Many of the jury panel had read the article and it was the subject of discussion among court, counsel and potential jury members. Some people even brought lunches and/or coolers to the trial.

225.  There was great local interest in the case and the trial was heavily attended.  The audience was visibly and audibly involved to such an extent that audible comments to the witnesses were made during the trial and in the jury's presence.

226.  During the trial there was a large audience of people, some of whom brought

**THIRTY-NINTH GROUND**: DENIAL OF A CHANGE OF VENUE

227.  Petitioner was deprived of her right to a fair trial by the trial court's denial of a change of venue and denial of numerous challenges for cause based on the potential jurors'

exposure to the extensive pretrial publicity in violation of the Due Process Clause of the

Fourteenth Amendment to the United States Constitution.

### Facts Supporting the Claim

228. The facts supporting Petitioner's claim are set forth hereinabove in paragraphs 224-227.

229. Defense counsel moved for a change of venue based on extensive publicity. The motion was denied.

230. During a chambers conference and in pre-trial proceedings, the court noting the devastating prejudice to the Petitioner by the publication of the extensive article regarding the charges and the upcoming trial, indicated that anyone who read the article would be excused for cause.

231. Because of the many persons who had been exposed to the article and the difficulty that caused in the jury selection, the court discontinued his practice of granting the defense motion for cause based solely on the reading of the article.

232. Petitioner's jury included persons who would have been excused but for the trial court's denial of specific well-ground challenges for cause.

233. Petitioner's jury included a person whose children went to school with Petitioner's children and who had driven past Petitioner's home the morning of the fire.

### FORTIETH GROUND:  DENIAL OF RIGHT TO PRESENT A DEFENSE

234. Petitioner's rights to present a defense under the Sixth and Fourteenth Amendments to the United States Constitution were deprived by the trial court's admission of hearsay

testimony regarding Petitioner's relationship with her husband, Petitioner's husband's purported mental and physical condition without permitting full cross-examination and development of the same.

### Facts Supporting the Claim

235. Petitioner's theory of defense was that she did not commit the offense.

236. In support of her theory, Petitioner sought to develop the physical, medical and psychological profile of Petitioner's husband as a person who may have been sufficiently prone to violence, anger, revenge and frustration to commit a murder/suicide.

237. The trial court's admission of unreliable hearsay evidence to rebut the theory including unsupported speculation regarding Petitioner's husband's state of mind undermined efforts to present a defense.

238. The trial court's denial of disclosure and evidence to the defense concerning Petitioner's husband state of mind and personality undermined Petitioner's ability to present her defense.

239. After conviction, Petitioner's counsel was compelled by the trial and sentencing judge to act as an expert witness at the evidentiary hearing in support of allegations of ineffective assistance of trial counsel.

240. After conviction, Petitioner's court-appointed counsel was denied resources to develop her claims of ineffective assistance of counsel and the matter of whether or not she was brain-damaged and the extent and effect of that damage, if any.

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 73**

241. The trial court's refusal to grant a continuance and compulsion of appointed counsel to act as a witness in the allegations of ineffective assistance of counsel undermined and denied Petitioner's continued right to counsel and to defend herself at the 19-2719 proceedings.

**FORTY-FIRST GROUND: DISPARATE PROSECUTORIAL DISCRETION**

242. The Idaho death penalty statutory scheme violates the equal protection clauses of the United States and Idaho Constitutions, in that it does not provide for specific, state-wide standards to ensure that the prosecutorial charging decision does not result in disparate treatment of similarly situated death-eligible defendants in different counties

**Facts Supporting the Claim**

243. The Idaho death penalty statute (I.C. §19-2515(c)) provides "where a person is convicted of an offense which may be punishable by death, a sentence of death shall not be imposed unless the prosecuting attorney filed written notice of intent to seek the death penalty and served the notice upon defendant or his attorney no later than thirty (30) days after entry of a plea. "A notice of intent to seek the death penalty may be withdrawn at any time prior to the imposition of sentence." I. C. § 18-4004A; *see also,* I.C. §19-2515 (c).

244. In Idaho, the decision whether or not to give Notice is made by the prosecuting attorney of the county in which the case is pending. Idaho has forty-four (44) counties, each with its own Prosecuting Attorney. Idaho Code §§18-4004A and 19-2515 provide no standards by which the decision to seek the death penalty is to be made, thus leaving each of Idaho's forty-four (44) prosecuting attorneys free to determine separately which cases merit the ultimate sanction. Even where a defendant appears to meet the eligibility criteria of 19-2515 an individual

prosecuting attorney may choose not seek a death sentence, or a prosecuting attorney may seek

death even where a defendant does not appear to meet the eligibility criteria. Each county may

determine its own standards, or, indeed, choose to have no standards at all.

245.    The failure of the statute to provide such standards results in disparate treatment

of similarly situated death-eligible defendants in different counties, thus allowing the state to

"value one person's [life] over that of another, thereby violating the Equal Protection guarantee."

*Bush v. Gore*, 531 U.S. 98 (2000)) U.S.,. Const., Amend. VIII, XIV, Il. Const., Art. I, §2.

## IV.  **PRAYER FOR RELIEF**

***WHEREFORE***, Petitioner prays that this Court will:

1. Issue a writ of habeas corpus to have Petitioner brought before it to the end that she

may be discharged from her unconstitutional confinement and restraint, and/or in the alternative

that she be relieved of her unconstitutional sentence;

2. Grant such other and further relief as may be appropriate and to dispose of the matter

as law and justice require.

DATED this 17th day of January, 2003.

RESPECTFULLY SUBMITTED,

CAPITAL HABEAS UNIT

Joan M. Fisher

Kathleen Elliott
Hampton & Elliott

Attorneys for Petitioner

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 75**

## VERIFICATION

I, Joan M Fisher, a person over the age of eighteen, competent to testify and acting on behalf of Petitioner as her court-appointed counsel, hereby declares under penalty of perjury I am fully familiar with the foregoing and state it is true and correct to the best of my knowledge, information and belief.

Endorsed and subscribed hereto on January 17, 2003

_Joan M. Fisher_
Joan M. Fisher

**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 76**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of January, 2003, I caused a true and correct copy of the foregoing pleading or document to be served on all parties by the method indicated below:

Lawrence G. Wasden
Idaho Attorney General

Kimberly Blas                            X      U.S. Mail
Deputy Attorney General            _____   Hand Delivery
Chief, Capital Litigation Unit       _____   Facsimile
Statehouse Mail, Room 10          _____   Overnight Mail
PO Box 83720
Boise  ID  83720-0010


_Joan M. Fisher_


**SECOND AMENDED PETITION FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY  - 77**