IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ROBIN LEE ROW, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 98-0240-S-BLW |
| | ) | |
| v. | ) | **CAPITAL CASE** |
| | ) | |
| THOMAS J. BEAUCLAIR, Director | ) | |
| of the Idaho Department of | ) | **MEMORANDUM DECISION** |
| Correction, and | ) | **AND ORDER** |
| BRIAN T. UNDERWOOD, Warden | ) | |
| of the Pocatello Women's | ) | |
| Correctional Center, State of Idaho, | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

Currently before the Court in this capital habeas matter is Respondents'

Motion to Dismiss Procedurally Defaulted Claims.  The parties have submitted

briefing, including supplemental briefing, and have orally argued the matter.  The

Court is now prepared to rule.

For the reasons set forth more fully herein, the Court will dismiss the

following claims in the Second Amended Petition: 7 (in part), 13-20, 23-31, 33, 34,

38-41.  No other claims will be dismissed or denied at this time.

**Memorandum Decision and Order - 1**

## BACKGROUND

On February 10, 1992, Robin Row's husband and her two children died of carbon monoxide poisoning during an early morning fire at their residence.  Row, who was staying with a friend at the time, was not harmed.  After a police investigation that lasted the next several weeks, the State charged Row with three counts of first-degree murder and one count of aggravated arson.  A jury found her guilty as charged, and on December 16, 1993, the state district court sentenced her to death.

New counsel was appointed to assist Row in pursuing post-conviction relief before completing the direct appeal, in accordance with Idaho's special procedure applicable to capital cases.  After granting several continuances, the district court ultimately held an evidentiary hearing on Row's petition and denied relief.  The Idaho Supreme Court consolidated the appeal from that decision with the direct appeal and affirmed in all respects.  *State v. Row*, 955 P.2d 1082 (Idaho 1998) (*Row I*).

Row initiated the current habeas action in 1998 by filing a Statement of Issues in this Court, which she followed with an initial Petition for Writ of Habeas Corpus.  The Court allowed Row to amend her Petition and then stayed the case, at

**Memorandum Decision and Order - 2**

her request, pending the outcome of a second post-conviction proceeding.  That matter was eventually dismissed on procedural grounds, *see Row v. State,* 21 P.3d 895 (Idaho 2001) (*Row II*), and the Court lifted the stay.

On January 17, 2003, Row submitted a Second Amended Petition, raising forty-one habeas claims.  Respondents filed the pending Motion to Dismiss Procedurally Defaulted Claims, arguing that most of Row's claims had not been raised in state court at the correct time or in the correct manner and are now defaulted and must be dismissed.  Before Row submitted her response, the Court stayed the federal case a second time so that she could return to state court to present claims under *Ring v. Arizona*, 536 U.S. 584 (2002).[1]

In March 2005, the Court lifted the second stay.  After the Court resolved several lingering discovery disputes, Row filed her Response to the Motion to Dismiss.  Respondents have submitted their Reply, the parties have presented oral argument and filed supplemental briefing, and the matter is ripe for a decision.

---

[1]  Row has filed yet another application for post-conviction relief, raising different grounds, which was dismissed by the state district court but appears to still be pending in the Idaho Supreme Court.

**Memorandum Decision and Order - 3**

## LEGAL STANDARDS GOVERNING
## EXHAUSTION AND PROCEDURAL DEFAULT

A habeas petitioner must have first exhausted all potential remedies in state court before a federal court can grant relief on a constitutional claim.  28 U.S.C. § 2254(b)(1)(A).  This requirement is technically satisfied when no state court remedies remain available, but the petitioner must have also exhausted those remedies *properly* by fairly presenting each constitutional claim to the state courts, giving them a full and fair opportunity to correct the alleged error at each level of appellate review.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

The mere similarity between a federal claim and a state law claim, without more, does not satisfy the requirement of fair presentation, and vague references in state court to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are likewise insufficient.  *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (similarity of claims is insufficient); *see also Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (appeal to broad principles insufficient).  Instead, the petitioner must clearly alert the state court to the federal constitutional provision that supports her claim, or she must rely on state or federal cases that apply the constitutional rule.  *Lyons v. Crawford*, 232 F.3d 666, 670 (9th

**Memorandum Decision and Order - 4**

Cir. 2000); *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).

When a petitioner has not fairly presented a habeas claim to the state courts, and it is now clear that the claim would be barred by a state procedural rule, the claim has been procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161 (1996). Similarly, a constitutional claim is also defaulted when the state court expressly denied or dismissed it after invoking a state procedural bar. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). If the state's procedural rule is both independent of federal law and adequate to support the state court's judgment, the defaulted claim will not be considered in a habeas proceeding, unless the petitioner can establish cause for her default and actual prejudice, or she can show that she is probably innocent. *Id.* at 750.

In a situation that is apparently unique to Idaho, certain constitutional sentencing errors will be heard in a federal habeas proceeding regardless of whether the petitioner fairly presented them to the Idaho Supreme Court. Specifically, a panel of the Ninth Circuit has determined that the Idaho Supreme Court considers, either implicitly or explicitly, some sentencing errors as part of its automatic statutory review of death sentences under Idaho Code § 19-2827(c)(1). *Beam v. Paskett*, 3 F.3d 1301, 1306 (9th Cir. 1993) *partially overruled on other grounds by Lambright v. Stewart,* 191 F.3d 1181, 1187 (9th Cir. 1999).

**Memorandum Decision and Order - 5**

The generosity that *Beam* bestows on capital habeas petitioners is not boundless, and the scope of habeas review will be no broader than the Idaho Supreme Court's mandatory review, which is limited to reviewing the imposition of the death sentence in the case before the state appellate court. *See Beam*, 3 F.3d at 1306. Claims that make a broad-based constitutional challenge to Idaho's death penalty process, are based on matters outside of the record before the Idaho Supreme Court, or allege that the Idaho Supreme Court itself erred during its direct or post-conviction appellate review, are not encompassed by that automatic review.

In a related vein, this Court is not persuaded by Row's argument that the Idaho Supreme Court scours the entire record for all constitutional errors of any stripe in capital cases, either as part of its § 19-2827(c) review or under some kind of expanded "fundamental error" review. Automatic sentencing review does not encompass unraised errors that may have occurred at the trial on guilt or innocence. And though it is true that an Idaho appellate court may, in its discretion, address a "fundamental" trial error for the first time on appeal, such review is triggered only when the alleged error has been *properly briefed and argued on appeal*. *See, e.g., State v. Broadhead*, 84 P.3d 599, 603 (Idaho Ct. App. 2004); *State v. Bingham*, 776 P.2d 424, 432 (Idaho 1989). The cases that Row cites do not establish the sweeping standard of review that she advocates.

