IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ROBIN LEE ROW, | ) | |
| | ) | Case No. CV-98-240-S-BLW |
| Petitioner, | ) | |
| | ) | **CAPITAL CASE** |
| v. | ) | |
| | ) | **MEMORANDUM DECISION** |
| THOMAS J. BEAUCLAIR and | ) | **AND ORDER** |
| BRAIN T. UNDERWOOD, | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court previously dismissed several claims in this capital habeas matter as either procedurally defaulted or barred by *Teague v. Lane*, 489 U.S. 288 (1989). (Docket No. 417.)  Currently before the Court are Petitioner's motions for discovery and an evidentiary hearing on selected claims in the Second Amended Petition.  (Docket Nos. 440, 444.)  In the interests of avoiding further delay, the Court shall resolve these matters on the pleadings, briefs, and record without oral argument.  D. Idaho L. Civ. R. 9.2(h)(5).

For the reasons that follow, Row's motions shall be denied with prejudice as to all claims except limited portions of Claim 7.  The Court will revisit whether an evidentiary hearing will be required for those allegations, if necessary, after the

**Memorandum Decision and Order - 1**

parties have submitted final briefing.

## BACKGROUND

On February 10, 1992, Robin Row's husband and her two children died during an early morning fire at their residence. After a brief investigation, the State charged Row with three counts of first-degree murder and one count of aggravated arson.  A jury found her guilty as charged, and on December 16, 1993, the state district court sentenced her to death.

New counsel was appointed to assist Row in pursuing post-conviction relief before completing the direct appeal, in accordance with Idaho's special procedure applicable to capital cases.  Idaho Code § 19-2719.  After granting several continuances, the district court ultimately held an evidentiary hearing on Row's petition and denied relief.  The Idaho Supreme Court consolidated the appeal from that decision with the direct appeal and affirmed in all respects.  *State v. Row*, 955 P.2d 1082 (Idaho 1998) (*Row I*).

Row filed a Petition for Writ of Habeas Corpus in 1999.  This Court later stayed the federal case, at her request, pending the outcome of a second post-conviction proceeding.  That matter was eventually dismissed on procedural grounds, *see Row v. State,* 21 P.3d 895 (Idaho 2001) (*Row II*), and the Court lifted the stay.

**Memorandum Decision and Order - 2**

On January 17, 2003, Row submitted a Second Amended Petition.  The

Court thereafter dismissed several claims as either procedurally defaulted or

*Teague*-barred.  (Docket No. 417.)  While the federal matter was pending, Row

was pursuing her third and fourth petitions for post-conviction relief in state court,

and the Idaho Supreme Court recently affirmed the dismissal of those actions.  *Row

v. Idaho*, 177 P.3d 382 (Idaho 2008) (*Row III*).

Pursuant to the Court's scheduling order, Row has submitted motions for

discovery and an evidentiary hearing on the merits of Claims 1, 2, 7 (in part), 35,

and 36.  The parties have fully briefed these matters, and the Court is ready to rule.

**LEGAL STANDARDS**

The Petition in this case is governed by the provisions of the Anti-terrorism

and Effective Death Penalty Act (AEDPA).  Traditionally, a federal court had

considerable discretion whether to allow new evidentiary development in habeas

cases, but Congress circumscribed that discretion when it enacted AEDPA.

*Williams v. Taylor*, 529 U.S. 420, 436 (2000).  Specifically, if a petitioner failed to

develop the factual basis for a claim in state court, 28 U.S.C. § 2254(e)(2) prohibits

an evidentiary hearing on that claim in federal court, unless one of two narrow

exceptions is applicable.  This same restriction applies when the petitioner seeks to

expand the record with new documentary evidence.  *Holland v. Jackson*, 542 U.S.

**Memorandum Decision and Order - 3**

649, 652 (2004); *accord Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir.

2005).  And while § 2254(e)(2) does not speak directly to requests for civil

discovery, the statute must be taken into consideration when the petitioner seeks

discovery as a means to develop evidence on the merits of her claims, rather than

for some other preliminary purpose.  This is so because it is futile to allow the

petitioner to obtain new material in discovery that ultimately cannot be presented.

*See, e.g., Isaacs v. Head*, 300 F.3d 1232, 1248 (11th Cir. 2002) (recognizing the

same post-AEDPA limitations on discovery and an evidentiary hearing).

   These limitations only apply, however, if the federal court first concludes

that the petitioner was at fault for not developing the facts in state court.  *Williams*

*v. Taylor*, 529 U.S. 420, 436 (2000).  The resolution of that issue turns on whether

the petitioner or her counsel acted with reasonable diligence, which "depends upon

whether the [petitioner] made a reasonable attempt, in light of the information

available at the time, to investigate and pursue claims."  *Williams*, 529 U.S. at 431.

