LAWRENCE G. WASDEN
Attorney General
State of Idaho

PAUL R. PANTHER
Deputy Attorney General
Chief, Criminal Law Division

JESSICA M. LORELLO, ISB #6554
Deputy Attorney General
L. LaMONT ANDERSON, ISB #3687
Chief, Capital Litigation Unit
Criminal Law Division
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone: (208) 334-4539
Facsimile:  (208) 854-8074
jessica.lorello@ag.idaho.gov

Attorneys for Respondents


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ROBIN LEE ROW, | ) | CASE NO. 1:98-CV-00240-BLW |
| | ) | |
| Petitioner, | ) | **CAPITAL CASE** |
| | ) | |
| vs. | ) | RESPONDENT'S RESPONSE TO |
| | ) | PETITIONER'S AMENDED |
| THOMAS J. BEAUCLAIR, et al., | ) | MOTION TO ALTER OR AMEND |
| | ) | JUDGMENT |
| Respondent. | ) | |
| _____ | ) | |

COMES NOW, Respondents, Thomas J. Beauclair, et al. ("state"), by and
through their attorney, Jessica M. Lorello, Deputy Attorney General, Capital Litigation
Unit, and hereby respond to Petitioner's ("Row") Amended Motion to Alter or Amend
Judgment ("Amended Motion").  (Dkt. 572.)

## INTRODUCTION

In Petitioner's Brief in Support of the Amended Motion to Alter or Amend Judgment ("Brief"), Row attempts to establish cause and prejudice under <u>Martinez v. Ryan</u>, 132 S.Ct. 1309 (2012), to excuse the procedural default of several ineffective assistance of counsel claims.  (<u>See generally</u> Dkt. 583.)  Those claims include the allegations contained within "Ground 7," paragraphs 80(h), 81(a), 81(b), 81(d), 81(e), 81(f), 81(g), 81(h), 81(n), 81(o), 81(p), and 81(s) from Row's Second Amended Petition for Writ of Habeas Corpus by a Person in State Custody ("Second Amended Petition") (Dkt. 293).  (Dkt. 583, pp.4-5.)  Row's claims under paragraphs 81(b), (d), (e), (n), (o), (p), and (s) of her Second Amended Petition were previously considered by this Court on the merits under 28 U.S.C. § 2254(d).  Section 2244(b)(1), 28 U.S.C., precludes reconsideration of these claims under <u>Martinez</u> because they were decided on the merits. With respect to Row's claims under paragraphs 80(h) and 81(a), (f), (g), and (h), Row has failed to show cause and prejudice under <u>Martinez</u> to excuse her procedural default and Row is not entitled to an evidentiary hearing on any of these claims.

## BACKGROUND

On January 17, 2003, Row filed her Second Amended Petition.  (Dkt. 293.)  On April 7, 2003, the state filed a Motion to Dismiss Procedurally Defaulted Claims.  (Dkts. 330; 331.)  Pursuant to the state's motion, the Court dismissed the following claims:  7 (in part), 13-20, 23-31, 33, 34, 38-41.  (Dkt. 417; <u>see also</u> Dkt. 424 (order denying motion to reconsider).)  With respect to the allegations in Claim 7 regarding trial and sentencing, the Court stated:

Row raised the following issues of ineffective assistance of trial counsel during her initial appeal to the Idaho Supreme Court: (1) her attorneys were ineffective in failing to develop facts and argument in support of the motion to suppress Row's statements to McHugh; (2) counsel failed to investigate, develop, and present mitigating evidence adequately during the sentencing phase of the case; (3) counsel were ineffective in employing Dr. Art Norman as a mental health expert at sentencing and were not sufficiently prepared to meet the testimony of the State's rebuttal witness, Dr. Robert Engle; and (4) counsel were ineffective in allowing Row to make a statement at the sentencing hearing. **Row has included these same claims here in ¶ 80(a)(b) and ¶ 81(b)-(e)(n)(o)(p)(s) of the Second Amended Petition and they are properly exhausted.**

The Idaho Supreme Court later determined that Row had waived several new claims of ineffective assistance of trial counsel under Idaho Code § 19-2719(5) because she did not include those claims in her first post-conviction proceeding. Those claims are now defaulted.

(Dkt. 417, p.13 (citation omitted, emphasis added).)[1]

After denying Row's motion to reconsider its dismissal order, the Court ordered the state to file an Answer to Row's Second Amended Petition and set briefing deadlines for any motions for evidentiary development, including discovery, expansion of the record, or an evidentiary hearing, that Row intended to file. (Dkt. 424, p.10.)

Pursuant to the Court's Order, the state filed an answer (Dkt. 430) and Row filed a motion for evidentiary development along with several affidavits (Dkts.440-443), and motions for discovery and an evidentiary hearing (Dkts. 444, 446). After additional briefing on Row's motions, on September 8, 2008, the Court denied Row's motions for

---

[1] The Court also dismissed Row's claims that post-conviction counsel "were ineffective in failing to develop several issues during the post-conviction matter" since Row "did not have a federal constitutional right to the effective assistance of counsel during the state post-conviction proceeding, and she would not be entitled to federal habeas relief on that basis." (Dkt. 417, p.14 (citing Dkt. 293, ¶ 82(a)-(d)(f)-(j).) Finally, with respect to Claim 7, the Court also dismissed Row's claim that appellate counsel was ineffective based on procedural default. (Dkt. 417, pp.15-16.)

discovery and an evidentiary hearing "as to all claims except limited portions of Claim 7." (Dkt. 472, p.1.)   As to the allegations in Claim 7, the Court denied further development (by way of discovery or an evidentiary hearing) on ¶¶ 80(a) and (i). (Dkt. 472, pp.11-12.)   The Court, however, reserved ruling on further development of ¶¶ 81(b)(d)(e)(n)(o), and (s) "until after it . . . received final briefing on the merits of all claims." (Dkt. 472, pp.12-14.)   The Court then ordered the parties to (1) "apply the standards from 28 U.S.C. §2254(d) to the state court's adjudication" of "these specific sub-issues" and, "alternatively, (2) assume *arguendo* that § 2254(e)(2) does not apply and address whether Row has alleged facts that, if proven to be true, would show that she is entitled to relief under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)." (Dkt. 472, p.14.)   The Court stated it would "then revisit, if necessary, whether an evidentiary hearing [would] be required." (Dkt. 472, p.14.)