**Memorandum Decision and Order - 6**

In *State v. Osborn*, 631 P.2d 187 (Idaho 1981), the Idaho Supreme Court addressed an error that was raised for the first time on appeal, but it did so as part of its statutory review of a death sentence. *Id*. at 191-93. The court noted that it would be vigilant in capital cases to consider non-sentencing constitutional errors that may not have been preserved, but that have been presented on appeal, which is generally consistent with the established scope of fundamental error review. *Id*.

While the state supreme court used language reflecting an expansive standard of review in *State v. Leavitt*, 755 P.2d 599, 602 (Idaho 1989), this language is an anomaly. Row has cited no other capital case in which the Idaho Supreme Court has expressly endorsed this type of review, and this Court has found none. *See, e.g., State v. Lankford*, 747 P.2d 710 (Idaho 1987) ("[e]rror will not be presumed on appeal but must be affirmatively shown by the appellant"); *State v. Pizzuto*, 810 P.2d 680, 688 (Idaho 1991) (same); *cf. State v. Wood*, 967 P.2d 702, 708-09 (Idaho 1998) (addressing the merits of an issue that was *raised* in the appellant's brief but that was lacking in citation to authority).

With these standards in mind, the Court now turns to the claims that Respondents claim are defaulted in this case.

**Memorandum Decision and Order - 7**

## ANALYSIS OF THE CLAIMS

Respondents argue that all or part of thirty-six of Row's forty-one habeas claims were not properly exhausted and are now procedurally defaulted. Respondents do not seek dismissal of Claims 3, 7 (in limited part), 9, 10, and 12.

### 1.   <u>Discussion</u>

<u>Claims 1 and 2</u>

In her first two grounds for relief, Row challenges the state court's decision to admit into evidence certain statements that she had made to her friend, Joan McHugh, who recorded their conversations and turned over the audiotapes to the police.  Row contends that these statements should have been suppressed because they were obtained "despite the commencement of formal criminal proceedings, the knowledge that [she] was represented by counsel and [her] request that counsel be present at any further interviews by the State."  (Docket No. 293, p. 12.)  Row also asserts that the State deliberately and unreasonably delayed arraigning her on the murder and arson charges in order to give the police more time to obtain incriminating evidence.  Row appears to base these claims mainly on her right to counsel under the Sixth Amendment and her right to due process of law under the

Fourteenth Amendment, though she also cites the Fifth and Eighth Amendments.[2]

On appeal to the Idaho Supreme Court, Row raised an issue related to the suppression of her statements, but she did so under the guise of a claim of ineffective assistance of trial counsel.  In pressing the ineffectiveness claim, however, she invited the Idaho Supreme Court to reach the merits of the underlying suppression issue.  (State's Lodging C-14, pp. 7, 38-49.)  It essentially did so, at least with respect to whether charging and arraignment were intentionally delayed, and Respondents now acknowledge that "the trial court's and the Supreme Court's decisions on the prejudice prong of that [ineffective assistance] claim may be sufficient to constitute fair presentation as to the Sixth Amendment claim." (Docket No. 409, p. 12.)  Respondents also conceded during oral argument that a substantive issue based upon a purported violation of Row's Sixth Amendment right to counsel, as interpreted by *Massiah v. United States*, 377 U.S. 201 (1964), has been properly exhausted.  Accordingly, this Court finds that Row has fairly presented and properly exhausted her first and second claims for relief to the extent that she relies on the Sixth and Fourteenth Amendments.

On the other hand, the Court is not persuaded that Row fairly presented a claim based on a violation of her privilege against self-incrimination under the

---

[2] Row has abandoned the Fourth Amendment as a basis for relief.  (Docket No. 398, n.8.)

**Memorandum Decision and Order - 9**

Fifth Amendment.  She did not cite that provision directly to the Idaho Supreme

Court, and to the extent that the cases to which she referred in her briefing may

have mentioned the Fifth Amendment, they were based on the Due Process Clause

and not the privilege against self-incrimination.  The due process claim is covered

here by the Fourteenth Amendment.  Additionally, the nature of this proceeding as

a death penalty case does not, by itself, establish that Row properly exhausted an

Eighth Amendment basis for her first and second claims.

Claim 4

In this claim, Row alleges that the state district court's denial of her motion

for expert assistance during the post-conviction proceeding violated her rights

under various federal constitutional provisions.

During her appeal to the Idaho Supreme Court, Row squarely challenged the

district court's refusal to implement certain *procedures* for considering requests for

expert assistance.  (State's Lodging C-14, pp. 28-35.)  Particularly, she appealed

the lower court's decision not to appoint a separate judge to handle these requests,

and she also appealed what she contended was the lower court's refusal to hear the

matter *ex parte*.  In her briefing, she cited the federal case upon which she also

relies here, *Ake v. Oklahoma*, 470 U.S. 68 (1985), but she arguably did so only

within the context of her procedural argument.  (State's Lodging C-14, pp. 33-35.)

**Memorandum Decision and Order - 10**

Despite this ambiguity, counsel for the State construed the claim as including a substantive argument that the lower court violated Row's constitutional rights in denying funds for an expert. (State's Lodging C-15, pp. 31-32.) Also, the Idaho Supreme Court reached the merits of the lower court's decision, and, in doing so, cited state court cases that relied on the federal constitution. *Row I*, 955 P.2d at 1089-90.

Under these circumstances, this Court concludes that the state court was sufficiently alerted to the federal basis for this claim and had a fair opportunity to address the matter, satisfying the purposes of exhaustion. Proper exhaustion, however, is limited to the Sixth and Fourteenth Amendments, not the Fifth and Eighth.

Claim 5

Next, Row contends that the state district court violated her constitutional rights when it refused to conduct an *ex parte* hearing on her motion for expert assistance during the post-conviction matter. Respondents acknowledge that this claim was fairly presented, with the exception of an Eighth Amendment basis. After reviewing the state court record, the Court agrees.