   If the petitioner exercised reasonable diligence but was unable to develop the

factual record, then the decision whether to grant discovery, expand the record, or

convene an evidentiary hearing reverts to the court's sound discretion, which is

informed by ordinary habeas rules.  *Schriro v. Landrigan*, 127 S.Ct. 1933, 1937,

1940 (2007); *see also* Rules 6, 7, and 8 of the Rules Governing Section 2254

**Memorandum Decision and Order - 4**

Cases.  In that scenario, the court shall grant leave to conduct discovery when the petitioner has shown "good cause," meaning that "if the facts are fully developed, [she may] be able to demonstrate that [she] is . . . entitled to relief."  *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997); Rule 6 of the Rules Governing Section 2254 Cases.  Under pre-AEDPA standards, the court shall hold an evidentiary hearing when the petitioner did not receive a full and fair hearing in state court, and she has offered specific facts that, if proven to be true, would entitle her to relief. *Landrigan*, 127 S.Ct. at 1940;  *Karis v. Calderon*, 283 F.3d 1117, 1126-27 (9th Cir. 2002).

Under all circumstances, new evidentiary development will not be necessary when the record "refutes the [petitioner's] factual allegations or otherwise precludes habeas relief."  *Landrigan*, 127 S.Ct. at 1940 (citing *Totten v. Merkle*, 137 F.3d 1172, 1176 (1998)); *see also Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir. 1992).

## DISCUSSION

### Claims Related to Row's Incriminating Statements to Joan McHugh – Claims 1, 2, 35, and 36

Row seeks discovery and an evidentiary hearing to develop claims related to the recording of telephone calls that she made to her friend at the time, Joan McHugh.  She alleges that her constitutional rights were violated because McHugh

**Memorandum Decision and Order - 5**

was acting as an agent of law enforcement officials when she taped the calls
(Claim 1), and because the State unreasonably delayed Row's arraignment in order
to obtain more incriminating statements (Claim 2).

Row had several opportunities to develop the facts in state court.  She filed a
pretrial motion to suppress, which was decided adversely to her after an
evidentiary hearing.  (State's Lodging A-1, pp. 182-190.)  She included the
delayed arraignment argument in the post-conviction matter, under the guise of an
ineffective assistance of counsel claim, which was likewise decided against her.
*Row I*, 955 P.2d at 1091.  Ordinarily, this would preclude re-litigation of the facts
now.  *See Holland v. Jackson*, 542 U.S. 649, 652 (2004).

Row nevertheless argues that she was unable to fully develop the record
because the State withheld critical exculpatory evidence that was relevant to the
suppression issue and other matters, in violation of *Brady v. Maryland*, 373 U.S.
83 (1963).  In particular, she contends that the State failed to reveal that Detective
Gary Raney and trial prosecutor Kevin Swain were physically present with
McHugh during the taping of the most incriminating calls.  Row intends for the
*Brady* claim to serve both as an independent ground for habeas relief (as alleged in
parts of Claims 35 and 36) and as a gateway through which she can present new
facts supporting Claims 1 and 2.

**Memorandum Decision and Order - 6**

This argument has become a persistent refrain in this case, and it is time to put it to rest.  In short, Row simply cannot establish how the presence or absence of a sheriff's detective or a prosecutor during the taping of the telephone calls is relevant to any suppression issue or is material to her guilt or innocence.  To demonstrate why this is so, it is necessary to recite the relevant facts briefly here.

Before the fire that killed Row's husband and two children occurred in February 1992, she had moved out of the family home and was staying at Joan McHugh's residence.  Once she was arrested on an unrelated charge and incarcerated in the county jail, she starting making telephone calls to McHugh.  McHugh was in contact with Detective Raney during this time, and Raney suggested that she should secretly tape the telephone conversations.  She agreed, and the Ada County Sheriff's Office provided the equipment for her to do so.  *See Row I*, 955 P.2d at 1085.

Row called McHugh frequently over the course of several weeks to discuss mundane matters, and she did not incriminate herself during these early calls.  Detective Raney eventually suggested to McHugh that she should lie and tell Row that she woke up on the morning of the fire and came downstairs to where Row was supposedly sleeping, but that she did not see Row.  When confronted with this scenario, Row initially said that she could not remember what she was doing at that

**Memorandum Decision and Order - 7**

time.  *Row I*, 955 P.2d at 1085; *Row III*, 177 P.3d at 386.