After considering the parties' merits briefing (Dkts. 480, 494, 489), and hearing oral argument (Dkt. 508), the Court ordered an evidentiary hearing to "resolve the preliminary diligence issue" related to her non-dismissed claims that counsel was ineffective at sentencing (Dkt. 509, pp.1-2); the hearing was set for April 21, 2011 (Dkt. 534).  However, on April 4, 2011, the United States Supreme Court issued its opinion in Cullen v. Pinholster, 131 S.Ct. 1388 (2011), limiting the circumstances for conducting an evidentiary hearing in federal court on claims raised in a federal habeas petition under AEDPA.  The following day, the Court asked the parties to submit briefing on whether the Court's opinion in Pinholster "prohibits or renders unnecessary the evidentiary hearing" that was scheduled in this case. (Dkt. 536.)  Following briefing on this issue (Dkts. 538, 539, 542, 543), on August 29, 2011, the Court entered a Memorandum

Decision and Order dismissing, with prejudice, Row's Second Amended Petition.  (Dkt. 545.)  In that order, the Court concluded Row was not entitled to relief on any of her remaining habeas claims and denied "with prejudice, Row's request for new evidentiary development on the previously non-dismissed allegations of ineffective assistance of counsel in Claim 7."  (Dkt. 545, pp.1, 65-66.)  The Court entered Judgment that same day and dismissed this case with prejudice.  (Dkt. 546.)

On September 26, 2011, Row filed a Motion to Alter or Amend Judgment asking the Court to amend its judgment with respect to four claims:  "Claim 7 (IAC of sentencing counsel); Claim 1 (*Massiah* violation); and Claims 4 and 6 (Denial of resources and continuance in post-conviction proceeding."  (Dkt. 547, p.2.)  The state filed its response to Row's Motion to Alter or Amend on October 27, 2011.  (Dkt. 550.)  While Row's motion to amend was pending, she filed a Notice of Supplemental Authority and Request for Additional Briefing on March 21, 2012, noting the United States Supreme Court's March 20, 2012 opinion in Martinez v. Ryan, 132 S.Ct. 1309 (2012), which she argued was relevant to her motion to amend.[2]  (Dkt. 555, p.1.)  The state did not object to Row's request for supplemental briefing related to Martinez and the Court authorized such briefing.  (Dkt. 557.)  The Court also later directed Row to file an "Amended Motion to Alter or Amend Judgment, combining into one document the grounds for relief from the original Motion (Dkt. 547), to the extent that they are still relevant, and grounds related to *Martinez*."  (Dkt. 571, p.2 ¶ 3.)

As directed by the Court, Row filed an Amended Motion, "seek[ing] an order altering or amending the Court's judgment based upon the application of *Martinez v.*

---

[2] In her motion to amend, Row did ask the Court to "retain" this case until the Supreme Court issued its decision in Martinez.  (Dkt. 547, p.7.)

*Ryan*, 132 S.Ct. 1309 (2012) to Ground Seven of the Second Amended Petition."  (Dkt. 572, p.2.)  The Amended Motion further states:

> Ineffective assistance of counsel ("IAC") in state post-conviction proceedings blocked Petitioner from adequately presenting IAC claims. The inadequate representation of post-conviction counsel occurred in two ways:  by failing to present to the state courts particular IAC claims and by failing to develop material facts supporting presented IAC claims in the state court.  Consequently, this Court ruled certain trial IAC claims were procedurally defaulted and, with respect to trial IAC claims reached on the merits, Petitioner was precluded from presenting additional factual support.  Petitioner should be afforded a full and fair opportunity to prove cause and prejudice in an effort to persuade the Court to reverse both rulings.  The claims that this Court should reconsider are:  Ground 7, paragraph 80 and included subclaims; Ground 7, paragraph 81 and included subclaims; Ground 7, Ground 82 [sic] and included subclaims; and paragraph 83 and included subclaims.[3]  In light of this amendment, the previously included grounds for the Motion to Alter or Amend are withdrawn.  Dkt. 547.

(Dkt. 572, p.3.)

Following a stay of these proceedings (Dkt. 580), Row filed her Brief on September 3, 2013 (Dkt. 583), to which the state now submits its response.

## **ARGUMENT**

A.   Introduction

Row contends she has raised "substantial Trial IAC claims that have not been reviewed in state court because of initial post-conviction counsel's ineffective assistance" and that "[t]he default of these Trial IAC claims is excused under *Martinez*."  (Dkt. 583,

---

[3] The state notes that, in her Brief, Row has narrowed the number of claims for which she seeks application of Martinez from those identified in her Amended Motion.  (Compare Dkt. 572, p.3 with Dkt. 583, pp.3-4.)  The state assumes this narrowing was intentional and will respond to the specific claims identified in Row's Brief rather than those identified in her Amended Motion.  To the extent the state's assumption is incorrect, it would request an opportunity to file suppelemental briefing on any claims not specifically addressed in Row's Brief, assuming the Court allows Row to pursue such claims as opposed to finding she waived them by failing to address them in her Brief.

p.27.)  Row further asserts "[t]his Court should grant an evidentiary hearing in order to evaluate the merits of those claims."  (Dkt. 583, p.27.)  Row's arguments fail.  Several of the claims Row believes are salvaged by <u>Martinez</u> are not because the claims were not dismissed based on procedural default but were considered on the merits under 28 U.S.C. § 2254(d).  As to Row's procedurally defaulted claims, she has failed to meet her burden of showing cause and prejudice under <u>Martinez</u>.  Accordingly, her Amended Motion should be denied.

B.    <u>Summary Of Claims</u>

Row requests relief under <u>Martinez</u> for several allegations contained within Claim 7 of her Second Amended Petition.  (Dkt. 583, pp.3-5.)  Row has divided her "subclaims" into two groups – one she refers to as "Mitigation Claims" and the other she refers to as "Inadequately Raised Claims."  (Dkt. 583, pp.3-5.)  The subclaims within each category are set forth below.