Claim 6

Row alleges that the state district court's denial of her motion to continue the

**Memorandum Decision and Order - 11**

post-conviction evidentiary hearing deprived her of the meaningful assistance of counsel and due process of law under the Fifth, Sixth, Eighth, and Fourteenth Amendments.

In the Row's brief on appeal, she argued mainly that her post-conviction counsel had not been prepared for the evidentiary hearing, and she suggested only obliquely that the trial court's failure to grant a continuance was the cause of this lack of preparation.  (State's Lodging C-14, pp. 28-29.)  In any event, counsel for the State again responded to the claim as though Row had raised the denial of the continuance, and the Idaho Supreme Court reached the merits, finding no abuse of discretion in the lower court's decision.  *Row I*, 955 P.2d at 1090.  In doing so, it cited state court cases that framed the standard of review as one that requires the appellate court to determine whether the lack of a continuance prejudiced the defendant's right to a fair trial.  *Id.*

Though the question is close, this Court concludes that the state courts had a fair opportunity to resolve whether Row's rights to counsel and due process of law under the Sixth and Fourteenth Amendments were violated by the district court's decision.  Again, however, Row sweeps too broadly; she did not present a Fifth or Eighth Amendment basis for the claim in state court, and the claim is not properly exhausted as to those provisions.

**Memorandum Decision and Order - 12**

Claim 7

Row next claims that she was deprived of her right to the effective assistance of counsel at trial, sentencing, post-conviction, and on direct appeal.

      (a)    Trial and Sentencing

Row raised the following issues of ineffective assistance of trial counsel during her initial appeal to the Idaho Supreme Court: (1) her attorneys were ineffective in failing to develop facts and argument in support of the motion to suppress Row's statements to McHugh; (2) counsel failed to investigate, develop, and present mitigating evidence adequately during the sentencing phase of the case; (3) counsel were ineffective in employing Dr. Art Norman as a mental health expert at sentencing and were not sufficiently prepared to meet the testimony of the State's rebuttal witness, Dr. Robert Engle; and (4) counsel were ineffective in allowing Row to make a statement at the sentencing hearing.  Row has included these same claims here in ¶ 80(a)(b) and ¶ 81(b)-(e)(n)(o)(p)(s) of the Second Amended Petition, and they are properly exhausted.

The Idaho Supreme Court later determined that Row had waived several new claims of ineffective assistance of trial counsel under Idaho Code § 19-2719(5) because she did not include those claims in her first post-conviction proceeding.  *Row II*, 21 P.3d at 900.  Those claims are now defaulted.

**Memorandum Decision and Order - 13**

Additionally, any other claims that have never been raised at any time in state court are likewise defaulted.

        (b)    <u>Post-Conviction</u>

Row also asserts that her attorneys were ineffective in failing to develop several issues during the post-conviction matter.  (Docket No. 293, ¶ 82(a)-(d)(f)-(j)).  Regardless whether any of these issues were presented to the Idaho Supreme Court, Row did not have a federal constitutional right to the effective assistance of counsel during the state post-conviction proceeding, and she would not be entitled to federal habeas relief on that basis.  *See Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991);  *Murray v. Giarratano*, 492 U.S. 1, 7 (1989) (plurality opinion); *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Leavitt v Arave*, 383 F.3d 809, 839 n.39 (9th Cir. 2004); *Bonin v. Calderon*, 77 F.3d 1155, 1159 (9th Cir. 1996); *Moran v. McDaniel*, 80 F.3d 1261, 1271 (9th Cir. 1996); *see also* 28 U.S.C. § 2254(i) (a federal court cannot grant relief based upon errors by state post-conviction counsel).

This Court is not convinced by Row's argument that the Idaho statutory scheme for delaying the direct appeal in capital cases until after the post-conviction matter has concluded, and then consolidating it with the appeal from the denial of post-conviction relief, creates a federal due process right to the assistance of

**Memorandum Decision and Order - 14**

counsel during the post-conviction proceeding.  An application for post-conviction

relief in Idaho initiates a new proceeding, distinct from the criminal case, that is

civil in nature and is governed by the rules of civil procedure.  *McKinney v. State*,

992, P.2d 144, 148-50 (Idaho 1999).  The fact that a capital post-conviction action

is litigated while the direct appeal is held in abeyance is not of constitutional

significance.  *See Oxford v. Delo*, 59 F.3d 741, 748 (8th Cir. 1995) (rejecting an

argument that a similar hybrid post-conviction and appellate proceeding is so

bound up together as to guarantee a right to counsel during the post-conviction

proceeding); *accord Clay v. Bowersox*, 367 F.3d 993, 1005-06 (8th Cir. 2004).

Moreover, to conclude otherwise, the Court would be required to announce a new

rule of law, in violation of the non-retroactivity principles derived from *Teague v.*

*Lane*, 489 U.S. 288, 301 (1989).

> (c)   <u>Direct Appeal</u>

Row also alleges that her counsel was ineffective in failing to raise

numerous issues during the direct appeal.  Row attempted to bring most of these

same claims in her second post-conviction petition, filed in 1999, but the trial court

dismissed the claims because Row had not included them in her first petition.

The Idaho Supreme Court affirmed the dismissal, but on different grounds.

It acknowledged that Row could not have included the allegations in the initial

post-conviction proceeding because the direct appeal was stayed pending

completion of that matter and an opening brief on appeal had not even been filed.

Yet the court nonetheless determined that the new issues were procedurally barred

because Row had not supported them with "material facts stated under oath or

affirmation by credible persons with first hand knowledge," which is a statutory

pleading requirement for successive post-conviction petitions contained in Idaho

Code § 19-2719(5)(a).  *Row II*, 21 P.3d at 900-902.

Because the last state court to address Row's allegations relied on a state

procedural basis to support its judgment, these claims are now defaulted.  The

Court will address Row's challenge to the adequacy of this state court rule in the

following section of this Memorandum Decision, dealing generally with the

question of whether the state court's application of its procedural rules constitutes

an adequate and independent state bar to Row's claims.

Claim 8

Row contends that the trial court's conclusion that two aggravating

circumstances were established as a matter of law based on the jury's return of

special verdicts was unconstitutional.  This claim, which relates to the trial court's

imposition of the death sentence in this specific case, falls within the *Beam*

rationale, and it will be heard in this proceeding.