On March 20, 1992, a criminal complaint was filed charging Row with arson

and murder, and at 1:00 p.m. that day, a press conference was held to announce the

filing of the charges.  About that same time, Row called McHugh, and McHugh

repeated the story about not finding Row in the home on the night of the fire.  This

time, Row responded that she had been outside speaking with a psychiatrist.  In a

later call, McHugh questioned Row further about this supposed meeting, but Row

refused to say who the psychiatrist was.  McHugh finally told Row that she was

working with Detective Raney, and their conversations ceased.  Row's implausible

story that she was speaking with a psychiatrist, whom she could not name, early on

the morning of the fire was introduced into evidence against her at trial.  *Row III*,

177 P.3d at 386.

All of this was well known to the defense before trial.  More to the point,

Row and her counsel were aware that Detective Raney had suggested to McHugh

that she tape the conversations and, later, that she confront Row with the lie that

led to the most incriminating statement.  Given the established facts regarding

Detective Raney's active involvement, Row has failed to explain why additional

evidence that he and a prosecutor were actually present during the taping of certain

calls has any legal significance.  Therefore, this Court agrees with the Idaho

**Memorandum Decision and Order - 8**

Supreme Court's conclusion that the allegedly withheld evidence was not relevant

or material:

> Whether the sheriff's detective was present in McHugh's apartment when
> he instructed McHugh to have Row reiterate her alleged alibi or whether
> he communicated those instructions to McHugh in some other manner
> is irrelevant. It does not change any analysis of any issues in the case.
> Evidence that the detective and the deputy prosecutor were present in
> McHugh's apartment during the second telephone call on March 20,
> 1992, simply has no significance.

*Row III*, 177 P.3d at 386-387.

Nor would the allegedly withheld information have impeached Detective

Raney in a material way, as Row suggests. *See Strickler v. Greene*, 527 U.S. 263,

281-82 (1999) (noting that a *Brady* claim may be based on impeachment evidence).

Contrary to her argument, the Court is unable to find any instance where Raney

squarely testified that he was *not* present when the calls were made. (Docket No.

446, p. 21.)  Though some of his answers at the suppression hearing may appear to

be slightly evasive, defense counsel did not ask a question that would have elicited

a specific response on the subject at hand. (State's Lodging A-3, pp. 66-77, 117-

127.)  At any rate, this was a tangential issue, at best.

For these reasons, the Court finds that Row was not prevented from

developing all of the material facts on Claims 1 and 2.  The Court will not grant her

leave to conduct depositions of Detective Raney or Joan McHugh to explore these

**Memorandum Decision and Order - 9**

issues further, and it will not hold an evidentiary hearing. Row must now demonstrate that she is entitled to relief based on the record that the state court had before it.

With respect to the substantive *Brady* and prosecutorial misconduct claims that pertain to the taping of the calls, the Court agrees with the Idaho Supreme Court that Row cannot establish materiality of the evidence because there is no reasonable probability of a different trial or sentencing outcome. *Row III*, 177 P.3d at 387. Row's request for discovery and an evidentiary hearing on these aspects of Claims 35 and 36 is likewise denied.

### The Criminal Records of Joan and Bernard McHugh

Row next argues that she is entitled to discovery and an evidentiary hearing on additional portions of Claims 35 and 36 in which she alleges that the State failed to disclose the complete prior records of Joan and Bernard McHugh. The Court disagrees. Row has already been allowed extensive discovery of the prosecutor's files on the McHughs in this habeas proceeding, *see* Docket Nos. 190, 381, and it remains unclear exactly which part of either of their criminal histories she believes was suppressed by the State.

In addition, the record reveals that Row's trial counsel knew that Bernard McHugh had felony convictions for issuing checks with insufficient funds and that

Joan McHugh had been charged with this same offense, but that the charge was later dismissed.  These matters were discussed on several occasions before and during the trial.  (State's Lodging A-3, pp. 1161-62; State's Lodging A-4, pp. 1197-98, 1381-82, 1459-60, 1463; State's Lodging A-5, pp. 3087-99.)

Moreover, Row focuses mainly on the criminal activities of Bernard McHugh, but she overlooks that Bernard was called as a *defense* witness at her trial, not a prosecution witness.  (State's Lodging A-5, p. 3087-99.)  Presumably his testimony was favorable to her, and she has not explained how a more detailed exploration of his criminal record would have created a reasonable probability of a different outcome.  To be sure, *Joan* McHugh was a critical witness for the State, and while Row argues that the prosecutor minimized the severity of her past conduct, Row has proffered no new evidence that casts McHugh's conduct in a materially different light.