1.    <u>"Mitigation Claims"</u>

Row's so-called "Mitigation Claims," as pled in her Second Amended Petition, are as follows:

- Claim 7 - ¶ 80(h):  "that counsel failed to secure adequate testing concerning the brain damage that could have affected petitioner's ability to control her behavior and thus undermines the finding of petitioner's guilt" (Dkt. 293, p.23)

- Claim 7 - ¶ 81(a):  "Failure to prepare, develop and present a coherent sentencing strategy" (Dkt. 293, p.25)

- Claim 7 - ¶ 81(f):  "Failure to investigate and present defenses and mitigating circumstances surrounding uncharged criminal activity presented during the trial and at sentencing" (Dkt. 293, p.25)

- Claim 7 - ¶ 81(g):  "Failure to research Eighth Amendment jurisprudence as it applies to the preparation and presentation of evidence in mitigation" (Dkt. 293, p.25)

- Claim 7 - ¶ 81(h):  "Failure to investigate, develop and present evidence rebutting aggravating evidence considered by the trial court" (Dkt. 293, p.25)

2.  <u>"Inadequately Raised Claims"</u>

Row's so-called "Inadequately Raised Claims," as pled in her Second Amended Petition, are as follows:

- Claim 7 - ¶ 81(b):  "Failure to make an independent investigation of matters in mitigation" (Dkt. 293, p.25)

- Claim 7 - ¶ 81(d):  "Failure to timely retain a qualified mental health expert to address the issues of mental health clearly apparent from Petitioner's case" (Dkt. 293, p.25)

- Claim 7 - ¶ 81(e):  "Failure to retain a qualified neuro-pscyhiatrist to conduct appropriate medical testing regarding the apparent organic brain damage revealed by CT scans taken of Petitioner revealing an atrophy of the brain" (Dkt. 293, p.25)

- Claim 7 - ¶ 81(n):  "Permitting an unqualified mental health expert and his assistant to engage in unreliable techniques of memory re-enhancement, including hypnosis" (Dkt. 293, p.25)

- Claim 7 - ¶ 81(o):  "Failure to research and comprehend the reported results of a psychological evaluation performed by an unqualified person and permitting presentation of a diagnosis of Petitioner as suffering from a condition called alexithymia which was not supported by fact, law, medicine, science or accepted standards of psychological principles" (Dkt. 293, p.26)

- Claim 7 - ¶ 81(p):  "Permitting Petitioner to make a statement in allocution without knowing that the statement would be making incriminatory admissions based upon unqualified, unreliable memory enhancement" (Dkt. 293, p.26)

- Claim 7 - ¶ 81(s):  "Permitting the defense-retained psychologist to engage in practices likely to elicit a false confession from Petitioner and permitting Petitioner to be bullied into making that confession in

allocution at sentencing which wholly undermined the theory of defense presented at trial" (Dkt. 293, p.27)

C.  This Court Should Decline Further Consideration Of Row's "Inadequately Raised Claims" Under *Martinez* Because These Claims Were Not Dismissed As Procedurally Defaulted But Were Instead Considered By This Court On The Merits Under 28 U.S.C. §2254(d)

Row has presumably lumped several of her subclaims into a separate category designated as "Inadequately Raised Claims" because, unlike her "Mitigation Claims," they were not dismissed as procedurally defaulted but the Court instead considered the claims on the merits under 28 U.S.C. § 2254(d).  (Dkt. 545, pp.37-50.)  This fact precludes consideration of the claims for two related reasons:  (1) the request constitutes an improper successive petition, and (2) Martinez only applies to claims dismissed as procedurally defaulted.

Section 2244(b)(1), 28 U.S.C., provides:  "A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed."  In Gonzalez v. Crosby, 545 U.S. 524, 531 (2005), the United States Supreme Court concluded that "a pleading, although labeled a Rule 60(b) motion, is in substance a successive habeas petition and should be treated accordingly." The Court further stated:

> A motion can also be said to bring a 'claim' if it attacks the federal court's previous resolution of a claim *on the merits*, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief.

Gonzalez, 545 U.S. at 532 (emphasis original, footnote omitted).  "The term 'on the merits' has multiple usages[,]" including "a determination that there exist or do not exist grounds entitling a petitioner to habeas corpus relief under 28 U.S.C. §§ 2254(a) and (d)."

*RESPONDENT'S RESPONSE TO PETITIONER'S AMENDED MOTION TO ALTER OR AMEND JUDGMENT - 9*

Id. at 532 n.4. "When a movant asserts one of those grounds (or asserts that a previous ruling regarding one of those grounds was in error) he is making a habeas corpus claim." Id. Conversely, a petitioner "is not doing so when he merely asserts that a previous ruling which precluded a merits determination was in error – for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of limitations bar." Id.

Although Row's Amended Motion relies on Rule 59(e) rather than 60(b), the same principles apply. Williams v. Thaler, 602 F.3d 291, 302-303 (5th Cir. 2010) ("Although *Gonzalez* considered 'only the extent to which Rule 60(b) applies to habeas proceedings under 28 U.S.C. § 2254," *id.* at 530 n. 3, 125 S.Ct. 2641, courts have extended Gonzalez's rationale beyond the facts and procedural posture of that case. Nearly every circuit has applied the Gonzalez rationale to federal prisoners seeking habeas relief under § 2255. Additionally, the Fourth, Eighth, and Tenth Circuits have, either explicitly or implicitly, extended the Gonzalez framework to other post-judgment motions, including motions to alter or amend a judgment under Rule 59(e)."). Row's Amended Motion, although not designated a habeas application, is "effectively indistinguishable" from such and she is bringing a claim by attacking this Court's "previous resolution" of several of her claims "on the merits." Gonzalez, 545 U.S. at 532. This she cannot do. 28 U.S.C. § 2254(b)(1).