**Memorandum Decision and Order - 16**

Claim 11

Row next asserts that her rights under the Eighth and Fourteenth

Amendments were violated when the state trial and appellate courts did not weigh

aggravating and mitigating circumstances correctly.  To the extent that Row

complains about the trial court's alleged error, this is at least a *Beam*-type claim,

and is properly exhausted for that reason.

This Court further concludes that Row fairly presented a due process claim

related to the Idaho Supreme Court's review of the weighing procedures when she

raised a similar issue in her Brief in Support of Petition for Rehearing.  (State's

Lodging 19, p.2.)  That was the first, and perhaps only, opportunity that Row had

to argue that the appellate court had itself committed a constitutional error during

the appeal, and it was sufficient to alert the court to the claim.

Claims 13 through 18

In each of these claims, Row asserts constitutional error based upon

perceived defects in Idaho's death penalty statutory scheme (Claims 13, 16, and

18), the Idaho Supreme Court's death penalty jurisprudence generally (Claim 17),

and the Idaho Supreme Court's application of law during its direct review in Row's

case (Claims 14 and 15).  Row has never raised these claims as substantive issues

in the state supreme court, and the time to do so has passed.  As broad-based

**Memorandum Decision and Order - 17**

attacks or claims of error during appellate review, these claims also do not fall within the Idaho Supreme Court's obligatory sentencing review, as interpreted by *Beam*.

Claim 19

Row contends that "financial ability or inability [of individual counties in Idaho] to finance the prosecution of a capital case results in the arbitrary and capricious application of the death penalty." This claim was never raised, and it is not saved by *Beam*.

Claims 20 and 28

In these two similar claims, Row argues that the length of delay awaiting the execution of her death sentence in solitary confinement violates the Eighth and Fourteenth Amendments.[3] Row attempted to raise a similar issue in the Idaho Supreme Court, but the court dismissed the claim, concluding that Row did not follow proper procedure because she had not filed a state habeas petition in the county of her incarceration. *Row II*, 21 P.3d at 902. The state court noted that Row may still be able "challenge the conditions of her confinement, and a state habeas action, unlike a post-conviction action, is not subject to a statute of

---

[3] To the extent that Row implies that the conditions of her confinement violate the Eighth Amendment, irrespective of any delay in carrying out her sentence, such a claim is more appropriately brought under 42 U.S.C. § 1983, and this Court expresses no opinion on its merits here.

**Memorandum Decision and Order - 18**

limitations.  *See* Idaho Code § 19-4201 *et seq*.  Thus, this issue may still be

unexhausted and not yet defaulted, but the Court finds it unnecessary to resolve the

procedural issue, as these claims clearly fail on the merits.  *See* 28 U.S.C.

§ 2254(b)(2).

        The United States Supreme Court has never held that an extensive delay

between the pronouncement of a death sentence and execution can amount to cruel

and unusual punishment, though two current justices have indicated that the issue

may be worth examination by the full Court.  *See Lackey v. Texas*, 514 U.S. 1045

(1995) (Stevens, J. & Breyer, J., discussing denial of certiorari and noting the claim

has not been addressed);  *Knight v. Florida*, 528 U.S. 990, 993-94 (1999) (Breyer,

J., dissenting from denial of certiorari); *Foster v. Florida*, 537 U.S. 990, 993

(2002) (Breyer, J., dissenting from denial of certiorari).  In contrast, Justice

Thomas has noted that he is "unaware of any support in the American

constitutional tradition or in this Court's precedent for the proposition that a

defendant can avail himself of the panoply of appellate and collateral procedures

and then complain when his execution is delayed."  *Knight*, 528 U.S. at 990

(Thomas, J., concurring in the denial of certiorari).

        Circuit courts, including the Ninth Circuit, have determined that prolonged

incarceration under a sentence of death does not offend the Eighth Amendment,

**Memorandum Decision and Order - 19**

particularly when the delay results from the petitioner's unsuccessful pursuit of collateral relief and not from the State's dilatory tactics. *See McKenzie v. Day*, 57 F.3d 1493, 1493-94 (9th Cir. 1995) (en banc); *Allen v. Ornoski*, 435 F.3d 946, 958-60 (9th Cir. 2006) (examining cases); *White v. Johnson*, 79 F.3d 432, 438 (5th Cir. 1996) (delay of 17 years); *Stafford v. Ward*, 59 F.3d 1025, 1028 (10th Cir. 1995) (delay of 15 years); *Chambers v. Bowersox,* 157 F.3d 560, 568, 570 (8th Cir. 1998)*; Free v. Peters*, 50 F.3d 1362, 1362 (7th Cir. 1995) (per curiam).

In the present case, Petitioner has been under a sentence of death for a little over thirteen years, and the majority of that time elapsed while she attempted to obtain collateral relief–so far unsuccessfully–in the state and federal courts.  Given the state of the law, Petitioner cannot establish a violation of the Eighth or the Fourteenth Amendments, and the Court will deny Claims 20 and 28.

### Claims 21 and 22

Here, Row alleges that the district court failed to consider alternatives to the death penalty and that the district court did not take into consideration Row's mental illness when he sentenced her.  These are *Beam* issues that will not be dismissed at this time.

### Claims 23 through 27, 29

In each of these claims, Row alleges constitutional violations, in various

permutations, derived from the United States Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002) (relying on *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).  The Supreme Court has determined that *Ring* announced a new rule of constitutional law that is not retroactive to cases that became final before it was decided.  *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004) (citing *Teague v. Lane*, 489 U.S. 288 (1989)); *accord Leavitt v. Arave*, 383 F.3d 809, 835 (9th Cir. 2004).

Row's conviction became final in 1998, nearly two years before *Apprendi* and four years before *Ring*.  As a result, this Court will summarily dismiss these claims because they are clearly *Teague*-barred in this proceeding.[4]  *Caspari v. Bohlen*, 510 U.S. 383, 389 (1994).

Claim 30

Row contends that she had a right to jury sentencing under the Idaho Constitution, and that the state courts arbitrarily deprived her of this right, in violation of federal due process.  Row has never raised this issue in state court in this manner, and it is now defaulted.

Moreover, to grant relief, this Court would be required to conclude that the Idaho Supreme Court has consistently misinterpreted its own constitution.  *See,*

---

[4] In Claim 29, Row contends that she was denied equal protection of the law because similarly situated defendants whose convictions were not final at the time *Ring* was announced received the benefit of the new rule.  This appears to be a camouflaged argument that the new rule should be retroactive, which the Supreme Court has rejected.