### Ineffective Assistance of Trial Counsel

1.  <u>Guilt Phase:  Failure to investigate the factual grounds for suppression of Row's statements – Claim 7, ¶ 80(a)</u>

For many of the same the reasons that the Court has already expressed with respect to Claims 1 and 2–particularly Row's opportunity to litigate this claim in the first post-conviction proceeding–the Court concludes that Row had a full and fair opportunity to present the factual basis for this claim in state court.  In reaching

**Memorandum Decision and Order - 11**

this conclusion, the Court is not persuaded by Row's argument that she was

prevented from developing additional facts because the state district court refused

to appoint a separate "money judge" to handle funding requests in the post-

conviction matter.  Counsel made this request so that they could explore the scope

of the previous *mitigation* investigation.  Row does not explain how the state

court's ruling impacted her ability to develop evidence in support of her unrelated

claim that trial counsel were ineffective in handling the suppression issue

> 2.   Guilt and Penalty Phase:  Failure to conduct a reasonable arson
>       investigation – Claim 7, ¶80(i)

Row has requested production of the circuit breaker and the negatives of the

photographs taken during the fire investigation, ostensibly to support her

contention that trial counsel conducted an unreasonable investigation into the

origins of the fire.  This allegation was not presented to the Idaho Supreme Court

in a procedurally proper manner, and it has already been dismissed as procedurally

defaulted.  (Docket No. 417, pp. 13-14.)

> 3.   Penalty Phase:  Failure to conduct a reasonable mitigation
>       investigation, retain qualified mental health experts, or supervise the
>       efforts of those experts that were retained  – Claim 7, ¶
>       81(b)(d)(e)(n)(o)&(s)

In the final claim for which Row seeks new evidentiary development, she

alleges that her trial counsel failed to conduct a reasonable mitigation investigation,

**Memorandum Decision and Order - 12**

particularly as it related to the presentation of evidence related to her mental health.

These issues were explored at the initial post-conviction evidentiary hearing. Row's trial counsel and their investigator testified about wide-ranging matters, with a particular emphasis on the extent of their investigation into mitigating evidence.  Trial counsel also testified about their interaction with Dr. Art Norman, the circumstances under which Row was encouraged to speak at the sentencing hearing, and counsel's preparation for the State's rebuttal witness, Dr. Robert Engle.  (State's Lodging B-12, pp. 184-327.)  In an unusual twist, one of Row's post-conviction attorneys testified as an expert witness and gave his opinion about the reasonableness of trial counsel's investigation.  (State's Lodging B-12, pp. 133-177.)  At the conclusion of the evidentiary hearing, the state district court released a written Memorandum Decision that included its findings and conclusions (State's Lodging B-12, pp.282-297), and the Idaho Supreme Court reached the merits on appeal.  *Row I*, 955 P.2d at 1092.

Despite this fairly complete record, Row now argues that she was prevented from offering additional evidence because the state district court refused to continue the post-conviction hearing one final time.  Although this Court doubts that post-conviction counsel's last minute request for a continuance after nearly

two years of investigation demonstrates the level of diligence that would free Row

from the restrictions in § 2254(e)(2), it chooses to reserve its ruling until after it

has received final briefing on the merits of all claims.  With respect to these

specific sub-issues, the parties shall: (1) apply the standards from 28 U.S.C. §

2254(d) to the state court's adjudication; and, alternatively, (2) assume *arguendo*

that § 2254(e)(2) does not apply and address whether Row has alleged facts that, if

proven to be true, would show that she is entitled to relief under the standards set

forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  The Court will then

revisit, if necessary, whether an evidentiary hearing will be required.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Petitioner's Motion

for Discovery (Docket No. 444) and Motion for an Evidentiary Hearing (Docket

No. 440) are DENIED.

IT IS FURTHER ORDERED that within 45 days of the entry of this Order

on the docket, Petitioner shall submit a brief on the merits of all non-dismissed

claims.  Respondent's response shall be filed within 45 days of receiving

Petitioner's brief.  Petitioner's optional reply shall be filed within 21 days of

receiving a response.  In addition to any other matters that the parties include in

their briefing, they shall address with respect to Claim 1 whether the filing of the

**Memorandum Decision and Order - 14**

criminal complaint on March 20, 1992, marked "the initiation of adversary judicial criminal proceedings" such that Row's Sixth Amendment right to counsel attached at that time.  *See United States v. Gouveia*, 467 U.S. 180, 187-88 (1984); *Massiah v. United States*, 377 U.S. 201 (1964).



DATED:  **September 8, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - 15**