While the Ninth Circuit has concluded a district court may alter or amend a judgment under F.R.C.P. 59(e) under certain circumstances, including when there is an intervening change in controlling law, School District No. 1J, Multnomah County, Oregon v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993), the Supreme Court's opinion in Martinez did not change the law governing this Court's resolution of the merits of

Row's "Inadequately Raised Claims."  In Martinez, 132 S.Ct. at 1320, the Supreme Court held, "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, **a procedural default** will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."  (Emphasis added.)  This is an equitable principle that applies a "narrow exception" to the "unqualified statement" in Coleman v. Thompson, 501 U.S. 722 (1991), "[t]hat an attorney's ignorance or inadvertence in a post-conviction proceeding does not qualify as cause to excuse a procedural default."  Martinez, 132 S.Ct. at 1315.  The Coleman exception

> allow[s] a federal habeas court to find "cause," thereby excusing a defendant's **procedural default**, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding, (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] … be raised in an initial-review collateral proceeding.

Trevino v. Thaler, 133 S.Ct. 1911, 1918 (2013) (bold added, italics original) (quoting Martinez at 1320-1321).)

Because the exception to Coleman announced in Martinez applies only to procedurally defaulted claims, and because Row's "Inadequately Raised Claims" were not procedurally defaulted, Martinez is irrelevant and further consideration of those claims pursuant to Martinez is unwarranted.  Row has cited no contrary authority and the

state is aware of none.[4]  Indeed, Row's contention that <u>Martinez</u> encompasses claims that were raised, but allegedly "inadequately" so, implies a Sixth Amendment right to the effective assistance of post-conviction counsel – a right rejected by the Supreme Court in <u>Pennsylvania v. Finley</u>, 481 U.S. 551 (1987), and not included within the narrow holding of <u>Martinez</u>, which the Court clarified was an equitable ruling, not a constitutional one, 132 S.Ct. at 1319.  <u>See</u> <u>also</u> <u>Clabourne v. Ryan</u>, 2014 WL 866382 (9th Cir. 2014) (slip opinion at p.20) (noting the principle that there is no constitutional right to counsel in post-convictoin proceedings was "unchanged by *Martinez*").

Row's request for reconsideration of her "Inadequately Raised Claims" should be rejected because these claims were dismissed on the merits under 28 U.S.C. § 2254(d) and any further consideration is improper under 28 U.S.C. § 2244(b)(1) and not required by <u>Martinez</u>.

D.   <u>Row Has Failed To Meet Her Burden Under *Martinez* With Respect To Her Procedurally Defaulted Mitigation Claims Because She Has Failed To Show The Claims Are Substantial</u>

In <u>Martinez</u>, the Supreme Court defined a "substantial" claim as a claim that has "some merit."  132 S.Ct. at 1318.  In attempting to demonstrate her ineffective assistance of trial counsel claims meet this requirement, Row refers to all claims that are the subject of her Brief, including the "Inadequately Raised Claims," and then generally asserts counsel's investigation was "an anemic effort" that did not include various tasks she

---

[4] In her Brief, Row asserted the "United States Supreme has two cases (*Strouth v. Colson*, No. 12-7720 and *Hammond v. Sheets*, No. 12-691) scheduled for conference on September 30, 2013 on the application of *Martinez* to inadequately raised claims" and indicated her intent to "seek a stay in this matter in the event certiorari is granted in either of these cases."  (Dkt. 583, p.26.)  The Supreme Court denied certiorari in both cases on October 7, 2013.

believes should have been included.  (Dkt. 583, pp.9-10.)  Row then addresses the alleged "prejudice stemming from counsel's deficient performance" in relation to "each of the individual claims."   (Dkt. 583, p.12.)   Because several of Row's claims, *i.e.*, the "Inadequately Raised Claims," are not properly before this Court, the state will not address Row's specific arguments regarding prejudice in relation to those claims and will do its best to apply Row's collective deficient performance argument to those claims that are properly before the Court.   In the end, application of the legal standards under Strickland and its progeny show Row's ineffective assistance of trial counsel claims are not substantial.

To the extent the standard for a "substantial" claim under Martinez is the same standard for a COA (which the state does not concede), Row has failed to meet her burden.   In Miller-El, the Court reaffirmed the standard for issuance of a COA, "'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'"  537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  The COA determination "requires an overview of the claims . . . and a general assessment of their merits," which "does not require full consideration of the factual or legal bases adduced in support of the claims."   Id. Nevertheless, merely because the required showing is not onerous does not mean a COA must always be granted.   Miller-El, 537 U.S. at 337.  Rather, the COA is designed to serve as "a gatekeeping mechanism that prevents [the court] from devoting judicial resources on frivolous issues while at the same time affording habeas petitioners an opportunity to persuade us through full briefing and argument of the potential merit of

issues that may appear, at first glance, to lack merit." Lambright v. Stewart, 220 F.3d 1022, 1025 (9th Cir. 2000); see also Miller-El, 537 U.S. at 337-38 ("A prisoner seeking a COA must prove 'something more than the absence of frivolity' or the existence of mere 'good faith' on his or her part.") (quoting Barefoot v. Estelle, 463 U.S. 463 U.S. 880, 893 (1983)). "Thus, *Martinez* requires that a petitioner's claim of cause for a procedural default be rooted in 'a potential legitimate claim of ineffective assistance of trial counsel.'" Lopez v. Ryan, 678 F.3d 1131, 1137-38 (9th Cir. 2012) (quoting Martinez, 132 S.Ct. at 1318). "To have a legitimate IAC claim a petitioner must be able to establish both deficient representation *and* prejudice." Id. at 1138 (emphasis in original).

   1.  Standards Under *Strickland* And Its Progeny

   The purpose of effective assistance of counsel "is not to improve on the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial." Cullen v. Pinholster, --- U.S. ---, 131 S.Ct. 1388, 1403 (2011) (quoting Strickland, 466 U.S. at 689). To prevail on a claim of ineffective assistance of counsel, Row must show her counsels' representation was deficient and that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984).

   The first element "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. In making this determination, there is a strong presumption that counsels' performance fell within the "wide range of professional assistance." Id. at 689; see also Sexton v. Cozner, 679 F.3d 1150, 1159 (9th Cir. 2012) (quoting Strickland, 466 U.S. at 739) ("We strongly presume 'that counsel's representation was within the wide range of reasonable professional assistance.'"). Row has the burden of showing

counsels' performance "fell below an objective standard of reasonableness." Id. at 688. The effectiveness of counsels' performance must be evaluated from his perspective at the time of the alleged error, not with twenty-twenty hindsight. Id. at 689. "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Harrington v. Richter, --- U.S. ---, 131 S.Ct. 770, 788 (2011) (internal quotations and citation omitted). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689. "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Richter, 131 S.Ct. at 788 (internal quotations and citation omitted).