*e.g., State v. Leavitt*, 120 P.3d 283, 286 (Idaho 2005).  The interpretation of a state constitution is solely a matter of state law, and Row's attempt to transform this issue into a federal question is unavailing.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

### Claim 31

In this claim, Row alleges that amendments to Idaho's death penalty statute deprived her of meaningful appellate review.  Because Row has never raised the claim in state court, and the time to do so has passed, it is now defaulted.  And because Row alleges both a general attack on the statute and an error by the Idaho Supreme Court, this claim does not fall within *Beam*'s purview.

### Claim 32

Row contends that the district court unconstitutionally considered a mitigating circumstance – her alleged mental illness – as an aggravating factor. This is a *Beam* claim, and it will not be dismissed.

### Claims 33 and 34

In Claims 33 and 34, Row asserts that she was deprived of a fair trial in a fair tribunal because the trial judge: (1) failed to disclose that he was also the presiding judge in the criminal case of trial witness Bernard McHugh; (2) had numerous conferences with counsel for the defense and the prosecution outside of

**Memorandum Decision and Order - 22**

Row's presence, and, at times, outside of the presence of the opposing side; and (3) belonged to the same small church as State's witnesses Joan McHugh and John Blackwell, and did not disclose to the defense that the church's pastor accompanied Joan McHugh when she testified.

Row raised these issues for the first time in her successive application for post-conviction relief in 1999.  The Idaho Supreme Court affirmed the dismissal of the first and second allegations – that is, that the judge presided over Bernard McHugh's criminal case and had ex parte conferences in this case – after concluding that the facts were known or reasonably should have been known to Row at the time of her first post-conviction proceeding.  *Row II*, 21 P.3d at 898-899.  Those matters are now defaulted in this proceeding.

The Idaho Supreme Court also affirmed the district court's dismissal of Row's claim based upon the trial judge's church affiliation, *Row II*, 21 P.3d at 899, but Row argues that it is unclear whether the state court's judgment with respect to that particular issue is based on a state procedural ground or on the merits of the federal question.  She cites *Harris v. Reed*, 489 U.S. 255 (1989), in support of her contention that when a state court's ruling is ambiguous, a federal court must presume that the state court rejected the claim on federal grounds.

*Harris* applied a "plain statement" rule to habeas proceedings, holding that

"a procedural default does not bar consideration of a federal claim on . . . habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Id*. at 263 (internal quotation marks omitted).  The requirement of a plain statement will be satisfied, however, when the state court issues a decision on both state and federal grounds, if the court "explicitly invok[ed] a state procedural bar rule as a separate basis for decision."  *Id*. at 264, n.10.  That is what occurred here.

Addressing the church affiliation claim in the first instance, the state district court determined that Row had not alleged facts that would show judicial bias or prejudice as a matter of law.  Yet the court also found, as an "additional basis for dismissal," that "Row has failed to meet her heightened burden [under Idaho Code § 19-2719(5)] of making a prima facie showing that these alleged facts were not known and could not have reasonably been known at the time Row's first petition for post-conviction relief was filed," meaning that the claim had been waived. (State's Lodging D, p. 12.)

On appeal, the Idaho Supreme Court agreed that the "factual allegations, even if true, would not cast doubt on the reliability of Row's conviction or sentence."  *Row II*, 21 P.3d at 899.  The appellate court also endorsed the district court's alternative conclusion that the claim was waived by operation of Idaho

**Memorandum Decision and Order - 24**

Code § 19-2719(5), noting that "the court below did not err in summarily dismissing this claim." *Id.* Thus, even if the first reason given by the state supreme court is based primarily upon the merits of the federal question, which is debatable, the second reason–waiver by operation of Idaho Code § 19-2719(5)–is a separate state procedural ground. Because the last state court "explicitly invok[ed] a state procedural bar rule as a separate basis for decision," the church affiliation aspect of Row's claim is also procedurally barred. *See Harris*, 489 U.S. at 264, n.10.

<u>Claims 35 and 36</u>

In Claim 35, Row contends that the prosecution withheld exculpatory evidence, in violation of her right to due process of law under *Brady v. Maryland*, 363 U.S. 83 (1963), and its progeny. In related Claim 36, Row proclaims "egregious" prosecutorial misconduct because of the prosecutor's alleged "misrepresentations and silence" regarding various matters.

After reviewing the parties' briefs and the record, the Court has concluded that it would benefit from additional pleadings, including Respondents' answer on the merits, before determining whether these claims must be dismissed on procedural grounds. Thus, the Court will reserve its ruling until these claims can be fleshed out by further pleadings.

**Memorandum Decision and Order - 25**

Claim 37

Row contends that the failure of the presentence investigator to advise her of her privilege against self incrimination and of her right to have counsel present violated her Fifth, Sixth, and Fourteenth Amendment rights.  Although Row has never expressly raised this claim in state court, because it relates to information considered by the state court when imposing the death sentence in Row's case, it fits within the *Beam* rationale.

Claims 38 and 39

Next, Row alleges that media publicity and a "circus-like atmosphere" prevented a fair trial.  She also contends that the trial court erred in not granting her challenges to jurors and in not changing the venue.

At the post-conviction evidentiary hearing, Row's counsel broached the subject of a supposed disruptive trial audience, but he did not raise the substantive claim on appeal to the Idaho Supreme Court.  Likewise, Row has never raised a claim that her right to a fair trial was violated by the failure to grant juror challenges or to change the venue.  As it is too late to return to state court and raise these claims, they are now defaulted.

Claim 40

**Memorandum Decision and Order - 26**

Row contends that her Sixth and Fourteenth Amendment rights were violated by the trial court's admission of hearsay statements.  Row argues that she presented this issue during her direct appeal, but the Court's review of her state court brief does not confirm this assertion.  The claim is procedurally defaulted.

Claim 41

For her final claim, Row asserts that the absence of specific statutory standards governing the prosecutorial charging decision in potential capital cases violates the equal protection clause of the Fourteenth Amendment.  Row has never raised this claim in state court, and, as a general attack on the state statute, it is not saved by *Beam*.