Strategic and tactical choices are "virtually unchallengeable" if made after thorough investigation of the law and facts. Strickland, 466 U.S. at 690-91. Strategic choices made after less than complete investigation are unchallengeable if "reasonable professional judgments support the limitations on investigation." Id. "Rare are the situations in which the wide latitude counsel must have in making tactical decisions will be limited to any one technique or approach." Richter, 131 S.Ct. at 789 (quotations and citation omitted). Counsel is permitted to formulate a strategy that was reasonable at the time and "balance limited resources in accord with effective trial tactics and strategies." Id.

In Strickland, the Court also discussed counsels' duty to conduct a "reasonable investigation," which does not mandate an "exhaustive investigation."  As explained by the Supreme Court:

> [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Strickland, 466 U.S. at 691.

In Burger v. Kemp, 483 U.S. 776, 794 (1987) (quoting United States v. Cronic, 466 U.S. 648, 665 n.38 (1984)), the Court concluded merely because counsel "could . . . have made a more thorough investigation than he did," does not mandate relief because the courts "address not what is prudent or appropriate, but only what is constitutionally compelled."  Therefore, counsel is not required to "mount an all-out investigation into petitioner's background."  This principle was reaffirmed in Rompilla v. Beard, 545 U.S. 374, 383 (2005), where the Court reiterated, "the duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste."  See also Mahaffey v. Page, 151 F.3d 671, 685 (7th Cir. 1998), *vacated in part*, 162 F.3d 481 (7th Cir. 1999) ("reasonable investigation does not mandate a scorch-the-earth strategy, a requirement that would fail to consider the limited time and resources that defense lawyers have in preparing").  As explained in Babbitt v. Calderon, 151 F.3d 1170, 1173-74 (9th Cir. 1998) (internal citations and quotations omitted) (emphasis added), "While a lawyer is under a duty to make reasonable investigations, a lawyer may make a reasonable decision that particular investigations are

unnecessary.  To determine the reasonableness of a decision not to investigate, the court must apply **a heavy measure of deference** to counsel's judgments."

The second element requires Row to show "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  <u>Strickland</u>, 466 U.S. at 687.  This requires Row to demonstrate "a reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome," <u>id.</u> at 694, which "requires a substantial, not just conceivable, likelihood of a different result," <u>Pinholster</u>, 131 S.Ct. at 1403 (internal quotations and citation omitted). A reviewing court "must consider the totality of the evidence before the judge or jury," <u>Strickland</u>, 466 U.S. at 695, and reweigh that evidence "against the totality of available [] evidence," <u>Pinholster</u>, 131 S.Ct. at 1408 (quoting <u>Wiggins v. Smith</u>, 539 U.S. 510, 534 (2003)).

Overcoming <u>Strickland</u>'s "high bar is never an easy task."  <u>Padilla</u>, 130 S.Ct. at 1485.  Because ineffective assistance of counsel claims provide a means to raise issues not presented at trial, the <u>Strickland</u> standard "must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve."  <u>Richter</u>, 131 S.Ct. at 788 (internal quotations and citation omitted).  The reviewing court need not address both prongs of <u>Strickland</u> if an insufficient showing is made under only one prong. <u>Strickland</u>, 466 U.S. at 697.

### 2.   <u>Claim 7 - ¶ 80(h) Is Not A Substantial Claim</u>

In Claim 7, paragraph 80(h), Row asserts counsel were ineffective for failing to "secure adequate testing concerning the brain damage that could have affected [her]

ability to control her behavior and thus undermines the finding of [her] **guilt**." (Dkt. 293, p.23 (emphasis added).) This claim appears to be based on Row's belief that counsel were deficient for failing to follow-up on Row's CT scans that showed "brain atrophy" by discussing the scans with their mental health experts, Arthur Norman and Craig Beaver, and by failing to have "Dr. Beaver or Dr. Norman conduct or obtain neuropsychological testing." (Dkt. 583, p.11.) Row asserts these alleged deficiencies were prejudicial because, had counsel done so, follow-up testing, which has been "completed at the direction of federal habeas counsel," would show "cerebellar atrophy and mild associate cerebral atrophy," which would have resulted in a diagnosis of "cerebellar hypoplasia and cortical atrophy." (Dkt. 583, p.12.) According to James Merikangas, one of the individuals Row has consulted in habeas, Row "has a definite abnormality of her brain" and "[t]his organic condition has the probable neuropsychiatric outcome of reducing [Row's] ability to control her behavior and under conditions of emotional distress may have affected her ability to appreciate the wrongfulness of her behavior." (Dkt. 583, p.13; Dkt. 124, p.3, ¶ F.) This opinion is shared by Mark Greenberg, PhD, another individual consulted by federal habeas counsel who concluded "proper neuropsychological examination would have uncovered a 'biologically-based brain defect that may have directly impacted her behavioral control that would have raised a substantial source of clinical data in favor of **mitigation**."[5] (Dkt. 583, p.13 (quoting Dkt. 449) (emphasis added).) This is not a substantial claim.

---

[5] In conjunction with her Brief, Row submitted an affidavit from a third individual, Clay Ward, PhD, who "supports th[e] methodology and approach" advocated by Dr. Greenberg. (Dkt. 582; Dkt. 583, p.13.) The state submits that submission of additional affidavits at this juncture is inappropriate and intends to file a motion to strike Ward's affidavit.