## 2.   **Conclusion**

The following claims were fairly presented or considered as part of the Idaho Supreme Court's obligatory sentencing review: 1-6, 7 (in limited part), 8, 9-12, 21-22, 32, and 37.  Conversely, the following claims have been defaulted: 7 (in part), 13-19, 30, 31, 33, 34, 38-41.  The Court will reserve its ruling with respect to the prosecutorial misconduct claims, 35 and 36, and it will dismiss Claims 23-27, and 29 on the alternative ground that they are *Teague*-barred.  Claims 20 and 28 are denied on the merits.

The majority of Row's defaulted claims rest on the application of the

**Memorandum Decision and Order - 27**

timeliness, waiver, and pleading provisions of Idaho Code § 19-2719.  Because

Row contends that the invocation of these statutory provisions will not be

sufficient to prevent federal review, the Court now turns to that matter.


## IDAHO CODE § 19-2719
## IS AN INDEPENDENT AND ADEQUATE STATE BAR
## AS APPLIED TO THIS CASE

### 1.   <u>Legal Standards</u>

To prevent federal habeas review, any state law ground upon which a default

rests must both be independent of federal law and adequate to support the state

court's judgment.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

To be "independent," the state law basis must not be interwoven with federal

law.  *La Crosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001).  "A state law ground

is interwoven with federal law if 'the state has made application of the procedural

bar depend on an antecedent ruling on federal law [such as] the determination of

whether federal constitutional error has been committed.'"  *Park v. California*, 202

F.3d 1146, 1152 (9th Cir. 2000) (quoting *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)

(brackets in original)).

A state procedural bar is "adequate" if it is "clear, consistently applied, and

well-established at the time of the petitioner's purported default."  *Wells v. Maass*,

28 F.3d 1005, 1010 (9th Cir. 1994); *see also Lee v. Kemna*, 534 U.S. 362, 389 (2002).  A federal court "should not insist upon a petitioner, as a procedural prerequisite to obtaining federal relief, complying with a rule the state itself does not consistently enforce."  *Siripongs v. Calderon*, 35 F.3d 1308, 1318 (9th Cir. 1994).  Nor should a federal court enforce a state bar grounded in a rule that is unclear or uncertain.  *See Morales v. Calderon*, 85 F.3d 1387, 1390-93 (9th Cir. 1996).

Procedural default is in the nature of an affirmative defense, and Respondents, as representatives of the State, have the initial burden to plead the existence of an independent and adequate state law ground.  *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003).  The burden then shifts to the petitioner to place the adequacy of the procedural bar in issue by citing inconsistent application of the rule.  *Id*.  If the petitioner has successfully placed the defense in issue, the ultimate burden rests with Respondents.  *Id*.

### 2.    Discussion

In 1984, the Idaho Legislature enacted special post-conviction statutory provisions for capital cases with the express purpose of eliminating "unnecessary delay in carrying out a valid death sentence."  Idaho Code § 19-2719.  The new statute supplemented the Uniform Post-Conviction Procedure Act (UPCPA), Idaho

Code §§ 19-4901 -- 4909, but to the extent that they conflict with the UPCPA, the special provisions will control.

In particular, the more specific provisions contain a shorter statute of limitations and a strict waiver provision. A capital defendant must raise all legal or factual challenges to his conviction or sentence within forty-two days of the filing of judgment. Idaho Code § 19-2719(3). A defendant who does not bring all known claims in that time frame, or all claims about which he reasonably should have known, is deemed to have forfeited or waived the unraised claims. Idaho Code § 19-2719(5).

(a)     <u>Independence</u>

Row's argument that Idaho Code § 19-2719 is not independent of federal law is without merit. A state court's application of the timeliness and waiver provisions does not require a review of the underlying federal claim, and the court need decide whether the petitioner knowingly and voluntarily relinquished a known constitutional right. In short, there is no indication that the operation and application of these provisions is interwoven with federal law.

(b)     <u>Adequacy</u>

The Court likewise concludes that time limitation and waiver rules are adequate to prevent federal review, as they were clear, consistently applied, and

**Memorandum Decision and Order - 30**

well established when Row should have raised all of her claims.  The Idaho

Supreme Court had strictly construed the statute before Row's post-conviction

proceeding, and the court has consistently enforced it since then.  *See, e.g., Fetterly*

*v. State*, 825 P.2d 1073 (Idaho 1991); *Paz v. State*, 852 P.2d 1355, 1357 (Idaho

1993); *Pizzuto v. State*, 903 P.2d 58, 60-61 (Idaho 1995); *Porter v. State*, 80 P.3d

1021 (Idaho 2003); *see also Rhoades v. State*, 17 P.3d 243 (Idaho 2000)

(successive claims not raised within a reasonable time of discovery).  To the extent

that the possible exceptions contained in *Dunlap v. State*, 961 P.2d 1179 (Idaho

1998), and *McKinney v. State*, 992 P.2d 150 (Idaho 1999), may deviate in some

small respect from the otherwise steady drumbeat of strict enforcement, they are

minor exceptions that do not render the rule inadequate.[5]  *See Wood v. Hall*, 130

F.3d 373, 378 (9th Cir. 1997) (the exercise of judicial discretion in imposing a

procedural rule, or the occasional act of grace, will not make a state court's

invocation of the rule inadequate).

Nor is the limited exception recognized in *Hoffman v. Arave*, 236 F.3d 523

(9th Cir. 2001), applicable to this case.  In *Hoffman*, the Ninth Circuit determined

---

[5]  The Court also adheres to its previous decision that the statute's time limitation and waiver provisions do not violate a capital petitioner's due process or equal protection rights. *Hoffman v. Arave*, 73 F.Supp.2d 1192, 1212-23 (D. Idaho 1998) *reversed and remanded on other grounds by* 236 F.3d 523 (9th Cir. 2001); *Fetterly v. Paskett*, 747 F. Supp. 594, 600-01 (D. Idaho 1990) *remanded on other grounds* by 997 F.2d 1295 (9th Cir. 1993).

**Memorandum Decision and Order - 31**

that the shortened time period, coupled with the state court's failure to appoint new counsel during that span or prepared transcripts, meant that the petitioner in that case did not have a fair opportunity to raise claims of ineffective assistance of counsel in state court.  *Id*. at 535-536.  His default of those claims, and those claims only, was excused.

In contrast to *Hoffman*, Row was appointed new counsel for her post-conviction proceeding, who requested and received several continuances before an evidentiary hearing was held.  Also unlike *Hoffman*, counsel were able to raise and develop claims of ineffective assistance of trial counsel, and those matters were exhausted during the appeal.