*RESPONDENT'S RESPONSE TO PETITIONER'S AMENDED MOTION TO ALTER OR AMEND JUDGMENT - 18*

While Row's alleged brain damage may be relevant to mitigation (Dkt. 449, p.11), there is no basis from which to conclude that trial counsel were deficient for failing to pursue a "brain damage" defense at trial.  "[T]he duty to investigate mental defenses is *only* triggered if there is evidence to suggest the defendant is impaired."  <u>Doe v. Woodford</u>, 508 F.3d 563, 569 (9th Cir. 2007) (emphasis original, quotations and citation omitted); <u>see also</u> <u>Strickland</u>, 466 U.S. at 691 ("when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable"); <u>Mobley v. Head</u>, 267 F.3d 1312, 1318 (11th Cir. 2001) (citing <u>Strickland</u>, <u>supra</u>) ("Mobley now argues that his trial counsel pursued the wrong strategy.  That strategy was informed, however, by the information provided by Mobley himself."); <u>Hensley v. Crist</u>, 67 F.3d 181, 186 (9th Cir. 1995) ("Hensley fails to show that his counsel was put on notice to explore the insanity defense.")

Although Row believes trial counsel missed important mitigation evidence, she "fails to point to any credible evidence of mental incapacity which would have triggered a duty on the part of [her] counsel to investigate for possible defenses."  <u>Doe</u>, 508 F.3d at 569.  Particularly relevant to this issue is the fact that Row's "trial defense team had the services of Dr. Craig Beaver since June of 1992 in evaluating and testing [Row's] mental and emotional health," which included "detailed psychological tests and evaluations." (State's lodging B-11, p.292.)  It was certainly well within objectively reasonable standards for decision-making for counsel to rely on Dr. Beaver's assessment of Row, which would surely include guidance in relation to any potential diminished mental capacity defense. See <u>Hendricks v. Calderon</u>, 70 F.3d 1032, 1038 (9th Cir. 1995) ("In

general, an attorney is entitled to rely on the opinions of mental health experts in deciding whether to pursue an insanity or diminished capacity defense.").

That Dr. Beaver apparently did not have access to Row's 1991 and 1993 CT scans does not change this conclusion.  Any claim to the contrary ignores the well-established principle that a reviewing court reviews counsels' decisions for reasonableness at the time those decisions were made, which takes into consideration the resources and information available to them.  See Stokley v. Ryan, 659 F.3d 802, 813 (9th Cir. 2011) (because "neither of the experts counsel hired unequivocally stated that Stokley should be examined by a neuropsychologist—and counsel was under no obligation to seek neuropsychological testing in the absence of any such recommendation"); Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998) (quoting Siripongs v. Calderon, 133 F.3d 732, 736 (9th Cir. 1998) ("the relevant inquiry under *Strickland* is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable").  The argument also ignores the related principle that there is no duty to pursue additional testing when the expert consulted did not recommend such testing. Barnard v. Collins, 958 F.2d 634, 642 (5th Cir. 1992) ("Barnard fails to demonstrate that his counsel would have reason to believe that Barnard suffered from a mental defect at the time of the offense or trial.  Thus, he cannot sustain the argument that his counsel was ineffective for failing to employ experts to explore the psychological, medical or physical origins of Barnard's mental condition.").  Presumably Dr. Beaver was capable of requesting and gathering any information he deemed relevant, and conducting whatever tests he thought appropriate, without being directed by counsel.  In other words, counsel could reasonably rely on Dr. Beaver's ability to ascertain what, if any, tests Row had

performed that could be useful in his evaluation and to take whatever steps necessary to gain access to whatever information was important to him.  Attorneys consult experts **because** those individuals are experts and know how to perform their professional responsibilities and how to administer appropriate testing.  The Ninth Circuit recognized as much in <u>Hendricks</u>, 70 F.3d at 1038-1039, stating:

> Experts are valuable to an attorney's investigation, then, not only because they have special abilities to process the information gathered by the attorney, but because they also are able to guide the attorney's efforts toward collecting relevant evidence.  To require an attorney, without interdisciplinary guidance, to provide a psychiatric expert with all information necessary to reach a mental health diagnosis demands that an attorney already be possessed of the skill and knowledge of the expert. Hendricks' own psychiatric expert, Dr. Lisak, conceded that a psychological report reflects what the expert thinks is important.  If an attorney has the burden of reviewing the trustworthiness of a qualified expert's conclusion before the attorney is entitled to make decision based on that conclusion, the role of the expert becomes superfluous.

That Row, with the assistance of habeas counsel and the resources of the Federal Defender, has since been able to submit to examination by others does not mean counsel were deficient in relying on Dr. Beaver's opinions and pursuing a defense that Row was innocent as opposed to brain damaged.  Indeed, even assuming Row's "organic condition" may impact her "ability to control her behavior" or "appreciate the wrongfulness of her conduct" is not a defense to murder.  In Idaho, there is no "insanity defense." <u>State v. Delling</u>, 1267 P.3d 709, 711 n.1 (Idaho 2011).  Rather, a defendant's mental condition is only relevant as it relates to her ability to "form the criminal intent necessary to be guilty of the crime to which [the defendant] stand[s] accused." <u>Id.</u> at 712. That Row may not be able to control her behavior or appreciate the wrongfulness of her conduct does not mean she was unable to form the intent to commit murder.

Finally, a mental defect defense would have been inconsistent with Row's claims of innocence, which she maintained up until sentencing.[6]   Doe, 508 F.3d at 569 ("petitioner's trial counsel made a reasonable strategic choice to rely on petitioner's claims of innocence"); see also Gilson v. Sirmons, 520 F.3d 1196, 1247 (10th Cir. 2008) ("To have also raised any type of mental disorder defense would have been inconsistent with a defense of actual innocence and would have considerably weakened both defenses. Counsel's decision in this case was reasonable trial strategy, which we will not second guess on appeal.").

Row's claim in paragraph 80(h) of her Second Amended Petition is not substantial.

### 3.   Claim 7 - ¶ 81(a) Is Not A Substantial Claim

In Claim 7, paragraph 81(a), Row asserts counsel failed "to prepare, develop and present a coherent sentencing strategy."  (Dkt. 293, p.25.)  The state cannot ascertain any discernible argument by Row regarding this particular claim.   While Row makes a generalized argument that counsel's mitigation investigation was "anemic" and complains about counsel's efforts in obtaining documents and interviewing certain individuals (Dkt. 583, pp.10-11), these assertions are distinct from her allegation that the sentencing strategy was not "coherent."   That she disagrees with counsel's presentation at sentencing does not mean that counsels' sentencing strategy was not "coherent."   Moreover, there is overlap between this allegation and the allegation in paragraph 81(b),

---

[6] It appears Dr. Merikangas has also concluded Row is innocent based on his unfounded assertions that "there is a substantial probability that [Randy Row] committed suicide and murder by arson in the fire that destroyed his home and killed Robin Row's children." (Dkt. 442, p.6 ¶ 8.)