Row next challenges the adequacy of the dismissal of her claims of ineffective assistance of *appellate* counsel on the ground that she failed to comply with the statutory pleading requirements for bringing new issues in a successive application for post-conviction relief in Idaho Code §19-2719(5)(a).

Row raised these issues for the first time in her successive post-conviction petition, which the district court dismissed after concluding that Row had failed to show that the issues could not have been reasonably known at the time of the earlier post-conviction proceeding.

On appeal, the Idaho Supreme Court affirmed the dismissal, but for a

**Memorandum Decision and Order - 32**

different reason.  Citing the pleading requirement for raising new issues in a

successive petition, Idaho Code § 19-2719(5)(a), the court determined Row had not

supported her claims of ineffective assistance of appellate counsel with "material

facts stated under oath or affirmation by credible persons with first-hand

knowledge that would support the issue or issues raised."  *Row II*, 21 P.3d at 901-

02.  Row argues that this particular rule was not clear, well-established, or

consistently applied at the time of her default.  The Court disagrees.

In 1995, four years before Row filed her application, the Idaho Legislature

amended Idaho Code §19-2719 to include this pleading requirement.  1995 Idaho

Sess. Laws, ch. 140 § 3.  By amending the statute, the Legislature undoubtedly

intended to further the State's legitimate interest in screening out frivolous and

unsupported claims before expending considerable resources in a second or

successive collateral proceeding in a capital case.  This Court finds that §19-

2719(5)(a) is clear and provides reasonable notice that if a convicted capital

defendant intends to seek post-conviction relief more than once, she will have a

heavier burden to plead all new issues with factual precision and to proffer credible

evidence in support.  *See O'Dell v. Netherland*, 95 F.3d 1214, 1241 n.20 (4th Cir.

1996) (noting that if a procedural bar is based upon a clear and unambiguous

statute, it is firmly established at the time that the statute was enacted), *affirmed on*

*other grounds by* 521 U.S. 151 (1997).

An otherwise clear statutory rule may nonetheless be so inconsistently enforced that a federal habeas petitioner will be relieved of a default.  In an attempt to show inconsistency, Row contends that §19-2719(5)(a) has not been applied in a state court decision other than her own.  A lack of reported case law applying a particular statutory rule, however, does not equal the *inconsistent* application of that rule, and Row has cited no specific instances in which the state courts expressly noted that the pleading bar was at issue and yet chose to ignore it.[6] Given that the chief purpose of the exhaustion doctrine is to encourage habeas petitioners to raise all constitutional claims in the state courts when clear and fair state procedural rules exist for doing so, a habeas petitioner "cannot shirk his duty under [state] law . . . simply because there is no reported case directly on point." *Bargas v. Burns*, 179 F.3d 1207, 1212 (9th Cir. 1999).

Row next contends that the state court incorrectly and arbitrarily applied the rule in her case.  She asserts that she was in substantial compliance because the allegations in her petition were verified under oath by her, her counsel signed the

---

[6] Indeed, Row appears to be mistaken in her assertion that the rule has "never before or after been cited as a basis for default."  (Docket No. 398, p. 27.)  In *Fields v. State*, 17 P.3d 230 (Idaho 2001), after recounting the petitioner's factual allegations in support of a new conflict of interest claim, the Idaho Supreme Court concluded that the petitioner had not met the requirements of I.C. § 19-2719(5)(a)(i)&(ii).  *Id*. at 234-235.

**Memorandum Decision and Order - 34**

petition and implicitly attested to its accuracy, and some affidavits were in fact included as part of the record.  Although Row is correct that there are "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of the federal question" *Lee v. Kemna*, 534 U.S. 362, 376 (2002), this is not such a case.

Regardless whether Row verified her petition, or whether she is presumed to be a "credible person," she did not plead the *material facts* in support of these issues.  Instead, the issues were presented mostly in a bullet point, laundry list fashion without any supporting detail.  Thus, Row's verification did not substantially comply with the rule.

What's more, the person who presumably had first-hand knowledge of the material facts in this instance was her former appellate counsel; it is likely that only he could provide the facts related to how he prepared for the appeal, and only he could explain why he raised certain claims and eliminated others.  While it may be true, as Row contends, that an affidavit from appellate counsel, among others, was inserted into the record, that affidavit addressed counsel's financial arrangement with the Public Defender; it did not include material facts related to counsel's performance on appeal.  Indeed, the existence of the affidavit indicates that Row would have been able to gather the facts, narrow the issues, and comply with the

**Memorandum Decision and Order - 35**

rule had she been so inclined.  This is not a case, then, in which a habeas petitioner

demonstrates that it would have been impossible for her to have complied with an

otherwise clear state court rule.

For all of these reasons, the Court concludes that the provisions of Idaho

Code § 19-2719, as applied in this case, are independent of federal law and

adequate to preclude federal habeas review.

## ROW HAS NOT SHOWN CAUSE AND PREJUDICE

When a claim has been defaulted by an independent and adequate state law

ground, a habeas petitioner still has an opportunity to have the claim heard if she

can establish valid cause for the default and actual prejudice as a result of the

constitutional error.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show cause,

the petitioner must ordinarily demonstrate that some objective factor external to the

defense impeded her or her counsel's efforts to comply with the state procedural

rule at issue.  *Id.* at 488 (1986).  To show prejudice, the petitioner bears the burden

of demonstrating that the errors "worked to [her] actual and substantial

disadvantage, infecting [her] entire trial with errors of constitutional dimension."

*United States v. Frady*, 456 U.S. 152, 170 (1982).

A criminal defendant generally bears the risk of attorney error, and "[t]he

mere fact that counsel failed to recognize the factual or legal basis for a claim, or

failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray*, 477 U.S. at 486.  Rather, counsel's failure to preserve another constitutional claim in state court will amount to a valid cause for the default of that claim only when counsel's error is, itself, an independent constitutional violation.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  Also, the ineffective assistance claim upon which a petitioner argues as cause must have been properly exhausted in state court and free of procedural default.  *Id.* at 454.

In the present case, the only allegations of ineffective assistance of counsel that Row properly exhausted were related to trial counsel's handling of the pretrial suppression motion and counsel's performance during the sentencing phase of the trial.  Row has not explained how any of these claims would excuse the procedural default of another habeas claim.  All other allegations of ineffective assistance are themselves procedurally defaulted without a showing of cause and prejudice, and, under *Edwards*, cannot serve as cause.