*RESPONDENT'S RESPONSE TO PETITIONER'S AMENDED MOTION TO ALTER OR AMEND JUDGMENT - 22*

which was considered on the merits.  (<u>Compare</u> Dkt. 583, p.10 ("[t]rial counsel made no independent efforts to obtain available and material documents") <u>with</u> Dkt. 293, p.25, ¶ 81(b) (counsel ineffective for failing to "make an independent investigation of matters in mitigation").)

For prejudice, Row combines the allegations in paragraphs 81(a), (f), (g), and (h), and asserts "[t]hese claims are closely interrelated" and "demonstrate how the deficient performance – failing to investigate Row's background – can have multiple, exponential effects."  (Dkt. 583, p.13.)  Row then contends "[c]ounsel missed the medical, social, familial and other background histories that would have triggered neuropsychological and neuropsychiatric evaluations."  (Dkt. 583, pp.13-14.)  The remainder of Row's prejudice argument again focuses on Row's neurological deficits.  (Dkt. 583, pp.14-16.)  Framed this way, this claim is not meaningfully different than the claims post-conviction counsel raised regarding the presentation of mitigation evidence relating to Row's mental status, which the trial court and this Court have already considered, and denied, on the merits.[7] Given that the claim is essentially redundant to a previously adjudicated unsuccessful claim, it cannot be substantial.

### 4.  Claim 7 - ¶ 81(f) Is Not A Substantial Claim

In paragraph 81(f), Row alleges counsel were ineffective for failing "to investigate and present defenses and mitigating circumstances surrounding uncharged criminal activity presented during the trial and at sentencing."  (Dkt. 293, p.25.)  The

---

[7] Given this, the state would rely on the trial court's findings in post-conviction on this issue (state's lodging B-11, pp.292-296), as well as this Court's prior decision concluding Row failed to meet her burden under 28 U.S.C. § 2254(d) with respect thereto (Dkt. 545, pp.37-50).

state cannot discern any argument explaining this alleged deficiency and, as previously noted, Row's prejudice argument for this claim is combined with a general prejudice argument that focuses on her neurological deficits.  Given the lack of any argument or evidence from which to conclude otherwise, this Court should find Row has failed to show paragraph 81(f) presents a substantial claim.

> 5.   Claim 7 - ¶ 81(g) Is Not A Substantial Claim

In paragraph 81(g), Row alleges counsel failed "to research Eighth Amendment jurisprudence as it applies to the preparation and presentation of evidence in mitigation." (Dkt. 293, p.25.)  Like the preceding claim, there is no discernible argument regarding deficient performance in relation to this claim and no distinct prejudice argument aside from the general prejudice argument regarding Row's neurological deficits.  Further, the state would note Row's failure to cite any evidence that trial counsel were ignorant of any relevant Eighth Amendment jurisprudence demonstrating their decisions related to sentencing were the result of such ignorance.[8]  Row has failed to provide any basis for concluding paragraph 81(g) presents a substantial claim.

> 6.   Claim 7 - ¶ 81(h) Is Not A Substantial Claim

Finally, in paragraph 81(h), Row alleges ineffective assistance of counsel as a result of counsels' supposed "[f]ailure to investigate, develop and present evidence rebutting aggravating evidence considered by the trial court."  (Dkt. 293, p.25.)  Because

---

[8] The record actually supports a contrary conclusion.  As noted by the trial court in denying post-conviction relief, Row's trial attorneys "have extensive professional experience in the art and science of criminal defense work, and are the most competent, knowledgeable and battle-tested criminal defense attorneys in the office of the public defender system."  (State's lodging B-11, p.287.)

*RESPONDENT'S RESPONSE TO PETITIONER'S AMENDED MOTION TO ALTER OR AMEND JUDGMENT - 24*

Row has failed to delineate the alleged deficiencies for each of her claims, the state is left to guess what evidence Row is referring to in this claim.  To the extent Row's prejudice argument informs this inquiry, as it must, the state assumes the "evidence rebutting aggravating evidence" is that which relates to Row's neurological deficits.  As with paragraph 81(a), paragraph 81(h) is not meaningfully different than the claims post-conviction counsel did raise regarding the presentation of mitigation evidence relating to Row's mental status, which the trial court and this Court have already considered, and rejected, on the merits.  Given that the claim is also essentially redundant, it cannot be substantial.

E.      Row Has Failed To Show Post-Conviction Counsel Was Ineffective For Failing To Raise Her "Mitigation Claims"

"When faced with the question whether there is cause for an apparent default, a State may answer . . . that the attorney in the initial-review collateral proceeding did not perform below constitutional standards."  Martinez, 132 S.Ct. at 1319.  For example, "[i]f trial counsel was not ineffective, then [Row] would not be able to show that PCR counsel's failure to raise claims of ineffective assistance of trial counsel was such a serious error that PCR counsel 'was not functioning as the counsel guaranteed' by the Sixth Amendment."  Sexton, 679 F.3d at 1159.  Giving meaning to this prong of the Martinez test requires more than just an evaluation of whether the trial IAC claim is substantial under prong one.  Rather, "the post-conviction petitioner must show that his post-conviction relief counsel was ineffective under *Strickland*."  Clabourne, 2014 WL 866382 (slip opinion at p.23); see also Martinez, 132 S.Ct. at 1318.  This means that Row must show "both (a) post-conviction counsel's performance was deficient, and (b) there

was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different."  Clabourne, 2014 WL 866382 (slip opinion at p.24).  "The reasonable probability that the result of the post-conviction proceedings would have been different, absent deficient performance by post-conviction counsel, is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective."  Clabourne, 2014 WL 866382 (slip opinion at p.25).  "The prejudice at issue is prejudice at the post-conviction relief level, but if the claim of ineffective assistance of trial counsel is implausible, then there could not be a reasonable probability that the result of the post-conviction proceedings would be different."  Id.