Despite this, Row argues that the default of several claims is attributable to the ineffectiveness of post-conviction counsel.  It is well settled that cause for a procedural default cannot rest on a claim a petitioner's counsel was ineffective during a state post-conviction proceeding because there is no federal constitutional right to counsel at such a proceeding.  *See, e.g., Coleman v. Thompson*, 501 U.S.

**Memorandum Decision and Order - 37**

722, 752 (1991); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993).  This is true even when the collateral matter provides the first opportunity for the petitioner to raise a particular constitutional issue.  *Nevius v. Summer*, 105 F.3d 453, 460 (9th Cir. 1996); *Mackall v. Angelone*, 131 F.3d 442, 449 (4th Cir. 1997) (en banc); *Hill v. Jones*, 81 F.3d 1015, 1025 (11th Cir. 1996); *Nolan v. Armontrout*, 973 F.2d 615, 617 (8th Cir. 1992).  Additionally, as this Court noted previously, it is not persuaded by Row's attempt to distinguish Idaho's hybrid scheme from the more usual pattern of initiating post-conviction proceedings after the direct appeal has concluded.

The Court is also not convinced by Row's suggestion that there is a growing trend in the law to recognize deficiencies by post-conviction counsel as a valid reason to excuse a default.  (Docket No. 415.)  The cases that Row cites involve the showing of "good cause" needed to enter a stay pending the completion of exhaustion in state court, and she conflates this standard with the "cause" that would excuse a procedural default.  (Docket No. 415, pp. 2-5.)  On the one hand, it may make some sense for a federal court to apply a more relaxed standard before granting a stay when habeas claims are *unexhausted* because, by definition, the petitioner can still give the state courts an opportunity to pass on those constitutional issues, furthering the comity and federalism interests that the

**Memorandum Decision and Order - 38**

exhaustion doctrine is intended to promote (albeit at some cost to finality).

Conversely, if the petitioner has *defaulted* a claim on an independent and adequate

state law ground, no state court remedies remain available, and ignoring the default

to reach the merits in federal court would undermine the principles of comity and

federalism.  Hence, the need for a stronger showing to excuse the default.  One of

the cases that Row cites makes this precise distinction:

> Thus, the principles of comity and federalism would be given full
> recognition if the court allowed Rhines to exhaust his unexhausted
> claims in state court. As a result, the underlying concern of applying
> the principles of comity and federalism that result in requiring a
> petitioner to show that the assistance of counsel was so ineffective as
> to violate the Federal Constitution does not exist, because petitioner
> can present his claims to state court.

*Rhines v. Weber*, 408 F.Supp.2d 844, 849 (D.S.D. 2005).

Therefore, the Court concludes that Row's claim of ineffective assistance of

post-conviction counsel will not serve as the cause for the default of other

constitutional claims.  Row's claim of a conflict of interest during that proceeding

is also unavailing.  *See Moran v. McDaniel*, 80 F.3d 1261, 1271 (9th Cir. 1996).

Similarly, the limited exception that the Ninth Circuit has carved out in *Manning v.*

*Foster*, 224 F.3d 1129 (9th Cir. 2000), is not applicable here.  Unlike *Manning*,

there is no indication that post-conviction counsel actively interfered with Row's

right to pursue her potential remedies, or that counsel otherwise acted without her

authorization.  To the contrary, counsel actively represented Row, including during the evidentiary hearing at which several witnesses testified.

The only other reason that Row offers as a basis to excuse defaulted claims is that the prosecution allegedly concealed evidence from her, preventing her from raising issues based upon that evidence in a timely manner in state court.  In light of this Court's reservation of its ruling on the claims directly affected by that argument (Claims 35 and 36), it will likewise reserve its ruling on whether the alleged misconduct can serve as the cause for any potential default of those claims.

Finally, Row asserts that she is actually innocent of first-degree murder and that any default should be excused on that basis.  *See Murray v. Carrier*, 477 U.S. at 495-96 (actual innocence is an exception to procedural default).  Row has not favored the Court with the details of the evidence that supposedly supports this claim, let alone attempted to demonstrate that in light of the new evidence it is more likely than not that no reasonable juror would have found her guilty beyond a reasonable doubt.  *Schlup v. Delo*, 513 U.S. 298, 315, 324 (1995); *see also House v. Bell*, ___ U.S. ___, 126 S.Ct. 2064, 2078 (2006).  Consequently, the actual innocence exception will not save any defaulted claims in this case.

# ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion to Dismiss Procedurally Defaulted Claims (Docket No. 330) shall be GRANTED in part and DENIED in part, and the following claims in the Second Amended Petition shall be dismissed: 7 (in part), 13-20, 23-31, 33, 34, 38-41.

IT IS FURTHER ORDERED that no later than 45 days following the entry of this Order, Respondents shall file an answer to the Second Amended Petition.

IT IS FURTHER ORDERED that no later than 45 days after receiving Respondents' answer, Petitioner shall submit a brief containing points and authorities on the merits of all non-dismissed habeas claims.  In addition to providing argument on the merits, Petitioner shall fully address any remaining procedural defenses raised by Respondents, including *Teague* issues.  Because of this briefing, a separate traverse will not be necessary.

IT IS FURTHER ORDERED that within 45 days of receiving Respondents' answer, Petitioner may also file a motion for additional evidentiary development, at her option, which may include requests for discovery, expansion of the record, or an evidentiary hearing.  If Petitioner chooses to file such a motion, she shall identify with specificity: (1) each claim for which additional evidentiary

Memorandum Decision and Order - 41

development is requested; (2) the facts or evidence sought to be discovered,
expanded, or presented at an evidentiary hearing; (3) why such evidence was not
developed in state court; and (4) why the failure to develop the claim in state court
was not the result of lack of diligence, in accordance with the Supreme Court's
decision in *Williams v. Taylor*, 529 U.S. 420 (2000).

　　　　IT IS FURTHER ORDERED that no later than 30 days after receiving
Petitioner's brief on the merits, Respondents shall file a responsive brief.  If
Petitioner also files a motion for evidentiary development, Respondents shall
likewise submit a response within 30 days of receiving the motion.  Petitioner may
file a reply, if necessary, within 20 days after receiving a response.

DATED:  **March 2, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge

Memorandum Decision and Order - 42