Further, like claims relating to the effective assistance of appellate counsel (which are actually based in the Sixth Amendment), post-conviction counsel "is not necessarily ineffective for failing to raise even a nonfrivolous claim," let alone a claim that is meritless.  Sexton, 679 F.3d at 1157 (citing Knowles v. Mirzayance, 556 U.S. 111, 127 (2009)).  In other words, the standard for ineffective assistance of post-conviction counsel is analogous to the standard for ineffective assistance of appellate counsel, which recognizes that "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  Jones v. Barnes, 463 U.S. 745, 751-52 (1983).  Addressing the Strickland test, the Ninth Circuit has explained:

> These two prongs partially overlap when evaluating the performance of appellate counsel.  In many instances appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. . . .  Appellate counsel will therefore frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) for the same reason – because she declined to raise a weak issue.

Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1984) (internal quotations and citations omitted).   Based upon these standards, while it is still possible to raise ineffective assistance of appellate counsel claims, "it is difficult to demonstrate that counsel was incompetent." Robbins, 528 U.S. at 288.

Post-conviction counsel was entitled, as a tactical matter, to raise only those claims he deemed were viable and supported by evidence, which did not include claims that are as vague and conclusory as those set forth in paragraphs 81(a), (f), (g), and (h) of Row's Second Amended petition, some of which are redundant to the claims post-conviction counsel did pursue.  Post-conviction counsel was also not deficient for failing to raise the allegation, set forth in paragraph 80(h), that trial counsel were ineffective for failing to "secure adequate testing concerning the brain damage that could have affected petitioner's ability to control her behavior . . . thus undermin[ing] the finding of petitioner's guilt" (Dkt. 293, p.23) for the reasons already articulated explaining why the claim is not substantial.  Row's contrary argument in her Brief focuses not on why post-conviction counsel was deficient for failing to assert the claim alleged in paragraph 80(h) but on why she believes post-conviction counsel was ineffective in relation to her "Inadequately Raised Claims" (Dkt. 583, pp.25-26), which, as noted, are not properly before this Court.

Because Row has failed to show her "Mitigation Claims" are substantial or that post-conviction counsel was ineffective for failing to present those claims, there is no reason for the Court to alter or amend its prior judgment finding Row's "Mitigation Claims" procedurally defaulted and dismissing them with prejudice.

F.    Row Has Failed To Establish An Evidentiary Hearing Is Warranted

The state is unaware of any court that has addressed what a petitioner must establish to warrant an evidentiary hearing on a Martinez claim; neither Martinez nor Trevino addresses the issue.  Rather, the Supreme Court recognized, "the Court of Appeals did not determine whether Martinez's attorney in his first collateral proceeding was ineffective or whether his claim of ineffective assistance of trial counsel is substantial," issues which "remain open for a decision on remand."  Martinez 132 S.Ct. at 1321.   Likewise, in Trevino, the Supreme Court declined to decide whether the ineffective assistance of trial counsel claim was substantial or whether the initial post-conviction attorney was ineffective, remanding for the lower courts to decide the two issues in the first instance.  133 S.Ct. at 1921.

Even if Row has established all four prongs for a Martinez claim, she has failed to establish this Court should conduct an evidentiary hearing.   To be entitled to an evidentiary hearing, a habeas petitioner must meet two conditions: "(1) allege facts which, if proven, would entitle him to relief, and (2) show that he did not receive a full and fair hearing in state court, either at the time of the trial or in a collateral proceeding." Karis v. Calderon, 283 F.3d 1117, 1126-27 (9th Cir. 2002).  An evidentiary hearing is not required on allegations that are "conclusory and wholly devoid of specifics."  Campbell v. Wood, 18 F.3d 662, 679 (9th Cir. 1994); see also Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2002) (a petition may be dismissed without a hearing when it consists solely of conclusory, unsworn statements unsupported by proof).  Likewise, "an evidentiary hearing is *not* required on issues that can be resolved by reference to the state court record."  Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998) (emphasis in original).

Nor are petitioners permitted to use the federal courts to embark upon mere "fishing expeditions" in an effort to establish their habeas claims. Calderon v. United States Dist. Ct. (Nicholas), 98 F.3d 1102, 1106 (9th Cir. 1996). (*See also* Dkt. 196, pp.7-8.)

As detailed above, to present a "colorable claim" of ineffective assistance of counsel, Row must establish trial counsels' representation was deficient and that the deficiency was prejudicial. Strickland, 466 U.S. at 687. Based upon all the arguments above, Row has failed to demonstrate a colorable claim of ineffective assistance of trial counsel, particularly prejudice. Likewise, she has failed to demonstrate ineffective assistance of post-conviction counsel. An evidentiary hearing is therefore unnecessary.

## CONCLUSION

Respectfully, because Row has failed to satisfy her burden of meeting the four-prong Martinez test or demonstrating that Martinez should be expanded beyond the narrow exception created by the Supreme Court, this Court should deny Row's Amended Motion. Even if Row has met her burden under Martinez, because the claims she reasserts are not colorable under Strickland's two-prong test, an evidentiary hearing is not warranted and the claims should be denied and dismissed with prejudice.

DATED this 1st day of April, 2014.

/s/_____
JESSICA M. LORELLO
Deputy Attorney General and
Capital Litigation Unit

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on or about the 1st day of April 2014, I caused to be served a true and correct copy of the foregoing document by the method indicated below, postage prepaid where applicable, and addressed to the following:

| | | |
|---|---|---|
| Teresa Hampton | _____ | U.S. Mail |
| Federal Defender Services, Capital Unit | _____ | Hand Delivery |
| 702 W. Idaho, Suite 900 | _____ | Overnight Mail |
| Boise, ID 83702 | _____ | E-mail |
| | X | Electronic Court Filing |
| Kathleen Elliott | _____ | U.S. Mail |
| Elliott Law Firm, PLLC | _____ | Hand Delivery |
| P.O. Box 1352 | _____ | Overnight Mail |
| Boise, ID 83702 | _____ | E-mail |
| | X | Electronic Court Filing |

/s/_____
JESSICA M. LORELLO
Deputy Attorney General
Capital Litigation Unit